Dean Francis Pace
State Bar Number 31809
PACE AND ROSE
Suite 2400 Century City
1801 Century Park East
Los Angeles, California 90067
Telephone: (310) 277-2900
Facsimile: (310) 277-2407
Email: falseclaimsact@paceandrose.com

Attorneys for Coplaintiff Relator

FILED
CLERK, U.S. DISTRICT COURT

SEP 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

**ORIGINAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. SEAL )<br><br>                    )<br>                    )<br>                    )<br>          Plaintiff )<br>                    )<br>          v.        )<br>                    )<br>SEAL                )<br>                    )<br>                    )<br>                    )<br>          Defendant )<br>                    )<br>_____) | CIVIL ACTION CV06-3614 PA(FMOx)<br><br>[FILED UNDER SEAL]<br><br>[31 U.S.C. 3730(b)(2)] |

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT

31 U.S.C. § 3729 ET SEQ.

DOCKETED ON CM

SEP 2 2 2006

BY                    007

FIRST AMENDED COMPLAINT UNDER SEAL

1
2  Dean Francis Pace
   State Bar Number 31809
3  PACE AND ROSE
   Suite 2400 Century City
   1801 Century Park East
4  Los Angeles, California 90067
   Telephone: (310) 277-2900
5  Facsimile: (310) 277-2407
   Email: falseclaimsact@paceandrose.com
6
7  Attorneys for Coplaintiff Relator

FILED
CLERK, U.S. DISTRICT COURT
SEP 2 1 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

ORIGINAL

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA    )  CIVIL ACTION CV06-3614 PA(FMOx)
    EX REL. SEAL                )
12                              )
                                )
13                              )
              Plaintiff         )
14                              )
              v.                )     [FILED UNDER SEAL]
15                              )
    SEAL                        )    [31 U.S.C. 3730(b)(2)]
16                              )
                                )
17                              )
              Defendant         )
18                              )
                                )
19  _____)

20

21

22  FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT

23  31 U.S.C. § 3729 ET SEQ.

24

25

26

27

28

FIRST AMENDED COMPLAINT UNDER SEAL

Dean Francis Pace
Bar Number 31809
PACE AND ROSE
Suite 2400 Century City
1801 Century Park East
Los Angeles, California 90067
Telephone:   (310) 277-2900
Facsimile:   (310) 277-2407
Email: falseclaimsact@paceandrose.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. STEVEN MATESKI ) ) ) Plaintiff, ) ) ) v. ) ) RAYTHEON COMPANY, NORTHROP ) GRUMMAN CORPORATION ) ) Defendants ) ) | CIVIL ACTION CV06-3614 PA(FMOx) FIRST AMENDED COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT 31 U.S.C. § 3729 ET SEQ. REQUEST FOR TRIAL BY JURY |

NOW COMES PLAINTIFF and alleges against Defendants RAYTHEON COMPANY and NORTHROP GRUMMAN CORPORATION.

FIRST CAUSE OF ACTION

VIOLATION OF FALSE CLAIMS ACT

BY RAYTHEON COMPANY

1.

JURISDICTION

Jurisdiction is predicated upon federal subject matter jurisdiction pursuant to Title 31 U.S.C. of the False Claims Act, 31 U.S.C. §§§ 3729, 3730 and 3732(a), and 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

FIRST AMENDED COMPLAINT

2.

## VENUE

Venue in the United States District Court for the Central District of California is predicated upon 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c). Defendant RAYTHEON COMPANY ("RAYTHEON"), the entity charged herein with violations of the False Claims Act, 31 U.S.C. § 3729 et seq., now and at all times alleged herein had its place of business in the Central District of California in El Segundo, California. Defendant Northrop Grumman Corporation ("NORTHROP"), the entity charged herein with violations of the False Claims Act, 31 U.S.C. § 3729 et seq., now and at all times alleged herein had its place of business in the Central District of California in Los Angeles, California. The violations of the False Claims Act, 31 U.S.C. § 3729 et seq., alleged herein occurred in the Central District of California. Plaintiff has sustained the damages for violation of the False Claims Act, 31 U.S.C. § 3729 et seq., alleged herein within the Central District of California.

3.

## PARTIES

The Plaintiff is the United States of America and the Coplaintiff Relator Steven Mateski ("MATESKI"). Coplaintiff Relator MATESKI now and at all times alleged herein is a resident in the Central District of California. From 1985 to 1995 by Defendant NORTHROP and from 1997 to 2006 by Defendant RAYTHEON, which acquired Hughes Aircraft Company, MATESKI has been employed as a Manufacturing Planner Engineer.

−2−

FIRST AMENDED COMPLAINT

1   Defendant RAYTHEON was and at all times alleged herein is a

2   corporation which is qualified to do business and doing business

3   in the State of California, with the Raytheon Space and Airborne

4   Systems ("SAS") in El Segundo, California, and the Raytheon Vision

5   Systems and Santa Barbara Remote Sensing ("RVS" and "SBRS") in

6   Goleta, California, as subcontractor to design, develop and produce

7   seven flight units of the Visible Infrared Imaging Radiometer Suite

8   ("VIIRS"), which is a component of the National Polar-Orbiting

9   Operational Environmental Satellite System ("NPOESS") for the prime

10  contractor Northrop Grumman Corporation ("NORTHROP").

11      Defendant NORTHROP now and at all times alleged herein is a

12  corporation under the laws of the State of Delaware, qualified to

13  do business and doing business in the State of California, with its

14  principal offices in Los Angeles and El Segundo, California.

15  Defendant NORTHROP is engaged in the manufacture and sale of

16  aerospace and defense systems for the United States Government,

17  including Prime Contractor on the NPOESS Program.

18                              4.

19          STANDING OF RELATOR TO SUE AS ORIGINAL SOURCE

20      Coplaintiff Relator MATESKI has standing to sue pursuant to the

21  False Claims Act, 31 U.S.C. § 3730(b)(1).   Coplaintiff Relator

22  MATESKI is the Original Source of all the false claims by Defendant

23  RAYTHEON  pursuant  to  the  False  Claims  Act,  31  U.S.C.  §

24  3730(e)(4)(A), on grounds that MATESKI had direct and independent

25  knowledge of the false claims by Defendants RAYTHEON and NORTHROP

26  which he acquired during the course of his employment at Defendants

27  RAYTHEON and NORTHROP.   Before filing the Qui Tam action,

28  Coplaintiff and Relator MATESKI first repeatedly revealed the

                              -3-

FIRST AMENDED COMPLAINT

RAYTHEON false claims *inter alia* by communications with RAYTHEON VIIRS executives *inter alia* John Bouregy, Program Manager, Bernard Malis (Retired), Manager of Manufacturing, Thomas James (Retired), Engineering Authority, Ronald Estes, Test Director and Lead Engineer, Michael Haley, Operations Manager, Eugene Jaramillo, Head of Quality Assurance, Steven Adams, Configuration Management, and Cledith Davis, Program Quality Assurance.

VIOLATION OF THE FALSE CLAIMS ACT

BY DEFENDANT RAYTHEON COMPANY

5.

The False Claims Act, 31 U.S.C. § 3729(a)(1), (2) and (7), provides that any person who, with actual knowledge, or in reckless disregard or deliberate ignorance of the truth, presents, or causes to be presented, a false or fraudulent claim to the United States Government for payment or approval, or who makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 for each claim, plus three times the amount of the damages sustained by the United States Government because of the false claim. Specifically, the False Claims Act legislates, to wit:

§ 3729.   False claims

(a)   Liability for certain acts. --Any person who--

(1)   knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

-4-

FIRST AMENDED COMPLAINT

(2)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(7)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

6.

Since the 1960s, the United States operational polar-orbiting meteorological satellite program has been a complex infrastructure encompassing two satellite systems, the Polar-orbiting Operational Environmental Satellites ("POES") managed by the Department of Commerce National Oceanic and Atmospheric Administration ("NOAA"), and the Defense Meteorological Satellite Program ("DMSP"), managed by the Department of Defense ("DOD").  The satellites carry a suite of sensors that collect environmental data to generate graphical weather images and specialized weather data for forecasters, the military, and the public.

7.

Under a shared agreement among four satellite data processing centers, the NOAA National Environmental Satellite Data and Information Service ("NESDIS"), the Air Force Weather Agency, the Naval Fleet Numerical Meteorology and Oceanography Center, and the Naval Oceanographic Office, different centers are responsible for producing and distributing, via a shared network, different environmental data sets, specialized weather and oceanographic products, and weather prediction model outputs.  For the DOD centers, the users include regional meteorology and oceanography

-5-

FIRST AMENDED COMPLAINT

centers, as well as meteorology and oceanography staff on military bases. NESDIS forwards the data to the NOAA National Weather Service for distribution and use by government and commercial forecasters.

8.

Currently, there are two operational POES satellites and two operational DMSP satellites that are positioned so that they can observe the earth in early morning, mid-morning, and early afternoon polar orbits. Together, they ensure that for any region of the earth, data are no more than six hours old. There are an estimated 150 field terminals operated by the United States (including battlefields and ships) and foreign governments and academia, which are able to receive weather data directly from the polar-orbiting satellites. On May 5, 1994, Presidential Decision Directive NSTC-2, Convergence of U.S. Polar-orbiting Operational Environmental Satellite Systems, required that the POES and DMSP programs be converged into the National Polar-orbiting Operational Environmental Satellite System ("NPOESS").

9.

The National Polar-Orbiting Operational Environmental Satellite System ("NPOESS") is the low-earth-orbit environmental satellite system which is composed of satellites, sensors, a ground-control system and a data processing and dissemination network. NPOESS provides civilian, military and scientific communities with regional and global meteorological data, oceanographic, environmental, climatic, and space environmental remote sensing information, surface data collection and search and rescue capabilities.

-6-

FIRST AMENDED COMPLAINT

10.

The NPOESS relies upon three critical sensors, the Visible Infrared Imaging Radiometer Suite ("VIIRS"), and the Cross-Track Infrared Sounder ("CRIS") and the Conical-Scanned Microwave Image/Sounder ("CMIS"). The Visible Infrared Imaging Radiometer Suite ("VIIRS") for the NPOESS collects visible/infrared imagery and radiometric data on the atmosphere, clouds, earth radiation budget, clear-air land/water surfaces, sea surface temperature, ocean color, and low-light visible imagery.

11.

The NPOESS tri-agency Integrated Program Office ("IPO") is comprised of the Department of Defense ("DOD"), the National Oceanic and Atmospheric Administration ("NOAA") in the Department of Commerce ("DOC"), and the National Aeronautics and Space Administration ("NASA") that is engaged in the combination of the two current satellite systems into a single environment monitoring satellite system called the National Polar-orbiting Operational Environmental Satellite System ("NPOESS"), which is critical for weather forecasting and strategic global climate monitoring through the year 2020.

12.

Within the NPOESS IPO, NOAA, DOD and NASA have the lead on certain NPOESS activity. NOAA has overall program management responsibility for the converged system and for satellite operation. The DOD USAF Space and Missile Systems Center has the lead on the acquisition and contract management. NASA has primary responsibility for facilitating the development and incorporation of new technologies into the converged system. NOAA and DOD share

-7-

FIRST AMENDED COMPLAINT

the costs of funding NPOESS, while NASA funds specific technology projects and studies.

13.

Overall NPOESS program oversight is assigned to an executive committee ("EXCOM") composed of the top officials from each of the IPO agencies: the Under Secretary of Commerce for Oceans and Atmosphere, the Under Secretary of Defense for Acquisition and Technology, and the NASA Deputy Administrator. In November 2005, the NPOESS EXCOM established a Program Executive Office ("PEO") to independently oversee the IPO and conduct an ongoing independent analysis and review of the NPOESS program.

14.

In August 2002, DOD procurement authority awarded a single NPOESS integration contract for $4.5 billion to the prime contractor NORTHROP for the procurement of six satellites and seven instrument sensors, incorporating previously awarded sensor contracts as subcontracts to the prime contract, including the RAYTHEON VIIRS Subcontract 65349DGE2S. The NORTHROP prime contract included base fee and rollover award fee provisions of up to 20% of the total estimated costs in the three types of fees:

(1) Base Fees are guaranteed 2% of estimated costs, which are paid to the contractor automatically each billing period.

(2) Award Fees up to 13% of estimated cost or $369,294,988 are based on the contractor performance in management, technical and cost.

(3) Mission Success Fees up to 5% of estimated cost or $136,817,498 are based upon the contractor performance concerning seven program events.

−8−

FIRST AMENDED COMPLAINT

15.

At least $123 million, which constitutes from 84% to 90% of the available award fee pool, has been paid by the United States Government in spite of the false claims, reports and statements alleged herein. The NPOESS contract provides that all award fees are "at risk", whereby NORTHROP will have to return up to 100% if NORTHROP fails to deliver a NPOESS system that provides useful service over the life of the NPOESS. Plaintiff alleges that 100% of the award fees should be returned by NORTHROP caused by the false claims alleged herein, especially in the event that the EXCOM or IPO decide not to launch the first NPOESS satellite because of the defective nonconformance VIIRS which will compromise the NPOESS mission assurance and cause the NPOESS downgrade or failure.

16.

NASA is engaged in the NASA Preparatory Project ("NPP") which will launch a demonstration satellite equipped with VIIRS and two other critical sensors in order to test their operation prior to the launch of the first NPOESS. Delays and cost overruns have pushed the NPOESS Preparatory Project ("NPP") launch to 2009 at the earliest and the NPOESS launch to 2012 at the earliest. VIIRS itself is at least 12% behind schedule, and at least 30% overrun, and has caused over 60% of the NPOESS contract overrun, whereby NPOESS is currently under review pursuant to the Nunn-McCurdy provision of the FY 1982 National Defense Authorization Act. The RAYTHEON First Flight VIIRS (S/N 001) was so defective that it has been relegated to a nonflight nonentity. The Second Flight VIIRS (S/N 002) is now the First Flight VIIRS, and has been delivered by RAYTHEON El Segundo to RVS Goleta. The VIIRS Third (S/N 003) and

—9—

FIRST AMENDED COMPLAINT

Fourth (S/N 004) Flight VIIRS are now the Second and Third Flight VIIRS, which are presently in production at RAYTHEON El Segundo, all with the false defective nonconformances alleged with particularity hereinafter. The RAYTHEON VIIRS the latent defective nonconformances will compromise the NPOESS mission assurance, and cause the NPOESS mission degrade or failure.

17.

The RAYTHEON VIIRS Subcontract 65349DGE2S and the Statement of Work for the VIIRS Day/Night Band Module Assembly, P/N 417350-100, are incorporated herein by reference, including the reference documents and revisions thereto:

(1)    Integrated Master Plan (IMP) PDM# Y0013233-0004.

(2)    Integrated Master Schedule (IMS), PDM# Y0013234

(3)    Quality Requirements (QR), PDM# Y0013221

(4)    Quality Control Plan, PDM# Y1433

(5)    SBRS Reliability Program Plan for NPOESS/VIIRS, #Y3584

(6)    SBRS Configuration Management Plan for NPOESS/VIIRS, #Y6445

(7)    Approved Materials and Process List, AMPL154640

(8)    Approved Parts List (EEE) VIIRS, APL154640

(9)    Structural Product Specification, PS154640-111

(10)   Thermal Product Specification, PS154640-112

(11)   Electronics Module, Product Specification for Visible/ Infrared Imager Radiometric Suite, PS154640-114

(12)   Contamination Control Plan, PS154640-132

(13)   Process Specification for Packaging, Handling, and Storage of VIIRS Modules, PS154640-730

(14)   FPIE Assy Interface Control Document (ICD), 421310-500

-10-

FIRST AMENDED COMPLAINT

(15)   Focal Plane Assy – DNB FPA ICD, 417360–500

(16)   DNB Module Electrical ICD, 417350–500

18.

VIIRS NON–FLIGHT FPA EDU2 and FPIE

FLIGHT UNIT NONCONFORMANCE CHRONOLOGY

One of the "Quality Findings" during the first CTI meeting held July 30, 2004 was the discovery that RAYTHEON Test Specifications TP154640–760 (Functional Acceptance Testing) and TP154640–764 (Vibration Acceptance Testing) were not "Baseline" released, and the RAYTHEON STE (Special Test Equipment) Rack had not been pre-qualified prior to hook–up and use in Acceptance Testing of VIIRS Flight hardware in violation VIIRS Program Quality Requirements. It was during this subsequent STE Qualification that the VIIRS integrity exposure occurred.

During one of the Cold–Box (Dewar) STE Qualification tests, it was necessary to configure the Downgraded Non–Flight FPIE Emulator (S/N 001) and the Non–Flight FPA EDU2 (Engineering Demonstration Unit #2) in combination into the Cold–Box (Dewar) in a simulated DNB Flight configuration. The Non–Flight FPA EDU2 rigid–flex cable is approximately 2.00" shorter than the Flight version. This caused excessive strain to be placed on the rigid–flex cable while stretching to make the mate with the FPIE Emulator J1 and J2 Connectors. Later this same strain would be placed on the FPIE Flight Unit and would become the source of damage to the FPIE Chassis Mounting Feet (bent while mounting Rigid Flex Cables).

The FPA EDU2 (Engineering Demonstration Unit #2) had not been assembled as a Flight Unit and was missing the Connector Backshells, it was instead potted as a means of electrical

–11–

isolation and was a very poor means of mechanical protection against shorting when mating.

As strain was applied during mating, internal pins broke at the FPA EDU2 potted Connectors causing a dead short to occur. The power was switched on and the Downgraded Non-Flight FPIE Emulator and FPA EDU2 Unit circuits were subjected to a dead-shorted condition. Several subsequent analysis tests were performed to determine if the Non-Flight FPIE Emulator circuits had suffered damage. There is no test to determine if a latent defect will manifest itself later.

The VIIRS FPA EDU2 unit was removed and sent to RVS/SBRS (RAYTHEON Vision Systems/Santa Barbara Remote Sensing in Goleta, California) for repairs. Clifford Nichols – RVS Systems Engineer, informed Relator MATESKI that RVS/SBRS had replaced the 100 pin Connector and the 51 pin Connector. When asked why there were no Backshells to protect the Connector pins from breaking and/or shorting, Clifford Nichols replied, "This is the way we've done it for 25 years, we're not going to change now."

Relator MATESKI went to Ronald Estes, RAYTHEON El Segundo Lead Engineer, and demanded he use his authority to have the Backshells installed on the FPA EDU2 Unit in RAYTHEON (RVS) in Goleta, as RAYTHEON El Segundo had just rebuilt all the sub-standard STE cables at tremendous VIIRS Program expense to ensure that this sort of failure would not happen in Acceptance testing. Ronald Estes, RAYTHEON Lead Engineer in El Segundo, agreed and asked Relator MATESKI to put it in writing, and send it in an Email to him. He agreed to forward it through channels to Clifford Nichols – Lead Engineer RAYTHEON (RVS) Goleta, who finally agreed to install the

-12-

FIRST AMENDED COMPLAINT

Backshells.

Clifford Nichols called to inform Relator MATESKI that RAYTHEON (RVS) in Goleta was about to return the FPA EDU2 Unit to RAYTHEON El Segundo.  When asked if RAYTHEON (RVS) had buzzed—it—out to determine if any damage had occurred when the pins were shorted together, Clifford Nichols responded that limited probing had been performed but he was not certain what the results meant, and agreed to do some additional point—to—point probe testing.  Subsequently a dead short to ground was found and a decision was made to isolate the stage 1B right and left circuits by removing the wire bonds (2 places) at the flex cable to Interface Circuit Board (ICB).  When this was done, the dead short was gone, but so was the capability to Acceptance Test the VIIRS FPIE Flight 1 Unit stage 1B right and left gates.

The 421310—100 S/N 002 FPIE Flight 1 Unit was never tested on these circuits.  Authorization for the use of this Non—Flight FPA EDU2 Unit (with a non—functioning Stage 1B right and left) for Acceptance Testing of Flight Hardware is not documented anywhere on the VIIRS Flight FPIE book, is prohibited by the VIIRS Program Quality Requirements and Test Procedures.

The RAYTHEON excuse was that the VIIRS FPIE Flight 1 Unit would be tested at the Next Assembly when the Unit is installed in the spacecraft and all system testing gets repeated.  To date, and since the rebuild, the VIIRS FPIE (S/N 002) Flight 1  Unit has never had the "Cold" Acceptance Test performed in conjunction with and using a Flight Quality FPA Unit.  The VIIRS FPIE/FPA tuning data must be performed as a "Matched Pair" for optimal system performance.  If it performs poorly and has to be returned to

-13-

FIRST AMENDED COMPLAINT

RAYTHEON El Segundo for retuning (3-6 month delay minimum), RAYTHEON will not know this until the VIIRS FPIE/FPA is tested at the spacecraft because this testing was never conducted at the lower DNB (FPIE/FPA) level as required. The reason the Flight FPA was not available, is because the RAYTHEON VIIRS FPIE Flight 1 Unit was rejected in the first attempt at CTI sell-off and delivery. The Flight FPA was integrated into the Next Assembly so the spacecraft could proceed forward while the VIIRS FPIE Flight 1 (S/N 002) Unit was to be rebuilt and retested (all at NPOESS/VIIRS Program expense). The 421310-100 FPIE Flight 1 (S/N 002) Unit has not been tested to the VIIRS Flight (DNB) requirements as defined in TP154640-762, Revision A.

During August, 2006, undisclosed during the IPO and Aerospace Corporation VIIRS audit on August 29-30, 2006, RAYTHEON Goleta (RVS) reopened the VIIRS FPIE for retuning and has requested resister selects from RAYTHEON El Segundo, which invalidates the cleaning, bake-out, and all prior VIIRS Lower Level Unit Acceptance Testing, including ambient performance test, protoflight vibration test, and protoflight thermal cycle test at RAYTHEON El Segundo.

19.

VIIRS PROHIBITED MATERIALS INSPECTION AND EXONERATION CHRONOLOGY

The RAYTHEON PMI/PME (Prohibited Materials Inspection / Prohibited Materials Exoneration) process was implemented late in the VIIRS program (as admitted in RAYTHEON Unauthorized Waivers RDW_VIIRS-W012A, RDW_VIIRS-W014 "Attach A – Description" violation of NGIID D31418 Revision B, and RAYTHEON Invision Issue 25, April/May 2006 page 5 article "Mission Assurance in Action – Taking a Deliberate Approach to Prohibited Materials on VIIRS"). While

-14-

FIRST AMENDED COMPLAINT

the restriction on the use of Prohibited Materials in space has been known for over 29 years (Mil-Hdbk 5400), RAYTHEON has only implemented their Prohibitive Material Plan in mid-2005.  In light of the fact that use of Prohibited Materials is clearly warned against in the NPOESS/VIIRS Contamination Control Requirements Specification PS154640-132, Paragraph 4.4 (Design considerations), Paragraph 4.4.1 (Design constraints), Paragraph 4.6 (Materials and processes selection), Paragraph 4.6.1 (Metallic materials selection), and Paragraph 4.6.3 (Forbidden materials), RAYTHEON continued to design-in and consume these materials in VIIRS Flight Units.  After extensive rework, the VIIRS FPIE Flight 1 Unit still has Prohibited Materials onboard (debris generating fastener hardware and; pure Tin plated components), and uses prohibited processes (Electrodeposited Nickel plating).  Prohibited material and processes are still listed in the VIIRS Engineering Drawing Notes and Parts Lists.  In addition to the VIIRS FPIE, numerous other VIIRS Units/systems are in a comparable compromised condition as documented in the following NCMRs and/or Unauthorized Waivers; NCMR EIS69006, NCMR EIS74862, NCMR EIS77143-1, NCMR EIS77144-1, NCMR EIS77169-1, NCMR EIS77511, NCMR EIS76924, NCMR EIS77819, RDW_VIIRS-W010, RDW_VIIRS-W012A, RDW_VIIRS-W014, RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, and RDW_VIIRS-W028.

Units for the VIIRS Flight 1 have been assembled using Components where zero Lot inventory remains, have not been tested for Prohibited Materials and/or Prohibited Processes and have been systematically accepted for Flight use by unapproved false RDWs thereby jeopardizing system performance and Mission Assurance for

-15-

FIRST AMENDED COMPLAINT

Flight 1 as well as Future VIIRS Flight Missions 2, 3, and 4 where partial assembly has already begun under comparable conditions. Requirements have been circumvented by RAYTHEON VIIRS RDWs, including without limitation:

421310-100 (Numerous Components FU1) RDW_VIIRS-W015

414505-110 (Numerous Components FU1) RDW_VIIRS-W020A

416960-100 (Numerous Components FU1) RDW_VIIRS-W020A

415652-100 (Numerous Components FU1) RDW_VIIRS-W020A

415695-100 (Numerous Components FU1) RDW_VIIRS-W020A

415620-100 (Numerous Components FU1) RDW_VIIRS-W020A

415655-100 (Numerous Components FU1) RDW_VIIRS-W020A

415650-100 (Numerous Components FU1) RDW_VIIRS-W020A

415640-100 (Numerous Components FU1) RDW_VIIRS-W020A

414505-100 (Numerous Components FU1) RDW_VIIRS-W020A

415750-1 (Numerous Components FU1 - 2 Units) RDW_VIIRS-W020A

415750-2 (Numerous Components FU1) RDW_VIIRS-W020A

415660-100 (Numerous Components FU1) RDW_VIIRS-W020A

415630-100 (Numerous Components FU1) RDW_VIIRS-W020A

415670-100 (Numerous Components FU1) RDW_VIIRS-W020A

415709-100 (Numerous Components FU1) RDW_VIIRS-W020A

415701-100 (Numerous Components FU1) RDW_VIIRS-W020A

415700-100 (Numerous Components FU1) RDW_VIIRS-W020A

415610-100 (Numerous Components FU1) RDW_VIIRS-W020A

415680-100 (Numerous Components FU1) RDW_VIIRS-W020A

415690-100 (Numerous Components FU1) RDW_VIIRS-W020A

417700-110 (Numerous Components FU1) RDW_VIIRS-W021

417680-110 (Numerous Components FU1) RDW_VIIRS-W021

418200-110 (Numerous Components FU1) RDW_VIIRS-W022A

-16-

FIRST AMENDED COMPLAINT

418300-110 (Numerous Components FU1) RDW_VIIRS-W022A

418000-110 (Numerous Components FU1) RDW_VIIRS-W022A

418700-110 (Numerous Sub Assys FU1-6 Units) RDW_VIIRS-W022A

426300-100(-1) (Numerous Components FU1) RDW_VIIRS-W023

426350-100(-1) (Numerous Components FU1) RDW_VIIRS-W023

418700-110(-1) (Numerous Components FU1) RDW_VIIRS-W023

414505-110 (Numerous Components FU1) RDW_VIIRS-W026

414505-110 (Numerous Components FU1) RDW_VIIRS-W027

From at least August, 2002 to 2006, Defendant RAYTHEON knowingly and in deliberate ignorance and reckless disregard of established Contamination Control Design Considerations and Prohibited Material Constraints have caused and invoiced NPOESS and VIIRS false claims which compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and will cause the NPOESS mission downgrade or failure, as alleged with particularity hereinafter.

20.

### VIIRS CHRONOLOGY OF WORK PERFORMED IN ADVANCE
### OF FORMAL RELEASED ENGINEERING DRAWINGS.

RAYTHEON often directs employees to perform work prior to release of Engineering Drawings. Relator MATESKI has been asked on numerous occasions to "move-out" and begin work in advance of drawing release on both Flight and Non-Flight programs alike. Upon entering the VIIRS Program, Relator MATESKI discovered that many if not all of the STE cables and much of the STE equipment had been built and/or purchased without regard to a Base-line Drawing Release, a Planning Book, or Purchase Order trace. Planning books are dummied-up after-the-fact to match the hardware built once the drawing is released. When operating in this manner, it becomes

-17-

FIRST AMENDED COMPLAINT

impossible to perform a valid configuration check prior to Final Inspect and equally impossible to perform a true Inspection. The RAYTHEON use of contract job shopper Planners, poorly documented and/or convoluted Manufacturing Processes, constant rotation of Planners within assignments, willingness to take shortcuts when stopped for lack of documentation, and failure to provide closed-loop processes coupled with an inventory system and Shop Floor Router system that does not support Basic Manufacturing and Planning needs, has led to numerous Configuration Deltas on the VIIRS Program. These methods are also being employed on other programs causing similar results. RAYTHEON calls it "Concurrent Engineering" where Engineering Design Drawings are not ready for release, but are released without a formal drawing check process to obtain earned value. Drawings are then constantly corrected on-the-floor in the shop labs using a Red-Line process causing tremendous additional program expense and disruption while in the manufacturing cycle. The appearance on the surface is that things are getting done faster, and that manufacturing is incompetent because they cannot get anything built. In reality, the Engineering Designs are incomplete often forcing out-of-sequence manufacturing work-arounds and thereby does compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and will cause the NPOESS mission downgrade or failure, constituting Product Substitution as alleged with particularity hereinafter.

21.

From August, 2002 to at least 2006, at RAYTHEON El Segundo and Goleta, Defendant RAYTHEON *inter alia* John Bouregy, Program Manager, M. Pavloff, Program Manager, Ronald Estes, ELS Lead

-18-

Engineer and Test Director, Michael Haley, Operations Manager, Eugene Jaramillo, Head of Quality Assurance, Thomas James (Retired), Responsible Engineering Authority, Cledith Davis, Program Quality Assurance, Timothy Kilduff, Test Technician, Mario Farr, Shop Supervisor, Bernard Malis (Retired), Manager of Manufacturing, Clifford Nichols, RVS Systems Engineer, Robert Wong, Design Engineer, Mark Ross (Ex-employee), ELS Quality Assurance, Steven Adams, Configuration Management, Marilyn Medel, RVS Quality Assurance, Richard Julien, RVS Lead Engineer, John Clement, RVS Systems Engineer, Richard Murth, Components Engineer, knowingly in deliberate ignorance and reckless disregard has caused and invoiced NPOESS/VIIRS false claims, false statements, and false records, which compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, including without limitation:

(1) False RAYTHEON Reckless Disregard by Engineering Design Failure to Comply with NPOESS/VIIRS Contamination Control Specifications. [Paragraph 22, Page 26]

(2) False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit Chassis and Bottom Cover and Failure to Document. [Paragraph 23, Page 27]

(3) False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit Materials. [Paragraph 24, Page 28]

(4) False RAYTHEON Reckless Disregard by Use of Prohibited Processes in Production of the VIIRS FPIE Unit Materials. [Paragraph 25, Page 29]

(5) False RAYTHEON Reckless Disregard to Design and Produce

-19-

FIRST AMENDED COMPLAINT

the VIIRS Specified FPIE Primary and Redundant J7A and J7B Power Feed Connectors.  [Paragraph 26, Page 33]

(6)  False VIIRS ESD Exposures, Multiple ESD Exposures, and Latent Defects.  False RAYTHEON Reckless Disregard of VIIRS ESD Protection of Flight Quality Hardware During Assembly.  [Paragraph 27, Page 34]

(7)  False RAYTHEON Reckless Disregard by Failure to Install the Shorting Plugs or ESD Dust Caps on Connectors While Not in Use to Protect VIIRS Hardware during Assembly and Handing per VIIRS FE94 Program Quality Requirements.  [Paragraph 28, Page 37]

(8)  False RAYTHEON Reckless Disregard to Maintain ESD Protection of VIIRS Flight Quality Hardware During Workmanship Thermal Cycle Testing.  [Paragraph 29, Page 39]

(9)  False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS ESD Design Approval for Materials and Equipment Used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware (Thermal Cycle Testing Equipment – Butterfly Fixture). [Paragraph 30, Page 41]

(10)  False RAYTHEON Reckless Disregard by ESD Protections of VIIRS Flight Quality Hardware During Acceptance Testing. [Paragraph 31, Page 42]

(11)  False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS ESD Design Approval for Material and Equipment used in meeting ESD Protection Requirements for VIIRS Flight Hardware (Acceptance Testing Equipment – STE Cables).  [Paragraph 32, Page 44]

(12)  False RAYTHEON Reckless Disregard to Maintain ESD Protection of VIIRS Flight Quality Hardware During Cold Acceptance

–20–

FIRST AMENDED COMPLAINT

Testing.  [Paragraph 33, Page 45]

(13)  False VIIRS Cold Acceptance Testing ESD Exposures.  False RAYTHEON Reckless Disregard to Obtain prior VIIRS ESD Design Approval for Materials and Equipment used in meeting ESD Protection Requirements for VIIRS Flight Hardware.  [Paragraph 34, Page 47]

(14)  False RAYTHEON Reckless Disregard to Identify and Implement VIIRS ESD Rigid Controls Requirements on the Drawings. [Paragraph 35, Page 47]

(15)  False RAYTHEON Reckless Disregard by Circumvention of VIIRS Test Specifications, First Article Testing, and Test Protoflight Specifications.  [Paragraph 36, Page 50]

(16)  False RAYTHEON Reckless Disregard to Perform 3-Axis Random Vibration Protoflight Test Specifications on First Article VIIRS Flight Hardware.  [Paragraph 37, Page 51]

(17)  False RAYTHEON Reckless Disregard by Failure to Test VIIRS FPA/FPIE Units as a "Matched Pair" to Verify Compliance with the DNB Performance Specification.  [Paragraph 38, Page 56]

(18)  False Defective Nonconformance VIIRS Cold (Dewar) Acceptance Testing.  False RAYTHEON Reckless Disregard to Perform Cold Acceptance Test Requirements on First Article DNB VIIRS Flight Hardware.  [Paragraph 39, Page 58]

(19)  False RAYTHEON Reckless Disregard to Perform VIIRS Thermal Cycling per Acceptance Test Requirements on First Article DNB Flight Hardware.  [Paragraph 40, Page 60]

(20)  False RAYTHEON Reckless Disregard to Perform to VIIRS EMI/EMC Test Requirements on First Article DNB VIIRS Flight Hardware.  [Paragraph 41, Page 62]

-21-

FIRST AMENDED COMPLAINT

(21)   False RAYTHEON Reckless Disregard by Circumvention of VIIRS Procurement Processes, Qualification Testing of Procured Components, and Trace Specifications for Space Programs.   False Reckless Disregard to Procure VIIRS Flight Parts Through Supply Chain Circumventing Quality.   False RAYTHEON Reckless Disregard to Maintain Space Trace Requirements on VIIRS Flight Parts Throughout Buildup of VIIRS.   [Paragraph 42, Page 63]

(22)   False RAYTHEON Reckless Disregard by Initial Failure to Perform VIIRS Qualification Testing, Destructive Physical Analysis Testing, Radiation Lot Acceptance Testing, Burn-in at specified levels, and Prohibitive Material Inspection on VIIRS Flight components.   [Paragraph 43, Page 65]

(23)   False RAYTHEON Reckless Disregard of Initial Failure to Perform X-Ray Testing on VIIRS Flight Parts.   [Paragraph 44, Page 67]

(24)   False RAYTHEON Reckless Disregard to Segregate VIIRS Flight vs. Non-Flight Hardware During VIIRS Assembly.   [Paragraph 45, Page 68]

(25)   False RAYTHEON Reckless Disregard to Document and Utilize VIIRS Flight Hardware to Released Engineering During VIIRS Assembly.   [Paragraph 46, Page 71]

(26)   False RAYTHEON Reckless Disregard to Design to Provide ESD Protection for VIIRS Materials and Equipment in Compliance with ESD and EMI/EMC Requirements for VIIRS Flight Hardware.   [Paragraph 47, Page 74]

(27)   False RAYTHEON Reckless Disregard by Failure to Develop and Document Software Used in Acceptance Testing of VIIRS Flight Hardware.   [Paragraph 48, Page 76]

-22-

(28)    False  RAYTHEON  Admission  of  VIIRS  Defective Nonconformance in RDW_VIIRS-W018 by Reckless Disregard of ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications. [Paragraph 49, Page 77]

(29)    False  RAYTHEON  VIIRS  Admission  of  Defective Nonconformances in RDW_VIIRS-W024 by Reckless Disregard of Unit Failures to Perform to VIIRS Specifications.  [Paragraph 50, Page 78]

(30)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RDW_VIIRS-010, RDW_VIIRS-W012A, and RDW_VIIRS-W014 by Reckless Disregard of RAYTHEON Designed In Use of Prohibited Materials.  [Paragraph 51, Page 79]

(31)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers VIIRS RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 by Reckless Disregard of Zero Inventory Components in Lieu of Prohibited Materials Testing. [Paragraph 52, Page 80]

(32)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waiver VIIRS RDW_VIIRS-W018 by Reckless Disregard of ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications.  [Paragraph 53, Page 83]

(33)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waiver VIIRS RDW_VIIRS-W024 by Reckless Disregard of Unit Failures to Perform to VIIRS Specifications. [Paragraph 54, Page 84]

(34)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RDW_VIIRS-W005, 417500-110 (FU1),

-23-

FIRST AMENDED COMPLAINT

RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) by Reckless Disregard of RAYTHEON VIIRS Design Failures to Meet Corrosion and Dissimilar Metals Specifications.  [Paragraph 55, Page 85]

(35)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-100, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100 by Reckless Disregard of Required VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements.  [Paragraph 56, Page 87]

(36)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waiver VIIRS RWD_VIIRS-W001 by Reckless Disregard of VIIRS EMI/EMC and ESD Exposure Specifications. [Paragraph 57, Page 88]

(37)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers VIIRS RDW_VIIRS-W018, and RDW_VIIRS-W024 by Reckless Disregard of VIIRS System Units Failures to Perform to Specifications.  [Paragraph 58, Page 90]

(38)  RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RTMA RDW_VIIRS-W001, 417700-110 (FU1), HAMMA RDW_VIIRS-W001, and 417700-110 (FU1) by Reckless Disregard to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware.  [Paragraph 59, Page 91]

(39)  False Unauthorized RAYTHEON Waivers RDW_VIIRS-W010, RDW_VIIRS-W012A, and RDW_VIIRS-W014 to Circumvent and Conceal RAYTHEON Designed In Prohibited Materials.  [Paragraph 60, Page 92]

-24-

FIRST AMENDED COMPLAINT

(40)    False Unauthorized RAYTHEON Waivers RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_ VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 to Circumvent and Conceal Zero Inventory Components in Lieu of Prohibited Materials Testing. [Paragraph 61, Page 92]

(41)    False Unauthorized RAYTHEON Waiver RDW_VIIRS-W018 to Circumvent and Conceal ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications.  [Paragraph 62, Page 93]

(42)    False Unauthorized RAYTHEON Waiver RDW_VIIRS-W024 to Circumvent and Conceal Unit Failures to Perform to VIIRS Specifications.  [Paragraph 63, Page 93]

(43)    False Unauthorized RAYTHEON Waivers RDW_VIIRS-W005, 417500-110 (FU1), RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) to Circumvent and Conceal RAYTHEON VIIRS Design Failures to Meet Corrosion and Dissimilar Metals Specifications.  [Paragraph 64, Page 94]

(44)    False Unauthorized RAYTHEON Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-110, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100, to Circumvent and Conceal VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements.  [Paragraph 65, Page 95]

(45)    False Unauthorized RAYTHEON Waiver RDW_VIIRS-W001 to Circumvent and Conceal VIIRS EMI/EMC and ESD Exposure.  [Paragraph 66, Page 95]

(46)    False Unauthorized RAYTHEON Waivers RDW_VIIRS-W018, and RDW_VIIRS-W024 to Circumvent and Conceal VIIRS System Units

—25—

FIRST AMENDED COMPLAINT

Failures to Perform to VIIRS Specifications. [Paragraph 67, Page 96]

(47) False Unauthorized RAYTHEON Waivers RTMA RDW_VIIRS-W001, 417700-110 (FU1), HAMMA RDW_VIIRS-W001, and 417700-110 (FU1), in Reckless Disregard to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware. [Paragraph 68, Page 96]

22.

False RAYTHEON Reckless Disregard by Engineering Design Failure to Comply with NPOESS/VIIRS Contamination Control Specifications. Specification; VIIRS PS154640-132, Paragraph 4.4 (Design considerations), Paragraph 4.4.1 (Design constraints), Paragraph 4.4.4 (Corrosion prevention), Paragraph 4.6 (Materials and processes selection), Paragraph 4.6.1 (Metallic materials selection), and Paragraph 4.6.3 (Forbidden materials).

False Defective Nonconformance: In deliberate ignorance and reckless disregard, RAYTHEON Engineering designed-in use of Prohibited Materials (pure Tin), use of Prohibited Metallic materials known to cause corrosion (Galvanic Effects) when used together, use of Debris shedding locking fasteners (locking Heli-Coils), use of Prohibited Materials and processes selected (Electro-deposited Nickel plating), and Failure to identify "Class 2 Rigid ESD Controls" protection for electronic components easily damaged by ESD conditions exceeding their "Maximum Withstand Voltage Ratings" for use in Flight Units, which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, resulting in NPOESS mission downgrade or failure, thereby constituting

-26-

FIRST AMENDED COMPLAINT

Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

23.

False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit Chassis and Bottom Cover and Failure to Document.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, sub-section "I" of the Contamination Control Requirements Specification for the VIIRS (Visible/Infrared Imager Radiometer Suite) specifies: The use of the following materials on the VIIRS sensors is forbidden:

I.   Plated, threaded fasteners, including connectors, where rotational engagement may generate metal debris.

False Defective Nonconformance:  Units for the VIIRS FPIE Flight 1, 2, 3, and 4 have been designed using Prohibited Materials including without limitation:

421312 FPIE Chassis - 421312 Drawing F/Ns 2 & 3 (69 places total)

421314 FPIE Top Cover - 421314 Drawing F/N 2 (6 places total)

In RAYTHEON deliberate ignorance and reckless disregard, prohibited material and processes are still listed in the VIIRS Engineering Drawing Notes and Parts Lists.

Locking Heli-Coils are designed to interrupt the Major Diameter of the Screw thread during installation.  As the fastener rotational installation is made, the Major Diameter of the Screw thread displaces the Heli-Coil interrupted thread flats (3 places each) causing the interrupted thread to expand the seize the Screw. This additional friction causes metal galling to occur providing the locking action.  Each time the fasteners are installed or

-27-

removed, metallic dust and debris are generated within the fastener holes. Inserts and attach screws are fabricated of similar hardness corrosion resistant (CRES) materials exacerbating the problem. The 421310-100 FPIE Flight 1 Unit has a total of (75) Undocumented Debris Generating Design Deficiency locations. As Screws are installed and/or removed, metallic debris is generated contaminating CCAs (Circuit Card Assemblies) Conformal Coatings, and surrounding hardware. Final connection of J1 & J2 Connectors made on the Spacecraft Next Assembly will contaminate surrounding systems upon final attach in the clean room. In a zero-gravity environment, metallic particles are free to migrate, bridge, and short-out electronic components, and/or redeposit on the optics surfaces severely limiting and/or degrading performance. RAYTHEON knowingly failed to disclose a total of (75) known but undocumented Debris Generating locations so that the VIIRS Units are unfit for integration into the next assembly as integration compromises the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

24.

False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, sub-section "D & E" of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite VIIRS) specifies: The use of the following materials on the VIIRS sensors is forbidden:

-28-

FIRST AMENDED COMPLAINT

D.   Tin plating unless subsequently fused or reflowed.

E.   Pure, unalloyed Tin (greater than 99.1% Sn).

<u>False Defective Nonconformance</u>:   The J7 Power Connector is wired with forbidden ("D & E") materials of pure Tin plated wire (421327 Drawing F/N 53), and Resistors M55342H06B6E65S End Bells (421331 Drawing F/N 55) were found to be pure Tin dipped (NCMR ELS69006). RAYTHEON has falsely stated (RDW_VIIRS-W014) that the pure Tin plated wire would be acceptable for flight use despite the failure to pot the J7 Power Connector per 421327 Drawing Note 33.   The J7 Power Connector is the VIIRS FPIE Primary Power Connector.   There is no other Redundant Power Connector.   If the J7 Power Connector shorts, the DNB shuts down to cause an NPOESS/VIIRS catastrophic failure compromising the NPOESS/VIIRS Unit/System integrity resulting in mission downgrade or failure.

In RAYTHEON deliberate ignorance reckless disregard, several other VIIRS Units/Systems extensively identified in the following RAYTHEON VIIRS RDWs either use prohibited materials and/or, were never tested for prohibited materials and have been systematically accepted for Flight use on False Unauthorized RAYTHEON Waivers including but not limited to: RDW_VIIRS-W010, RDW_VIIRS-W012A, RDW_VIIRS-W014, RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, and RDW_VIIRS-W028, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

25.

<u>False RAYTHEON Reckless Disregard by Use of Prohibited Processes in Production of the VIIRS FPIE Unit Materials</u>.

-29-

FIRST AMENDED COMPLAINT

Specification:   RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, sub-section "W" of the Contamination Control Requirements   Specification   for   the   Visible/Infrared   Imager Radiometer Suite VIIRS) specifies: The use of the following Process materials on the VIIRS sensors is forbidden:

> W.   Electrolytic nickel plating unless an Electroless process
> is employed, or electrolytic nickel is used on a non-optical
> surface as an underplate, diffusion barrier or coating.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF231780 Nickel Plating Requirements: Nickel Plaiting shall not be used (unless an electroless process is employed) in any instrument design.

False Defective Nonconformance:  The VIIRS FPIE hardware is plated with   forbidden   ("W")   materials   consisting   of   Electrodeposited Nickel as follows:

> Chassis, FPIE, (421312 Drawing, Note 3)
> Top Cover, FPIE, (421314 Drawing, Note 3)
> Bottom Cover, FPIE, (421317 Drawing, Note 3)
> PWB, A/D Board, (421328 Drawing, Note 12)
> PWB, Clock Board (421332 Drawing, Note 12)
> Spacers, J8 (421327 Drawing, Note 34)

As previously alleged, the J7 Power Connector is the VIIRS FPIE Primary Power Connector.   There is no other Redundant Power Connector.  If the J7 Power Connector shorts, the DNB shuts down to cause a NPOESS/VIIRS catastrophic failure.  The J7 Power Connector was never potted and sealed to mitigate venting through the mating connector to the atmosphere thus creating an open uncontrolled leak to the environment (NCMR N00015) as opposed to the controlled top cover venting.  Outgassing, flaking, debris shedding Electrodeposited Nickel plating (from unpainted FPIE internal surfaces) and metallic debris (generated by locking attach

-30-

FIRST AMENDED COMPLAINT

hardware) are free to migrate forward between the "J7" Power Connector pins and the Connector Pin Spacing Header (approximately 5 mil gap at each pin 25 places total).

In early March 2005 Relator MATESKI raised questions of the team regarding the use of unsealed connectors on the FPIE Unit with Bernard Malis (Retired), Thomas James (Retired), Mario Farr, Ronald Estes, and Timothy Kilduff present in the daily team meeting. Comments were made by Mario Farr and Thomas James (Retired) that all Connectors used were of the prepotted (sealed) design and that the concern was unfounded. Later it was discovered by Relator MATESKI that the J7 Power Connector was of an unsealed design jeopardizing the FPIE Unit and the entire VIIRS system. Raising the issue again in several daily team meeting discussions, Relator MATESKI was able to convince the team that this J7 Connector should be potted and a drawing change was made. Bernard Malis (Retired), Thomas James (Retired), and Ronald Estes independently made the decision to omit the potting of the J7 Power Connector on the FPIE Flight 1 Unit due to schedule constraints. Relator MATESKI protested but was overruled and the J7 Connector remains unpotted to this day (NCMR N00015). This Major Defect was never presented to the customer in the form of a RAYTHEON VIIRS Waiver nor raised as a concern in RAYTHEON RDW_VIIRS-W012A.

RAYTHEON has falsely stated (RDW_VIIRS-W012A) that the Electrodeposited Nickel plating would be acceptable for VIIRS flight use because the VIIRS FPIE Flight 1 Unit was painted with an Epoxy-based paint effectively sealing most of the debris-shedding plated surfaces. RAYTHEON falsely stated that the remaining unpainted surfaces posed a minimal threat as the VIIRS

-31-

FIRST AMENDED COMPLAINT

FPIE Flight 1 Unit was not in the direct line of the optics.    In
RAYTHEON deliberate ignorance and reckless disregard, prohibited
materials and processes are still listed in the VIIRS Engineering
Drawing Notes and Parts Lists in RAYTHEON knowing noncompliance
with VIIRS contract specifications.

The use of Electrodeposited Nickel plating causes Hydrogen
Embrittlement to occur during the plating process trapping Hydrogen
gas at the plated surfaces.

The Covers-to-Chassis design did not allow for a Chromerics
EMI/EMC gasket seal installation preventing RAYTHEON from painting
the unit at the very end of build after testing. This required an
early out-of-sequence application of paint topcoat (prior to build-
up) causing the paint finish to endure several cleaning and bake-
out steps along the assembly build process.   The final result was
that the paint broke-down and degraded no longer meeting the
workmanship requirements of the HP 4-143 Paint Specification
(numerous pin holes, scrapes, wear-thin spots, and other defects
NCMR 70705).

RAYTHEON Design Engineering misapplication of Electrodeposited
Nickel plating caused Hydrogen outgassing through paint surfaces
creating numerous pinholes contributing to paint topcoat failure.
Pin holes in the painted surfaces allow numerous paths for
Electrodeposited metallic particles and degrading paint particles
shedding from plated surfaces to migrate and contaminate
surrounding systems and equipment.

Reckless disregard design use of prohibited Electroplating
processes, early out-of-sequence application of paint topcoat, and
subsequent cleaning and bake-out processes have caused the Epoxy-

-32-

FIRST AMENDED COMPLAINT

based paint to fail while the VIIRS FPIE is still on the ground. The perfect vacuum of a space environment can only serve to worsen that condition.

Only the VIIRS FPIE Flight 1 Unit outer Chassis surfaces are partially painted and none of the Chassis inner surfaces, or Top and Bottom Cover inner surfaces are painted. This represents a tremendous risk as particles migrate through the J7 Power Connector spacing header to create a short, and/or migrate through Chassis to Covers edges and/or Top Cover Vent Screen to redeposit on the optics surfaces severely limiting and degrading the VIIRS Unit and/or System performance, or in a worst-case scenario, produce a latent defect causing catastrophic failure compromising the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in NPOESS mission downgrade or failure.

Several other Units/Systems Extensively named in the following RAYTHEON RDWs use prohibited processes (Electro-deposited Nickel plating) and/or, were never tested for prohibited processes and have been systematically accepted for VIIRS Flight use as documented in False Unauthorized RAYTHEON Waivers, including without limitation, RDW_VIIRS-W010, RDW_VIIRS-W012A, RDW_VIIRS-W014, RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, and RDW_VIIRS-W028, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

26.

False RAYTHEON Reckless Disregard to Design and Produce the VIIRS Specified FPIE Primary and Redundant J7A and J7B Power Feed

-33-

FIRST AMENDED COMPLAINT

Connectors.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF230890 Primary and Redundant Power Requirements: Each Power Interface shall consist of Redundant Two (Isolated) Power Feeds Routed via Two Separate Connectors. These Connections are designated as Power Feeds A and B.

False Defective Nonconformance. In deliberate ignorance and reckless disregard, RAYTHEON knowingly failed to design and produce the VIIRS FPIE primary and redundant J7A and J7B power feed connectors, which compromises the NPOESS/VIIRS UNIT/SYSTEM integrity and mission assurance resulting in mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. 3729(a)(1).

27.

False VIIRS ESD Exposures, Multiple ESD Exposures, risking Latent Defects. False RAYTHEON Reckless Disregard of VIIRS ESD Protection of Flight Quality Hardware During Assembly.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001/2, Paragraph 3.2.9 ESDS item protection provides; ESDS items shall be individually or collectively protected using ESD protective coverings or packaging enclosures when not being worked on, during movement or when handled outside of ESD protected areas.

Paragraph 3.2.9.1 Work in process protective covering enclosures provides; On site work-in-process (WIP) protection of ESD items designated for Normal Controls (RP 10-001/1) shall include enclosures in protective covering containers and/or static shielding packaging (Ref: Paragraph 3.2.9.2.).

-34-

FIRST AMENDED COMPLAINT

Paragraph 3.2.9.2 Protective packaging, provides; Transportation of ESDS items (shipped by suppliers or moved between sites) and ESDS items designated for Rigid Controls (RP 10-001/2) shall be enclosed in static shielding type packaging materials for Preparation for Delivery, (Ref: Paragraph 5.0). Static shielding packaging materials shall conform to one or more of the following:

a. Shielding bags, pouches and bulk films shall meet the requirements of MIL-PRF-81705, Type I or Type III barrier materials.

b. Shielding bags and pouches shall be capable of a minimum 90 percent charge attenuation when evaluated per the ANSI/EIA-541 two probe capacitance test method.

Specification: RAYTHEON CAGE Code 4U884 RP 10-001/2, Paragraph 3.2.4.2. Rigid controls category, specifies:

Materials and equipment capable of generating more than the ESD sensitivity or withstand voltage limits of the most sensitive ESDS items being handled, shall not be permitted within the ESD protected area. Verification checks shall be performed no less than every 12 months or upon designating a SSWS with Rigid Control voltage limits. ESD threshold signs shall be placed on the individual workstations and/or work areas identifying ESD sensitivity or withstand voltage limits based on the sensitivity of the ESDS items being handled. For example, a Rigid Controls ESD threshold sign is shown in RP 10-001, (Fig 3.)

False Defective Nonconformance: The VIIRS FPIE Flight 1 (S/N 002) Unit was routinely disassembled and worked on (after attempted

-35-

FIRST AMENDED COMPLAINT

delivery at the first CTI sell-off meeting on July 30, 2004) in a Non-Flight STE Lab / Machine Shop environment located at E01/Rm C1250/Lab 22 and moved between Labs for bonding, cleaning, bake-out, and testing operations. As of February 2005, the Circuit Card level rework and Unit level assembly operations were carried out in a Non-Flight STE Lab / Machine Shop environment under conditions not following basic ESD grounding requirements: CCAs (Circuit Card Assemblies) awaiting work were not double ESD bagged, tote boxes had larger lids simply resting on the boxes without the ability to positively lock, and some of the kit box tote lids were not present. As kits awaiting work were pulled for work, lids were swapped with remaining kits stored on the incoming work rack. There were not enough lids for all of the tote boxes present. Work stations/areas were not identified with ESD sensitivity or withstanding voltage limits based on the sensitivity of the ESDS items being handled. This is in violation of RAYTHEON Specification RP 10-001, Paragraph 3.2.9 ESDS item protection, Paragraph 3.2.9.1 Work in process protective covering enclosures, Paragraph 3.2.9.2 Protective Packaging, and Paragraph 6.2.2 Rigid Controls.

VIIRS FPIE Unit Part Numbers 421310-100 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 (consisting of Circuit Card Assembly 421327 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 and 421331 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 respectively) have been exposed to Latent ESD Defect Failure conditions (multiple occurrences), which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, resulting in NPOESS mission downgrade or failure, thereby constituting Product Substitution and

-36-

FIRST AMENDED COMPLAINT

false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

28.

<u>False RAYTHEON Reckless Disregard by Failure to Install Shorting Plugs or ESD Dust Caps on Connectors While Not in Use to Protect VIIRS Hardware during Assembly and Handling per VIIRS FE94 Program Quality Requirements</u>.

<u>Specification</u>: Program QR (Quality Requirements) FE94, Line 9.4.A (9 & 10) specifies;

(9) Dust caps shall be used at all times when connectors are not in use.

(10) Shorting plugs or Conductive Dust Caps shall be used if directed by Engineering or Manufacturing.

<u>False Defective Nonconformance</u>: The FPIE Flight 1 Unit was routinely disassembled and worked on (after attempted delivery at the first CTI sell-off meeting on July 30, 2004) in a Non-Flight STE Lab / Machine Shop environment located at E01/Rm C1250/Lab 22 and moved between Labs for bonding, cleaning, bake-out, and testing operations. During the course of assembly and Workmanship Thermal Cycle Testing, the CCAs (Circuit Card Assemblies) should have Shorting Plugs or ESD Dust Caps applied to all connectors to prevent stray ESD (Electro Static Discharge) voltages from entering through open connectors "zapping" the hardware during build-up and testing as directed by Engineering (421327 CCA Drawing Notes 3, 30 and 421331 CCA Drawing Notes 3, 34 and 421310-100 FPIE Assembly Drawing Notes 6, 7, 22). Shorting Plugs and ESD Dust Caps were not in use throughout the entire initial build-up and testing of the VIIRS hardware from the beginning of the program through the end

-37-

FIRST AMENDED COMPLAINT

of the first Acceptance Test.  Shorting Plugs were then installed on the completed FPIE Unit and the first attempt to sell—off the Unit was made at the Goleta, California CTI sell—off meeting on July 30, 2004.

After the hardware was rejected at the first sell—off CTI (Consent to Integrate) meeting, numerous findings required subsequent rework in RAYTHEON El Segundo, California.  Shorting Plugs were removed and the hardware underwent additional disassembly, rework and handling in this unprotected condition until just prior to post—rebuild Acceptance Testing in mid—September 2005.  The RAYTHEON El Segundo facility stocks ESD Dust Caps for Sub—D connectors in the Cable Lab (such as the FPIE J7 Power Connector) but does not stock ESD Dust Caps for Micro—D Connectors (as are used in the FPIE J1, J2, J3, J4, J5, J6, J8, and P8 Connectors.  New ESD Protective Dust Caps were added to the Drawing on 9/09/05 (Ref: 225741 Drawing, Rev. A Parts List as shown below, and Note 22 was added to 421310—100 Drawing).  Micro—D ESD Dust Caps were subsequently purchased for use on the hardware approximately mid—September 2005 (Ref: 225741 Drawing, Rev. A Parts List):

| Item | Qty | Cage Code | P/N | Description |
|------|-----|-----------|-----|-------------|
| F/N 19 | 1 | 99017 | DCC—13 | ESD Dust Cap |
| F/N 20 | 2 | 10400 | MD051RS | ESD Dust Cap |
| F/N 21 | 1 | 10400 | MD051RP | ESD Dust Cap |
| F/N 22 | 1 | 10400 | MD100RP | ESD Dust Cap |
| F/N 23 | 2 | 10400 | MD100RS | ESD Dust Cap |
| F/N 24 | 1 | 10400 | MD037RP | ESD Dust Cap |
| F/N 25 | 1 | 10400 | MD037RS | ESD Dust Cap |

The FPIE Unit Part Number 421310—100 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 (consisting of circuit card assembly 421327 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 and 421331 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 respectively) have been

-38-

FIRST AMENDED COMPLAINT

exposed (multiple occurrences) to Latent ESD Defect Failure conditions, which compromise the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in NPOESS mission downgrade or failure. There is no test to determine if a VIIRS latent defect will manifest itself later throughout NPOESS/VIIRS launch, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

29.

False RAYTHEON Reckless Disregard by Failure to Maintain ESD Protection of VIIRS Flight Quality Hardware During Workmanship Thermal Cycle Testing.

Specification: RAYTHEON CAGE Code Specification RP 10-001, § 3.0.1 End product requirements – Workmanship, specifies:

Electrostatic Discharge Sensitive (ESDS) items covered by this specification shall be designed and handled to provide protection against Exposure(s) to damaging electrostatic fields, static discharges, and electrical transients. Protection shall be maintained continuously for all ESDS items from initial component receipt through assembly, test, system integration, and final shipment.

False Defective Nonconformance: During STE Rack (Dewar) Qualification The Non-Flight FPA EDU2 Unit had failed due to broken connector pins. The Non-Flight FPIE Emulator (Unit S/N 001) had been disassembled (for circuit damage analysis) and CCAs were installed into a test fixture Part Number 225741 (nick-named "The Butterfly Fixture"). The Butterfly Fixture was designed to be black anodized as shown per STE Drawing 225741, Sheets 2 and 3.

FIRST AMENDED COMPLAINT

Subsequent to the first CTI sell-off meeting on July 30, 2004, Relator MATESKI was notified by the Test Technician, Timothy Kilduff, that the Butterfly Test Fixtures anodic coating was preventing the achievement of ground and the test had been halted. After additional investigation, it was discovered that the anodic coating extended to all frame and fixture surfaces as well as threaded screw attach holes. It was discovered that RAYTHEON had a spare "Butterfly Test Fixture" that had not been completed (anodized) per STE Drawing 225741, Sheets 2 and 3 and was still in the "bare" aluminum condition. This "bare" fixture was substituted in and the test was resumed.

The FPIE CCA (Circuit Card Assembly) 421327 and CCA 421331 are required to be Workmanship Thermal Cycle Tested per their respective drawings (Note 10) at the CCA level. These CCAs are first mounted into "The Butterfly Fixture".

The anodized Butterfly Fixture was used on the FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship Thermal Cycling (prior to the first CTI sell-off meeting date 7/30/04), which without the ability to obtain "a continuous ground", violated RAYTHEON procedures by Failure to Maintain Hard ESD Protection throughout the manufacturing cycle per RAYTHEON Specification RP 10-001, Paragraph 3.0.1 End product requirements-Workmanship.

The FPIE Unit CCA 421327 S/Ns 001, 002, & 003 and CCA 421331 S/Ns 001, 002 & 003 (used in the FPIE Unit 421310-100 S/N 001, 002 & 003 respectively) have been exposed to Latent ESD Defect Failure conditions (multiple occurrences) including Workmanship Thermal Cycle Testing which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in NPOESS mission

-40-

FIRST AMENDED COMPLAINT

downgrade or failure of Flights 1, 2, and 3, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

30.

<u>False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS ESD Design Approval for Materials and Equipment Used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware (Thermal Cycle Testing Equipment – Butterfly Fixture)</u>.
<u>Specification</u>:  RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment, specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team.  An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

<u>False Defective Nonconformance</u>:  In RAYTHEON deliberate ignorance and reckless disregard, the unapproved design of the anodized Butterfly Fixture was used on the VIIRS FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship Thermal Cycling (prior to the first CTI sell-off meeting date 7/30/04), which without the ability to obtain "a continuous ground", violated RAYTHEON procedures by failure to obtain an ESD design approval per RAYTHEON Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

-41-

FIRST AMENDED COMPLAINT

31.

<u>False RAYTHEON Reckless Disregard of ESD Protections of VIIRS
Flight Quality Hardware During Acceptance Testing</u>.

<u>Specification</u>:  RAYTHEON CAGE Code 4U884 Specification RP 10-001,
Paragraph 3.0.1 End product requirements—Workmanship, specifies:

Electrostatic discharge sensitive (ESDS) items covered by this
specification shall be designed and handled to provide protection
against Exposure(s) to damaging electrostatic fields, static
discharges, and electrical transients.  Protection shall be
maintained continuously for all ESDS items from initial component
receipt through assembly, test, system integration, and final
shipment.

<u>False Defective Nonconformance</u>:  The 421310-100 FPIE Unit is
required to be Acceptance Tested per drawing (Note 17).  The FPIE
Unit is first connected using STE (Special Test Equipment) Cables
(Ref: 225742-100 Interface Cable Drawing).  The STE Cables were
constructed of ESD unapproved materials "Hot Plastics" (Nylon
Sleeving and plastic ID Marker tags) capable of building and
storing excessive electrical charges.  These cables were completely
rebuilt using ESD approved materials (Ref: "Before and After" STE
Cable redesign Drawings and rework VIIRS planning books), including
without limitation:

STE Cables "Hot Plastics"

```
228343 W1      Rev — vs; Rev A
228344 W1A     Rev — vs; Rev C
228345 W2      Rev —
228346 W2A     Rev — vs; Rev A
228349 W4      Rev — vs; Rev A
228351 W6      Rev — vs; Rev A
228352 W7      Rev — vs; Rev A
228355 W11     Rev — vs; Rev B
228359 W15     Rev — vs; Rev C
228360 W16     Rev — vs; Rev C
```

-42-

FIRST AMENDED COMPLAINT

```
228361 W17      Rev — vs; Rev C
228362 W18      Rev — vs; Rev B
228364 W101     Rev — vs; Rev A
228365 W102     Rev —
228367 W104     Rev — vs; Rev B
228369 W106     Rev — vs; Rev A
228370 W107     Rev — vs; Rev A
228371 W108     Rev — vs; Rev A
228372 W109     Rev — vs; Rev A
229709 W110     Rev — vs; Rev A
229926 W19      Rev —
```

The 421310—100 S/N 001 & 002 FPIE Unit and FPIE Unit CCAs 421327 S/Ns 001, 002, & 003, and CCA 421331 S/Ns 001, 002, & 003 Lower Level Thermal Cycle test, had been tested prior to the first CTI using the STE Cables in the ESD unapproved condition.  It is necessary to "break test configuration" and make a new test set—up several times when the Acceptance Test is run.  The STE Cables are first connected in the "Primary" configuration, and then broken down and reconfigured into the "Redundant" configuration, to test both Primary and Redundant (back-up) systems, each time exposing the "opened" Unit connectors to stray accumulated static charges built-up on the STE Cables "Hot Plastics".  Exposure occurs when the STE Cable connections are disconnected (opened) and reconnected (closed).  Prior to the STE Cable rebuild effort, many ESD Exposures to the VIIRS FPIE Flight 1 Unit have occurred (Ref: Mate/Demate logs), which violated RAYTHEON procedures by failing to maintain continuous ESD protection throughout the manufacturing cycle per RAYTHEON Specification RP 10—001, Paragraph 3.0.1 End product requirements—Workmanship.  The FPIE Unit CCA 421327 S/Ns 001, 002 & 003 and CCA 421331 S/Ns 001, 002, & 003 (used in the FPIE Unit 421310—100 S/N 001, 002 & 003 respectively) have been exposed to Latent ESD defective failure conditions (multiple occurrences) which compromises the NPOESS/VIIRS Unit/System

—43—

integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

32.

False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS ESD Design Approval for Material and Equipment used in meeting ESD Protection Requirements for VIIRS Flight Hardware (Acceptance Testing Equipment — STE Cables).

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment, specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team.  An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

False Defective Nonconformance:  In RAYTHEON deliberate ignorance and reckless disregard, the unapproved Design STE Cables were used on the FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship Thermal Cycling (prior to the first CTI sell-off meeting date July 30, 2004), which without the ability to obtain "a continuous ground", violated RAYTHEON procedures by failure to obtain prior ESD design approval per RAYTHEON Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment.

The STE Cables were constructed of ESD unapproved materials "Hot Plastics" (Nylon Sleeving and plastic ID Marker tags) capable of building and storing excessive electrical charges.  These cables

-44-

FIRST AMENDED COMPLAINT

were completely rebuilt using ESD approved materials (Ref: "Before and After" STE Cable redesign Drawings and rework VIIRS planning books), including without limitation:

STE Cables "Hot Plastics"

| | | | | |
|---|---|---|---|---|
| 228343 | W1 | Rev — vs; | Rev A |
| 228344 | W1A | Rev — vs; | Rev C |
| 228345 | W2 | Rev — | |
| 228346 | W2A | Rev — vs; | Rev A |
| 228349 | W4 | Rev — vs; | Rev A |
| 228351 | W6 | Rev — vs; | Rev A |
| 228352 | W7 | Rev — vs; | Rev A |
| 228355 | W11 | Rev — vs; | Rev B |
| 228359 | W15 | Rev — vs; | Rev C |
| 228360 | W16 | Rev — vs; | Rev C |
| 228361 | W17 | Rev — vs; | Rev C |
| 228362 | W18 | Rev — vs; | Rev B |
| 228364 | W101 | Rev — vs; | Rev A |
| 228365 | W102 | Rev — | |
| 228367 | W104 | Rev — vs; | Rev B |
| 228369 | W106 | Rev — vs; | Rev A |
| 228370 | W107 | Rev — vs; | Rev A |
| 228371 | W108 | Rev — vs; | Rev A |
| 228372 | W109 | Rev — vs; | Rev A |
| 229709 | W110 | Rev — vs; | Rev A |
| 229926 | W19 | Rev — | |

The RAYTHEON defective nonconformance VIIRS Flight hardware ESD exposures constitute Production Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

33.

False RAYTHEON Reckless Disregard to Maintain ESD Protection of VIIRS Flight Quality Hardware During Cold Acceptance Testing. Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.0.1 End product requirements—Workmanship, specifies:

Electrostatic discharge sensitive (ESDS) items covered by this specification shall be designed and handled to provide protection against Exposure(s) to damaging electrostatic fields, static discharges, and electrical transients. Protection shall be maintained continuously for all ESDS items

—45—

FIRST AMENDED COMPLAINT

from initial component receipt through assembly, test, system integration, and final shipment.

**False Defective Nonconformance:**  The 421310-100 FPIE Flight 1 Unit is required to be Acceptance Tested at various "cold" temperatures as a part of the Acceptance Test per drawing (Note 17).  The FPIE Unit is mounted in a "Dewar" (cold-box, Drawing 229030) configuration with the FPIE Unit mounted on thermally isolated pedestals (which also meant electrically isolated).  When Relator MATESKI discovered the grounding scheme did not include grounding of the FPIE and related FPA equipment, Relator MATESKI directed Design Engineering to add two ground straps to the FPIE configuration at opposite corners and one ground strap to the FPA configuration inside the "Dewar" (cold-box, Drawing 229030, Ref: EO Y5216) to prevent charge buildup on Unit surfaces.  This prior design violated RAYTHEON procedures by Failing to Maintain Hardware ESD Protection throughout the manufacturing cycle per RAYTHEON Specification RP 10-001, Paragraph 3.0.1 End product requirements—Workmanship.  Prior testing without these ground straps using the STE Cables build with ESD unapproved "Hot Plastic" materials exposed the FPIE Unit 421310-100 S/N 001 and 002 to Latent ESD Defect Failure conditions (multiple occurrences) which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

-46-

FIRST AMENDED COMPLAINT

34.

False VIIRS Cold Acceptance Testing ESD Exposures. False RAYTHEON Reckless Disregard to Obtain prior VIIRS ESD Design Approval for Materials and Equipment used in meeting ESD Protection Requirements for VIIRS Flight Hardware.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD Protective Materials and Equipment, specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team. An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

False Defective Nonconformance: The Unapproved ESD Design of the "Dewar" (cold-box, Drawing 229030) configuration with the FPIE Unit mounted on thermally and electrically isolated pedestals without an approved grounding scheme was a failure to obtain a prior ESD design approval per RAYTHEON Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment, thereby constituting Production Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

35.

False RAYTHEON Reckless Disregard to Identify and Implement VIIRS ESD Rigid Controls Requirements on the Drawings.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.1.2.3, specifies:

-47-

FIRST AMENDED COMPLAINT

Class 1 ESDS parts, assemblies and equipment, including ESDS items in assembly parts lists, requiring Rigid Controls shall be identified as follows:

a.   If a specification or drawing indicates an ESDS part, assembly or equipment requiring Rigid Controls, it shall be identified by an assembly note stating the representative ESD sensitivity or withstand voltage limit (6.2.2.).

b.   If ESDS item(s) requiring Rigid controls are included in the assembly drawing parts list, these items shall be identified in the Nomenclature or Description column, or the Notes column as ESDS (XX) with a representative ESD sensitivity or withstand voltage limit shown parenthetically in volts.  The items shall be cross referenced to an assembly note.

Specification:   RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 6.2.2 Rigid Controls, specifies:

a.   If a specific ESDS part, assembly or equipment requires Rigid Controls, the drawing note shall read:

HANDLE AND PROTECT ELECTROSTATIC DISCHARGE SENSITIVE (ESDS) ITEM REQUIRING RIGID CONTROLLED EXPOSURE(S) TO LESS THAN XX VOLTS, TO THE REQUIREMENTS OF RP 10-001/2.

b.   If used as a reference to the parts list Nomenclature or Description Column or Notes column as requiring Rigid Controls, the drawing note shall read:

HANDLE AND PROTECT ELECTROSTATIC DISCHARGE SENSITIVE (ESDS) ITEM(S) TO THE REQUIREMENTS OF RP 10-001/2 REQUIRING RIGID CONTROLLED EXPOSURE(S) TO LESS THAN THE VOLTAGE IDENTIFIED: "ESDS (XX)".

-48-

<u>False Defective Nonconformance</u>:  The FPIE Unit Part Number 421310-100 (consisting of one circuit card assembly 421327 and one circuit card assembly 421331) contains devices that require "Rigid" ESD Controls (Class 2, able to withstand less than 100 volts [approx 20 volts actual]).   Drawing 421310-100 Notes 6 and 7, Drawing 421327 Note 3, and Drawing 421331 Note 3, all callout RP 10-001 without a Class requirement defaulting to Class 1 per Specification.  This default is considered "Normal" ESD controls (Class 1, able to withstand greater than 100 volts).

Work stations are required to be identified as dedicated for the installation of Class 2 components when Rigid Controls are necessary to protect components.  The FPIE has numerous components that should be identified as "Rigid" ESD Controls (Class 2) (Ref: 421310-001, 421331, and 421327 Drawings), which has been confirmed in a conference on June 5, 2006 with Gundurao Prabhakar, El Segundo Principal Electrical Components Engineer, Matthew Lee, Active Components Technician, and the Relator MATESKI.

The FPIE has numerous components that should be identified as "Rigid" ESD Controls (Class 2): (Ref: 421310-001, 421331, and 421327 Drawings (Ref: Active Components):

```
                    R10002396-0001
                    R10003046-0001
                    R10003047-0001
                    R10003048-0001
                    5962R583403VXA
                    5962-8859301VPA
                    5962-9560401VXA
                    5962R9655801VXA
                    5962R9583403VXA
                    5962R9583303VXA
                    JANSR2N7389
                    JANS1N6642U
                    JANS1N6677UR-1
```

-49-

FIRST AMENDED COMPLAINT

Sensitive components used in the FPIE Unit Part Number 421310-100 S/Ns 001, 002, 003, 004, and S/N 005 (consisting of circuit card assembly 421327 S/Ns 001, 002, 003, 004, and S/N 005 and 421331 S/Ns 001, 002, 003, 004, and S/N 005 respectively) should have been identified as "Class 2" (Rigid Controls) and were not. These Circuit Card Assembly components have been exposed to Latent ESD Defect Failure conditions exceeding their "Maximum Withstand Voltage Ratings" which will compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, thereby constituting Product Substitution false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

36.

False RAYTHEON Reckless Disregard by Circumvention of VIIRS Test Specifications, First Article Testing, and Test Protoflight. Specification:  Statement of Work For the VIIRS Day/Night Band Module Assembly P/N 417350-100 (Flight Unit 1), Paragraph 5.5.3: Special Test Request, specifies:

During acceptance testing if the need arises to perform engineering evaluation tests, or any special test that may be requested from the customer, program management or engineering that is not in the normal flow of the build/test sequence, a Special Test Request (STR) shall be generated in accordance with FE94.PI3_0 (3.0). The STR shall not be used as a substitute for test procedures when testing flight hardware [for VIIRS].

False Defective Nonconformance:  In deliberate ignorance and reckless disregard, RAYTHEON knowingly produced First Article units

-50-

FIRST AMENDED COMPLAINT

that have not been test-qualified at specified levels to demonstrate flight worthiness.  Previous FPIE testing performed prior to the first attempted delivery at the CTI meeting (Date July 30, 2004) had been performed using an Unreleased Test Procedure and an Uncertified STE Rack thereby invalidating all prior Acceptance Testing performed in this condition.

RAYTHEON has substituted reduced Special Test Requirements (STR) in lieu of specified testing, which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure of Flight 1, thereby constituting Product Substitution false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

37.

False Reckless Disregard to Perform 3-Axis Random Vibration Protoflight Test Specifications on First Article VIIRS Flight Hardware.

Specification:  RAYTHEON CAGE Code 11323 Specification TP154640-764, Rev. A, Paragraph 3.1 General Test Requirements, specifies: Paragraph 3.1, General Test Requirements;

This section describes the test requirements, test objectives, equipment requirements, and control provisions for the Focal Plane Interface Electronics, referred to as FPIE, vibration test.  The detailed steps necessary to carry out this procedure for Protoqualification levels are contained in Section 4.  The detailed steps necessary to carry out this procedure for Acceptance levels are contained in Section 5. The detailed steps necessary to carry out this procedure for Workmanship/Penalty levels are contained in Section 6.  The

-51-

FPIE shall be tested to verify the soundness of the units design/assembly and to demonstrate that the unit will survive and perform after being subjected to specified vibration levels. During each vibration test, the FPIE shall be mounted to a vibration test fixture in a manner simulating actual service installation and launch configuration. Prior to each test, the vibration test fixture shall be inspected to ensure that the correct mounting hardware is properly installed. Vibration testing shall be applied separately along the three orthogonal axes defined in Figure 1.

Specification: RAYTHEON CAGE Code 11323 TP154640-764, Rev. A, Paragraph 3.1.1 Prerequisites specifies:

Paragraph 3.1.1, Prerequisites;

Prior to commencing specific operations within this procedure, a consent to test meeting to assure the readiness of the FPIE for unit level vibration shall be held. All documentation for the FPIE and its subassemblies shall be reviewed for completeness. Any item that would prevent the FPIE from being tested is resolved prior to testing. In addition, the DNB FPIE integration and test procedures shall have been completed. The FPIE shall be fully assembled and in unpowered launch configuration, but without any connector savers or shorting plugs attached to the unit connectors.

Specification: RAYTHEON CAGE Code 11323 Specification TP154640-764, Rev. A, Paragraph 3.1.2 Order of Execution specifies:

Paragraph 3.1.2, Order of Execution;

The normal order of testing is a sequence starting with the X-axis test, then the Z-axis and finally the Y-axis. The order

-52-

FIRST AMENDED COMPLAINT

of execution of the axis sequence in this procedure may be altered, as required, by the test director or his designee (The sequence of steps for a given axis to remain as described in this procedure.)

Specification:  RAYTHEON CAGE Code 11323 Specification TP154640-764, Rev. A, Paragraph 3.2 Objectives of this Procedure specifies:

Paragraph 3.2, Objectives of this Procedure;

The objective of the tests performed pursuant to this procedure is to demonstrate that the FPIE will survive the vibration levels expected during the launch of the NPP or NPOESS satellite without degrading the performance of the FPIE.

Specification:  RAYTHEON CAGE Code 11323 Specification TP154640-764, Rev. A, Paragraph 3.3.1 [specific] Test Requirements specifies:

Paragraph 3.3.1, [specific] Test Requirements;

The FPIE shall be subjected, separately along each of the three orthogonal axes defined in Figure 1, to resonance search and random vibration excitation.  The FPIE shall be subjected to tests at the protoqualification, acceptance or workmanship levels found in PS154640-111 (also in Appendices III, IV and V).

Specification:  NPOESS/VIIRS Program QR (Quality Requirements) FE94, Lines 24/25: Testing specifies:

Lines 24/25: Testing;

1.  Tests must be described and documented before commencing and:

-53-

FIRST AMENDED COMPLAINT

A.   Test procedures shall be a part of the engineering design package.

B.   Test records become part of the assembly traveler.

C.   Must describe in detail the following items:

    (1)   Procedure

    (2)   Setup

    (3)   GSE (STE and OTE)

    (4)   Flight hardware to be used

D.   Must be approved by (P.I. 7.6):

    (1)   REA

    (2)   Systems or Test Director

    (3)   QA (HW and SW)

E.   At completion:

    (1)   The data must show pass/fail/conclusion, signature, and date by the test operator, the REA, and Quality.

    (2)   The documentation must be complete.  All blanks and intended information must be filled in.  "N/A" is allowable.

F.   The whole sequence is considered mandatory after approval and when called out in the AHR unless deleted by one of the above "approval" personnel.

G.   Portions may be changed with the approval of any two of the above "approval" personnel.

H.   For special tests that are not part of the released engineering, and that use Flight hardware that is mechanically or electrically active, documentation must be prepared and handled per STR P.I. 3.0.

<u>False Defective Nonconformance</u>:  The 421310-100 S/N 002 FPIE Flight 1 Unit was presented as a "complete" unit at the first CTI (Consent

-54-

FIRST AMENDED COMPLAINT

To Integrate) sell-off meeting at RAYTHEON Goleta, California on July 30, 2004. One of the "Quality Findings" during the first CTI meeting was the discovery that the RAYTHEON Random Vibration Test Specification TP154640-764 was not 'Baseline' released as required in RAYTHEON Drawing procedures and Program QR (Quality Requirements) FE94. The FPIE Flight 1 Unit was originally tested using an unapproved and unreleased Random Vibration Test Procedure. This test procedure was first released on July 12, 2005 as Rev. "-". During the Random Vibe Acceptance preparations for the next CTI sell-off meeting, numerous changes were added and the specification was released as Revision "A" on March 3, 2006.

Previous FPIE testing performed prior to the first attempted delivery at the CTI meeting (Date July 30, 2004) had been performed using an Unreleased Test Procedure and an Uncertified STE Rack thereby invalidating all prior Acceptance Testing performed in this condition.

Subsequent to the FPIE rejection at the CTI meeting (Date July 30, 2004), the 421310-100 S/N 002 FPIE Flight 1 Unit was completely disassembled during rework invalidating all previous Random Vibe Protoflight testing. Because this was the first FPIE Flight Unit to deliver, this Unit was required to be Protoflight Tested in 3-Axis as described TP154640-764, Rev. A, Paragraph 3.1, and the Unit was required to be fully assembled as a prerequisite. Although the sequence order of execution could be altered as described TP154640-764, Rev. A, Paragraph 3.1.2 the sequence of steps for each given axis were to be performed as described, to demonstrate that the FPIE will survive the vibration levels expected during the launch of the NPP or NPOESS satellite without degrading the performance

-55-

FIRST AMENDED COMPLAINT

of the FPIE.

Because the 421310-100 S/N 002 FPIE Flight 1 Unit was never tested in the completed configuration to an approved and released test procedure (TP154640-764), and was in fact disassembled, reassembled, and tested for the first time in the fully completed configuration to a reduced penalty Test STR-181 (Special Test Requirement, Penalty Test Section 6, VIIRS Statement of Work) at reduced levels, in (one) Y-Axis only, when it should have been tested to the more severe Protoflight levels in 3-Axis (Protoflight Test Section 4) as is required of the first Unit, whereby the 421310-100 S/N 002 FPIE Flight 1 Unit is unfit for launch, which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

38.

False RAYTHEON Reckless Disregard by Failure to Test VIIRS FPA/FPIE Units as a "Matched Pair" to Verify Compliance with the DNB Performance Specification.

Specification: RAYTHEON is contracted to build, test, and produce (1 each) Part Number 417350-100 DNB (Day/Night Band) module for each Flight (Paragraph 1 of the Statement of Work). The DNB Module consists of (1) 421310-100 FPIE Unit (built at RAYTHEON El Segundo) and (1) 417360-100 FPA Unit (built at RAYTHEON Goleta). The FPA and FPIE Units must be "tuned" together as a "matched pair". FPA test measurements generate tuning data subsequently provided to RAYTHEON El Segundo from RAYTHEON Goleta. RAYTHEON El Segundo uses this data to determine what value Resistors are to be installed

-56-

FIRST AMENDED COMPLAINT

(Ref: 421331 Drawing Note 38 and 421327 Drawing Note 27). "Resistor Select" requirements vary in values due to cumulative tolerance buildup caused by individual part tolerances in any given circuit and unit.

<u>False Defective Nonconformance</u>:   In deliberate ignorance and reckless disregard, RAYTHEON knowingly failed to identify the "matched pair" requirements on the drawings which in turn allowed RAYTHEON to test the FPIE Flight 1 Unit with another (Non-Flight) FPA EDU2 Unit.  Testing in this manner does not provide Resistor Select value validation at the lower DNB level of production thus covering-up marginal performance findings. Upon FPIE Unit integration at the space craft, subsequent opening of the VIIRS FPIE Unit for "retuning" will be required, invalidating all prior Lower Level Unit Acceptance Testing, which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

During August, 2006, undisclosed during the IPO and Aerospace Corporation VIIRS audit on August 29, 30, 2006, RAYTHEON Goleta (RVS) reopened the VIIRS FPIE for retuning and has requested resister selects from RAYTHEON El Segundo, which invalidates the cleaning, bake-out, and all prior VIIRS Lower Level Unit Acceptance Testing, including ambient performance test, protoflight vibration test, and protoflight thermal cycle test at RAYTHEON El Segundo.

-57-

FIRST AMENDED COMPLAINT

39.

**False Defective Nonconformance VIIRS Cold (Dewar) Acceptance Testing.   False RAYTHEON Reckless Disregard to Perform Cold Acceptance Test Requirements on First Article DNB VIIRS Flight Hardware.**

Specification:   RAYTHEON CAGE Code 11323 Specification TP154640-762, Rev. A, Paragraph 1.1 Scope specifies:

Paragraph 1.1, Scope:

This document describes the Acceptance Test Procedure for the Day Night Band Module, P/N 417350-100, a visible band imaging subassembly of the NPOESS VIIRS sensor suite. The performance test procedures defined herein constitute a sequence of tests to be performed to measure and verify the performance requirements of the DNB Module per PS154640-124.

False Defective Nonconformance:   RAYTHEON builds, tests, and produces the 421310-100 FPIE Unit using the FPA tuning data provided to RAYTHEON El Segundo from RAYTHEON RVS Goleta. This tuning data is used to determine what "Resistor Select" values are to be installed in the FPIE. Acceptance Testing must be performed using the actual "Matched Pair" Flight Units to validate and confirm the "Resistor Selects" have been properly chosen and the integral system will optimally perform as predicted. The "Matched Pair" of Units must be tested in Flight-like conditions requiring the paired Units to be installed and tested in a Cold-Box (Dewar) configuration to achieve the cold temperatures that the Units will be required to perform in during their mission. Units are cycled over various cold temperatures under power to validate performance as an integral system.

-58-

FIRST AMENDED COMPLAINT

The 417350-100 DNB (Day/Night Band) module was retested using (1) 421310-100 S/N 002 FPIE Flight 1 Unit (built at RAYTHEON El Segundo) and (1) Non-Flight D417360-100 FPA EDU2 Unit (built at RAYTHEON RVS Goleta) to perform testing.

The FPIE Flight 1 Unit was Acceptance "Cold" Tested after the first CTI (consent To Integrate meeting on July 30, 2004) for the second time to an abbreviated Acceptance Test (STR-248) using a Non-Flight FPA EDU2 of unknown Drawing revision level and suspect quality.   This was done to assist in the closure of test EFRs (Event Failure Reports) that were generated as a result of poor performance in the first test.   These were EFRs No. 2183 and 2132. The Non-Flight FPA EDU2 was used because the Flight FPA 417360-100 S/N 001 had already been integrated into the next assembly and was not available to be used in analyzing the failures to close the EFRs.

Previous FPIE testing performed prior to the first attempted delivery at the CTI meeting (Date July 30, 2004) had been performed using an Uncertified STE Rack thereby invalidating all prior Acceptance Testing performed in this condition.   Subsequent disassembly, rework, and reassembly further invalidated all prior Acceptance Testing.

The 421310-100 S/N 002 FPIE Flight Unit 1 has been unnecessarily exposed to a marginally functioning Non-Flight FPA EDU2 (D417360-100 S/N 002) of unknown Drawing revision level and suspect quality, damaged in test when connected to the Non-Flight FPIE Emulator while attempting to qualify the STE (Dewar) Cold-Box, whereby the 421310-100 S/N 002 FPIE Flight 1 Unit integrity has been compromised and must be considered unfit for launch, which

-59-

compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

40.

<u>False RAYTHEON Reckless Disregard to Perform VIIRS Thermal Cycling per Acceptance Test Requirements on First Article DNB Flight Hardware</u>.

<u>Specification</u>:    Statement of Work For the VIIRS Day/Night Band Module Assembly P/N 417350-100 (Fit Unit 1), Revision "-"/August 15, 2005, Paragraph 5.5.3: Special Test specifies:

During acceptance testing if the need arises to perform engineering evaluation tests, or any special test that may be requested from the customer, program management or engineering that is not in the normal flow of the build/test sequence, a Special Test Request (STR) shall be generated in accordance with FE94.PI-3_0 (3.0).   The STR shall not be used as a substitute for test procedures when testing flight hardware.

<u>Specification</u>:    Day/Night Band Module Test Procedure Cage Code 11323, TP154640-762, Paragraph 1.1 specifies:

1.1 Scope;

This document describes the Acceptance Test Procedures for the Day Night Band Module, P/N 417350-100, a visible band imaging subassembly of the NPOESS/VIIRS sensor suite.  The performance test procedures defined herein constitute a sequence of tests to be performed to measure and verify the performance requirements of the DNB Module per PS154640-124.

-60-

<u>False Defective Nonconformance</u>: RAYTHEON El Segundo is contracted to deliver to RVS (RAYTHEON Vision Systems Goleta) a DNB Unit Part Number 417350-100 consisting of (1) RAYTHEON El Segundo built 421310-100 FPIE Unit and (1) RAYTHEON RVS supplied 417360-100 FPA Unit. RAYTHEON is responsible to build, inspect, and test the FPIE, integrate it with the FPA, and perform several additional tests including Thermal Cycling tests still not performed as required. The FPIE 421310-100 S/N 002 FPIE Flight 1 Unit was Acceptance Thermal Cycle Tested to a reduced requirement STR-040. Due to VIIRS schedule constraints, the decision was made to issue an STR reducing the overall Thermal Cycling duration to approximately (2) days in lieu of the required Thermal Cycle tests duration of approximately (23) days. This is the first deliverable flight unit which should have been tested using the "Matched Pair" FPA to perform Protoflight Thermal Cycle requirements that would in fact validate and qualify the DNB Module performance.

The 421310-100 S/N 002 FPIE Flight 1 Unit was completely disassembled during rework invalidating all previous Thermal Cycle testing. In that this was the first flight FPIE Unit to deliver, this FPIE Flight 1 Unit was required to be Protoflight Thermal Cycle Tested in flight configuration using a flight FPA as described TP154640-762, Rev. A.

Previous FPIE testing performed prior to the first attempted delivery at the CTI meeting (Date July 30, 2004) had been performed using an Unreleased Test Procedure and an Uncertified STE Rack thereby invalidating all prior Acceptance Testing performed in this condition. Subsequent disassembly, rework, and reassembly further invalidated all prior Acceptance Testing.

-61-

FIRST AMENDED COMPLAINT

In that the 421310-100 S/N 002 FPIE Flight 1 Unit was never tested in the completed configuration to the approved and released test procedure (TP154640-762), and was in fact disassembled, reassembled, and tested for the first time in an incomplete (non-flight) configuration to a Penalty Thermal Cycle Test STR-040 (Special Test Requirement, Penalty Test Section 6, Statement of Work) at reduced levels, when it should have been tested to the more severe Acceptance levels in flight configuration as is required of the flight Units, the 421310-100 S/N 002 FPIE Flight 1 Unit is unfit for launch, because it does compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

41.

False RAYTHEON Reckless Disregard to Perform to VIIRS EMI/EMC Test Requirements on First Article DNB VIIRS Flight Hardware.
Specification: 417350-100 DNB Drawing, Note 3: Assembly shall meet the Requirements of Module Performance Specification PS154640-124. PS154640-124, Paragraph 3.3.2 defines EMI/EMC Susceptibility requirements. 421310-100 FPIE Drawing, Note 26, Assembly shall meet the Requirements of 421310-500 FPIE Assembly Interface Control Drawing and PS154640-126 (Product Spec. DNB Focal Plane/FPIE VIIRS). PS154640-126, Paragraph 3.3.2 defines EMI/EMC Susceptibility Design requirements.
False Defective Nonconformance. RAYTHEON El Segundo is contracted to deliver to RVS (RAYTHEON Vision Systems Goleta) a DNB Unit Part Number 417350-100 consisting of (1) RAYTHEON El Segundo built

-62-

421310–100 FPIE Unit and (1) RAYTHEON RVS supplied 417360–100 FPA Unit.  RAYTHEON is responsible to build, inspect and test the FPIE, integrate it with the FPA, and perform several additional tests including visual tests and EMI/EMC (Electro–Magnetic Interference/Electro–Magnetic Contamination) testing (required for all instruments) which is still not yet performed in reckless disregard by RAYTHEON, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

42.

False RAYTHEON Circumvention of VIIRS Procurement Processes, Qualification Testing of Procured Components, and Trace Specifications for Space Programs.  False RAYTHEON Reckless Disregard to Procure VIIRS Flight Parts Through Supply Chain Circumventing Quality.  False RAYTHEON Reckless ·Disregard to Maintain Space Trace Requirements on VIIRS Flight Parts Throughout Buildup of VIIRS.

Specification:  PQR (Program Quality Requirements) FE94, Line 6, Purchasing requirements.  Mil–Std 981 and Mil–HDBK–5400 Guideline 22 Parts Control Program.

False Defective Nonconformance:  Numerous Capacitors and Resistors were purchased through the El Segundo Facility Experimental Non–Flight "EPP Stores" circumventing the normal Procurement Process violating PQR (Program Quality Requirements) FE94, Line 6, Purchasing requirements (as itemized in Cap-trace2.txt, and Email-Cap-trace.doc dated 2/28/06 Mario Farr, Shop Supervisor).  In reviewing the listed components, it appears these were purchased on Flight PO 151804.  Actual review of receiving documents reveals these components were purchased through a non-flight experimental

-63-

FIRST AMENDED COMPLAINT

"EPP" Stores account as "Engineering" quality level components and later pulled from a non-flight Stores Account, reidentified as Flight components, sent to an outside vendor (American Tape and Reel) under Flight PO 151804 and returned to RAYTHEON to close into Flight Stores.  Stores use of "various receipts" has effectively broken the trace from the original PO these parts were purchased on, violating the "Space Trace" requirements of the PQR, FE94 itemized in initial kit-pull trace reports (including wrong CCA serialization) presented at the first CTI date 7/30/04 vs.; corrected kit-pull trace reports presented at the second CTI date of 4/25/06. All of these parts went out to a vendor American Tape and Reel Company to be placed on "Tape & Reels" for use in the Pick-N-Place machine.

```
CWR11JC156KCB        (RAYTHEON Lot # AVT0213PO151804)
CWR11MC475KCB        (RAYTHEON Lot # AVT0213PO151804)
CWR11MC475KCB        (RAYTHEON Lot # AVT0213PO151804)
M123A11BPB102JS      (RAYTHEON Lot # KEM0018A1PO151804)
M123A10BPB101JS      (RAYTHEON Lot # KEM0209A4PO151804)
M123A12BXB103KS      (RAYTHEON Lot # KEM0212A7PO151804)
M123A12BXB104KS      (RAYTHEON Lot # KEM0147A6PO151804)
```

In deliberate ignorance, RAYTHEON (Mario Farr, Shop Supervisor knowingly circumvented supply chain procurement processes on components purchased for the NPOESS/VIIRS space program resulting in failures to meet the minimum requirements for Quality Inspections, Component Qualification Testing, and Space Trace requirements of Flights 1, 2, 3 and 4.  Despite subsequent warning on the VIIRS Program to halt this practice, continues this practice today on other components recently purchased for another program.

RAYTHEON reckless disregard failure to Maintain Component Space Trace requirements, Systematic attempts to conceal and circumvent the standard Procurement and Receiving processes, and attempted

-64-

FIRST AMENDED COMPLAINT

delivery of VIIRS Flight hardware (in that condition) at the first CTI sell—off meeting (July 30, 2004), thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

43. .

<u>False RAYTHEON Initial Failure to Perform VIIRS Qualification Testing, Destructive Physical Analysis Testing, Radiation Lot Acceptance Testing, Burn—in at Specified Levels, and Prohibitive Material Inspection on VIIRS Flight Components</u>.

<u>Specification</u>:    R10002396, R10003046, R10003047, R10003048, R10002340, R10002694, R10002695 Group A, B, D, E, DPA, and RLAT testing as well as Specific Burn—in at designated levels.

<u>False Defective Nonconformance</u>:  The 421310—100 S/N 002 FPIE Flight 1 Unit was presented as a "complete" Unit at the first CTI (Consent To Integrate) sell—off meeting in RAYTHEON Goleta, California on July 30, 2004.  After numerous Quality Defective Nonconformances were discovered, the FPIE Flight 1 Unit was rejected at CTI sell—off and returned to El Segundo for rework at tremendous VIIRS Program expense.  An audit was performed to discover all unknown Quality Discrepancies (Mark Ross QAE Lien List).  There were 77 Quality Findings listed for the CCAs FPIE Unit, and DNB Unit combined.

As RAYTHEON began to rebuild the FPIE Flight 1 Unit, the Relator MATESKI was told by several RAYTHEON El Segundo VIIRS FPIE Team Members Bernard Malis (Retired), Manufacturing Lead, Thomas James (Retired), Responsible Engineering Authority, Ronald Estes, Lead Engineer, and Steven Adams, Configuration Management RVS Goleta, not to look at Space Trace, Part Revisions, or perform a

-65-

FIRST AMENDED COMPLAINT

Configuration Review on the FPIE Unit hardware prior to beginning Acceptance Testing as is required.  The Relator MATESKI was told that the FPIE Unit had already been presented at CTI, and therefore, only to rework the Quality Findings and not to reinvent the wheel.  Relator MATESKI was instructed to remove the Configuration Verify sequence (Oper B330) and proceed with the FPIE Flight 1 Unit test.  When the FPIE Flight 1 Unit testing had been completed, Relator MATESKI began to perform a Final Configuration Review prior to sell-off CII (Complete Item Inspection) as is also required.  It was at this time that Relator MATESKI discovered that the previous audit findings did not uncover the fact that numerous components used in the FPIE Flight 1 Unit had not been Qualification Tested, Burned-in at specified levels, DPA Inspection Qualified, and/or PMI Screened for Prohibited Materials as well as finding numerous Space Trace deficiencies.

The FPIE contains devices that require Group A, B, D, E, DPA and RLAT testing as well as Specific Burn-in requirements that were missed (Ref: Active Ics: R10002396, R10003046, NCMR EIS76525, R10003047, NCMR EIS76515, R10003048), and (Ref: passive RF inductor chip coils; R10002340, R10002694, R10002695).  Violates Mil-Std 981 and Mil-HDBK-5400 Guideline 22 Parts Control Program.  These very basic component testing requirements were not performed on VIIRS prior to consumption into the product.  Testing Records were later created using remaining Lot inventory or; where remaining inventory was zero, a case was presented where similar Die Lot inventory was located through suppliers in an attempt to exonerate components after-the-fact.

-66-

FIRST AMENDED COMPLAINT

In deliberate ignorance and reckless disregard, RAYTHEON knowingly circumvented supply chain procurement processes on components purchased for the NPOESS/VIIRS space program resulting in failures to meet the minimum requirements for Quality Inspections, Component Qualification Testing, and Space Trace requirements of Flights 1, 2, 3 and 4 by systematic use of letters of authorization to suppliers allowing them to ship components to RAYTHEON prior to the completion of VIIRS testing.

Failure to follow-up and Perform all Component tests prior to allowing (commingling) unqualified components in Flight Quality stores as specified, constitutes Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

44.

False RAYTHEON Reckless Disregard of Failure to Perform X-Ray Testing on VIIRS Flight Parts.

Specification: R10002340, R10002694, R10002695 devices require (3) views (or more as needed) 100% X-Ray internal image verification screening (for FOD, alignment, wire nicks, wire attach, core damage, etc.).

False Defective Nonconformance: The FPIE contains devices that require 3 views (or more as needed) 100% X-Ray internal image verification screening (for FOD, alignment, wire nicks, wire attach, core damage, etc.) that were never performed (Ref: passive RF inductor chip coils; R10002340, R10002694, NCMR EIS76505, R10002695, NCMR EIS6508). This is required to be performed at the vendor after assembly or may be performed by advance agreement by RAYTHEON. Neither the vendor nor RAYTHEON performed this critical 100% X-Ray of every part as is evidenced by the FOD (Foreign Object

-67-

Damage) Particles found inside the sample later tested, and also a cracked bobbin core (Ref: R10002694-0001, confirmed on February 28, 2006 with Rick Zelman QAE, and Richard Murth, Components Engineer).

A vendor may not change the process by which it assembles these parts without a prior 30 day notification in writing through RAYTHEON procurement agents.  The wire winding attach was made via resistance welding vs; hi-temp solder without prior authorization (DPA Report DA06-0093A).  RF Inductors could not meet the required 100% X-Ray testing (3) view requirement as they had already been installed into the FPIE Flight 1 Unit.  The 421310-100 S/N 002 FPIE Flight 1 Unit (and Circuit Card Assemblies 421331 and 421327 S/Ns 001, 002, 003 and 004 respectively) have components that have not been X-Ray tested (Ref: R10002694-0001) as defined in the Specification R10002694 whereby the FPIE Flight 1 Unit is compromised and unfit for launch which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure.  RAYTHEON falsely stated that although the representative sample part contained FOD and a cracked bobbin core, and was not assembled using the Hi-Temp solder, that VIIRS Flight components already installed were acceptable as-is for VIIRS Flight use, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

45.

### False RAYTHEON Reckless Disregard to Segregate VIIRS Flight vs. Non-Flight Hardware During VIIRS Assembly.

FIRST AMENDED COMPLAINT

<u>Specification</u>:  VIIRS Program QR (Quality Requirements) FE94, Line 8, Space Trace requirements;

<u>False Defective Nonconformance</u>:  RAYTHEON knowingly stored Flight and Non-Flight quality level components in the same WIP location and intermingled Flight and Non-Flight quality levels of hardware on the same work stations while performing operations, failing to meet the minimum segregation requirements for Space Programs Space Trace requirements of Flights 1, 2, 3, and 4 causing subsequent downgrade of VIIRS S/N 001 & S/N 005 at VIIRS Program expense.

The FPIE Flight 1 Unit was routinely worked on (rebuilt) in a Non-Flight STE Lab / Machine Shop environment located at E01/Rm C1250/Lab 22.   Additionally, this work was performed on work stations not identified as "PRD/PRG Flight Only".   Non-Flight hardware remained on the work stations and in close proximity to the Production Flight Hardware under assembly.   This STE Lab had an abundance of both Non-Flight and Flight components stored together including; Resistors, Capacitors, Thermistors, Jack Posts, Nuts, Screws, Wire, Shrink Sleeving, etc.   This is in violation of Program QR (Quality Requirements) FE94, Line 8, Trace requirements. The FPIE Unit Part Number 421310-100 S/N 001, S/N 002, S/N 003, S/N 004 and S/N 005 (consisting of one circuit card assembly 421327 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 and consisting of one circuit card assembly 421331 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 respectively) have been exposed and intermingled with Non-Flight hardware, which does compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure.

-69-

FIRST AMENDED COMPLAINT

At the first CTI (Consent To Integrate – July 30, 2004) meeting, an attempt was made by RAYTHEON El Segundo to sell-off the 421310-100 S/N 002 FPIE Flight 1 Unit.  The "Space Trace" reports presented (kit pulled reports) did not meet the minimum Space Trace requirements.  Documentation and trace were not being kept as parts were changed (NCMR EIS74862, EIS7714301, EIS77144-1, EIS77169-1, EIS77511, EIS 76924, EIS77819).  Reference original pulled kit reports (from first CTI delivery attempt) vs; cleaned-up pulled kit reports for comparison.

Since the first CTI (Consent To Integrate) meeting on July 30, 2004, the FPIE Unit S/N 001 has been formally downgraded to Non-Flight (NCMR N00018).  It was discovered that there were too many Deltas to complete the Unit "as-built".  This S/N 001 Unit was unable to demonstrate both "Space Trace" requirements and Assembly Record documentation and was subsequently disqualified for Flight.

On September 9, 2006 another VIIRS meeting was held to discuss the method of storage for incomplete Flight Units 2 and 3 Circuit Cards in Flight Stores with RAYTHEON employees present: John Adams, Manager Supply Chain, Michael Ord, Stores Representative, Aaron Smith, SAS Management, Michael Haley, Operations Management, and John Pakusich, Management Staff, assembled together with Relator MATESKI.  After reaching agreement on the storage of Flight Units, Relator MATESKI announced to all present that he and John Pakusich had been tasked with sorting out remaining inventory in the laboratory.  After many unsuccessful attempts to identify individual components, it was discovered that Circuit Card kits S/N 005 had been partially kitted and work (lead forming and pre-tinning) had been started.  These components were missing part

-70-

FIRST AMENDED COMPLAINT

number identification, PO trace, and commingled with several Non-Flight components in a large tote-tub in the laboratory. There were also several Ics (Integrated Circuits) both new and used where some appeared to have bonding material residue on them from a previous installation. Further investigation revealed component D8 (F/N 13) was missing from the 421327 S/N 003 kit. There was (1) component missing from this group on the S/N 005 kit and after verifying there was no documented activity to replace the missing D8 component in the S/N 003 original kit, it appears the part was simply taken from the S/N 005 kit and used in the S/N 003 kit without documentation. After disclosing that trace had not been kept on these Flight components, John Adams suggested that kit S/N 005 be downgraded on an NCMR for lack of trace.

Prior attempts made by Material Planners Tracy Keener and Delsenia Lee to clean up the remaining components from the Non-Flight STE Lab / Machine Shop located at E01/Rm C1250/Lab 22 caused numerous loose components and components on reels to be returned to Non-Flight Stores for lack of trace as these could not positively be identified as Flight quality components (Delsenia Lee Email dated 9/05/2006 @ 11:41 am), thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

46.

False RAYTHEON Reckless Disregard to Document and Utilize VIIRS Flight Hardware to Released Engineering During VIIRS Assembly. Specification: VIIRS Program QR (Quality Requirements) FE94, Line 9, Paragraph 7, QA Monitoring and Process Control;

-71-

FIRST AMENDED COMPLAINT

<u>Specification</u>:  VIIRS Subcontract 65349DGE2S prohibits use of Red-Line Drawing changes.

<u>False Defective Nonconformance</u>:  Illegal Rework prior to and in advance of Engineering Disposition and Quality Engineering Concurrence, and Illegal Work in Advance of Released Engineering;

On several occasions work was performed in advance of Released Engineering documentation.  A discovery was made by the Northrop Grumman customer at the first CTI sell-off meeting (July 30, 2004) where attempted delivery of DNB Flight hardware revealed that the FPIE Top Cover P/N 421314 was listed in the kit pull report as Revision "–" where it should have been a later Revision (Revision "–" with an EO) or; Revision "A".

Through questioning, the Northrop Grumman customer ascertained that prior to the attempted first delivery of the DNB hardware, a fit interference occurred at RAYTHEON El Segundo during integration preventing the FPIE Top Cover from closing.  When an Engineering fix was determined (reduction of the Top Cover Boss height 1 place), it was discovered that the fix had been worked without documentation and was performed improperly.

The NGC customer insisted that an NCMR be written immediately, this was written at the CTI meeting of July 30, 2004.

The reckless disregard rework had been performed by the Non-Flight STE Lab / Machine Shop located at E01/Rm C1250/Lab 22 on all existing Top Covers jeopardizing scheduled delivery of the FPIE Unit.  The interfering Boss had been ground down violating the corrosion barrier plating requirement, violating the "Do Not Break Thru" Drawing note allowing an alternate unauthorized vent path through the Top Cover, and dimensional tolerances were violated.

-72-

FIRST AMENDED COMPLAINT

All work had been performed without documentation, planning, or Inspections.

After the FPIE Unit was returned to RAYTHEON El Segundo, a formal Engineering Drawing change was generated and the NCMR was voided out.  Upon asking how this NCMR could be voided, Bernard Malis (Retired), Manufacturing Manager argued that the cover now met the Engineering design, and therefore, an NCMR was no longer necessary.  Ref: Milling of Top Cover Bosses P/N 421314 Drawing Revision "-" vs; Drawing Revision "A".  After reviewing the condition of the Top Covers, Relator MATESKI returned to the daily team meeting to announce the deficiencies and ask for a new NCMR, it was granted but for only two of the five quantity due to lack of funds. The New NCMR addressed; 1) Dimensional discrepancies, 2) Violation of the "Do Not Break Thru" requirement and subsequent plugging. 3) Corrosion prevention and plating touch-up.  Remaining inventory has not yet been documented or repaired.

At the VIIRS Mission altitude, Atomic Oxygen occurs (O1 vs; O2) which is highly corrosive to unprotected Aluminum.  NORTHROP recognized this when it began questioning about the corrosion barrier plating break-thru. Relator MATESKI recognized that there had been noncompliance with the NORTHROP directed NCMR and that RAYTHEON had attempted to avoid processing the NCMR by generating the required drawing change and voiding the NCMR in lieu of documenting actual events as they occurred.

Another Illegal work performed in advance of Released Engineering documentation had been performed by the replacement of Circuit Card components C2 and C170 by component removal and wire shorting of pads with buss wire of unknown size and trace on S/N

-73-

FIRST AMENDED COMPLAINT

001 and S/N 002 CCAs prior to making the necessary drawing changes. The Non–Flight STE Lab / Machine Shop located at E01/Rm C1250/Lab 22 had an abundance of both Non–Flight and Flight components stored together including: Resistors, Capacitors, Thermistors, Jack Posts, Nuts, Screws, Wire, Shrink Sleeving, etc.

It is unclear when and where this Illegal Advance work took place as there is no documentation to support the actual work.  An attempt to document it after–the–fact in the QCHR lead to the generation of waivers RDW_VIIRS–W015 for inability to meet the Prohibited Materials screening requirement and RDW_VIIRS–W016 for inability to meet the Space Trace requirement.

S/N 003, S/N 004, and S/N 005 CCAs exhibit many of the same defective nonconformances and likewise do not meet the minimum space trace requirements and build history record entries required for flight hardware. Much of the missing Data: operator sign–offs, oven equipment numbers, epoxy trace, cure times, cure temps, etc., are missing forever (Flt_2–3_Delta's.xls separate spreadsheet for recent audit findings Relator MATESKI performed to determine flight worthiness of these CCAs).  (Ref: Performance of work on Flight hardware without Certified Planner screening of Planning), thereby constituting Product substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

47.

False RAYTHEON Reckless Disregard to Design to Provide ESD and EMI/EMC Protection for VIIRS Materials and Equipment in Compliance with ESD and EMI/EMC Requirements for VIIRS Flight Hardware.

Specification:  RAYTHEON CAGE Code 4U884 Specification RP 10–001, Paragraph 3.2.10 Approved ESD protective materials and equipment

–74–

FIRST AMENDED COMPLAINT

specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team. An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233295 EMI/EMC Requirements: No floating wires shall be allowed.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233300 Spacecraft charging Requirements: The design shall provide reliable electrostatic grounding connections between all conductive elements.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233305 Resistance Requirements: The resistance between the grounded elements shall not exceed 100 ohms DC.

False Defective Nonconformance: VIIRS Flight Unit 1 Encoding Motor output cable shieldings are not grounded (use of un-terminated "Floating Shields"). In deliberate ignorance and reckless disregard, RAYTHEON failed to design to provide ESD (Electrostatic Discharge) and EMI/EMC (Electromagnetic Interference / Electromagnetic Contamination) shielding protection to surrounding sensitive instruments as required. Note: Comparable to FPIE / FPA – ESD Exposures from "Floating Shields" used on STE Test Cable initial designs. RAYTHEON falsely stated in RWD_VIIRS-W001 ungrounded and unterminated cable shielding would be acceptable for

—75—

FIRST AMENDED COMPLAINT

Flight use due to schedule constraints that would require a four (4) week slip in schedule violating NGIID EMI/EMC and ESD exposure requirements, which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

48.

<u>False RAYTHEON Reckless Disregard by Failure to Develop and Document Software Used in Acceptance Testing of VIIRS Flight Hardware</u>.

<u>Specification</u>: NPOESS General Instrument Interface Document (NGIID D31418, Revision A, Paragraph 3.4.4), Interface Control Document IF234920, Software Including Databases:

Instrument software and databases should be developed and managed in accordance with EIA/IEEE J-STD-016 and NOAA S24.806 software standards. EIA/IEEE J-STD-016 will take precedence.

<u>Specification</u>: NPOESS General Instrument Interface Document (NGIID D31418, Revision A, Paragraph 3.3.11.1.4) Interface Control Document IF233750:

The instrument contractor will deliver a Software Development Plan (SDP) three months after contract award. The SDP will specify the instrument contractor's processes for developing both instrument and algorithm software. These processes will reflect the complete software development life cycle (i.e., from the generation of software requirements through the verification test of delivered functionality), including all supporting activities (e.g., planning and oversight, software

-76-

FIRST AMENDED COMPLAINT

1  quality assurance, configuration management) and a description

2  of all documentation generated.

3  Defective Nonconformance:  With actual knowledge and reckless

4  disregard, Defendant RAYTHEON knowingly has circumvented and

5  concealed admitted VIIRS defective nonconformance of RAYTHEON

6  failures to develop and document software used in Acceptance

7  Testing of VIIRS Flight Hardware, thereby constituting false claim

8  violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

9                              49.

10     False RAYTHEON Admission of VIIRS Defective Nonconformance in

11  RDW_VIIRS-W018 by Reckless Disregard of ASP CCA VIIRS System Unit

12  Failures to Perform to VIIRS Specifications.

13  Specification:  414505-100 (FU1) [415690-100 ASP], PS154640-101,

14  Paragraph 3.1.5.7, SRV0634 requires differential nonlinearity of

15  +/-5 LSBs, is -0.54 LSB and +0.71 LSBs.

16  False Defective Nonconformance:  The RAYTHEON admission of VIIRS

17  defective nonconformance in RDW_VIIRS-W018 confirms that RAYTHEON

18  knowingly in deliberate ignorance and reckless disregard produced

19  defective nonconformance VIIRS units that failed to comply with

20  VIIRS  performance  specifications  and  requirements,  thereby

21  compromising  unit  integrity  and  reducing  system  performance

22  expectancy. These Units have been systematically accepted for VIIRS

23  Flight use based on unapproved false RDW_VIIRS-W018 in Flight Unit

24  1 production (Multiple Units) constituting Product Substitution,

25  thereby jeopardizing system performance and mission assurance for

26  VIIRS Flight 1 as well as Future Flight Missions 2 and 3 where

27  partial assembly has already begun under comparable conditions,

28  thereby constituting Product Substitution and false claim violation

-77-

FIRST AMENDED COMPLAINT

of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

50.

**False RAYTHEON Admission VIIRS Defective Nonconformances in RDW_VIIRS-W024 by Reckless Disregard of Unit Failures to Perform to VIIRS Specifications.**

<u>Specification</u>:      414501-110 (FU1), PS154640-101, Revision B, Paragraph 3.1.5.13.2 Band to Band requirements.

<u>False Defective Nonconformance</u>:      The RAYTHEON admission of defective nonconformances in RAYTHEON VIIRS RDW_VIIRS-W024 confirms VIIRS misalignments demonstrate requirements were not met due to noncompliance initial design of Tungsten base plate and subsequent redesign to Aluminum base plate. Additional improvements necessary for compliance have not been identified because of incomplete RAYTHEON Engineering of VIIRS.

RAYTHEON knowingly in deliberate ignorance and reckless disregard produced Units that are failing to comply with VIIRS performance specifications and requirements, thereby compromising unit integrity and reducing system performance expectancy. These VIIRS Units have been systematically accepted for VIIRS Flight use on unapproved false RDW_VIIRS-W024 in VIIRS Flight Unit 1 production (Multiple Units), thereby jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight Missions 2, 3, and 4 where partial assembly has already begun under comparable conditions, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2), and (7).

-78-

FIRST AMENDED COMPLAINT

51.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RDW_VIIRS—W010, RDW_VIIRS—W012A, and RDW_VIIRS—W014 by Reckless Disregard of RAYTHEON Designed In Use of Prohibited Materials.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640—132, ¶ 4.6.3, sub—section "I" of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite VIIRS) specifies that the use of the following materials on the VIIRS sensors is forbidden:

D.  Tin plating unless subsequently fused or reflowed.

E.  Pure, unalloyed Tin (greater than 99.1% Sn).

F.  Mercury and compounds of mercury except in hermetically sealed devices and focal plane arrays.

G.  Cadmium, zinc or selenium metal, except in hermetically sealed devices.

H.  Cadmium and zinc plating and silver brazing alloys containing cadmium and zinc.

W.  Electrolytic Nickel plating unless an Electroless process is employed, or Electrolytic Nickel is used on a on—optical surface as an underplate, diffusion barrier, or coating.

False Defective Nonconformance: The RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON RDW_VIIRS—W010, RDW_VIIRS—W012A, and RDW_VIIRS—W014, executed by M. Pavloff, VIIRS Program Manager, confirms that RAYTHEON knowingly in deliberate ignorance and reckless disregard produced VIIRS units that are failing to comply with VIIRS performance specifications and requirements, thereby compromising unit integrity and reducing system performance

-79-

FIRST AMENDED COMPLAINT

expectancy. Prohibited material and processes are still listed in the VIIRS Engineering Drawing Notes and Parts Lists. Units have been systematically accepted for VIIRS Flight use based on unapproved false Waivers, RDW_VIIRS-W010, RDW_VIIRS-W012A, and RDW_VIIRS-W014 by reckless disregard of RAYTHEON Designed in Use of Prohibitive Materials, thereby jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight Missions 2,3 and 4, and thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(2) and (7).

52.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers VIIRS RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 by Reckless Disregard of Zero Inventory Components in Lieu of Prohibited Materials Testing.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite (VIIRS) specifies that the use of the following materials on the VIIRS sensors is forbidden:

A. Materials for which qualification data does not exist for the intended application.

B. Metals and alloys used in structural applications, which are not resistant to stress corrosion.

D. Tin plating unless subsequently fused or reflowed.

E. Pure, unalloyed Tin (greater than 99.1% Sn).

-80-

FIRST AMENDED COMPLAINT

F.  Mercury and compounds of mercury except in hermetically sealed devices and focal plane arrays.

G.  Cadmium, zinc or selenium metal, except in hermetically sealed devices.

H.  Cadmium and zinc plating and silver brazing alloys containing cadmium and zinc.

J.  Teflon used in structural applications or where mechanical forces will be exerted on the material.

K.  Teflon insulated hookup wire wherever placement will permit cold flow of the conductor insulation.

W.  Electrolytic Nickel plating unless an Electroless process is employed, or Electrolytic Nickel is used on a on-optical surface as an underplate, diffusion barrier, or coating.

<u>False Defective Nonconformance</u>:  The RAYTHEON admission of defective nonconformance in RAYTHEON VIIRS_RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 confirm that Units for the VIIRS Flight 1 and Flight 2 have been assembled using Prohibited Materials and/or untested/unproven materials and have been systematically accepted for Flight use by those unapproved false RDWs, thereby jeopardizing system performance and Mission Assurance for Flight 1 as well as Future VIIRS Flight Missions 2, 3 and 4, where partial assembly has already begun under comparable conditions, which has been circumvented by RAYTHEON knowingly in deliberate ignorance and reckless disregard of VIIRS defective nonconformances in RAYTHEON RDWs and RAYTHEON VIIRS RDFs, executed by M. Pavloff, VIIRS Program Manager, including without limitation:

FIRST AMENDED COMPLAINT

1    421310-100 (FU1) Components (previously noted) RDW_VIIRS-W015

2    414505-110 (Numerous Sub-Assys FU1) Numerous Components

3    RDW_VIIRS-W020A

4    416960-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

5    415652-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

6    415695-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

7    415620-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

8    415655-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

9    415650-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

10   415640-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

11   414505-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

12   415750-1 (Sub-Assy FU1 - 2 Units) Numerous Components

13   RDW_VIIRS-W020A

14   415750-2 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

15   415660-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

16   415630-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

17   415670-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

18   415709-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

19   415701-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

20   415700-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

21   415610-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

22   415680-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

23   415690-100 (Sub-Assy FU1) Numerous Components RDW_VIIRS-W020A

24   417700-110 (FU1) Numerous Components RDW_VIIRS-W021

25   417680-110 (FU1) Numerous Components RDW_VIIRS-W021

26   418200-110 (FU1) Numerous Components RDW_VIIRS-W022A

27   418300-110 (FU1) Numerous Components RDW_VIIRS-W022A

28   418000-110 (FU1) Numerous Components RDW_VIIRS-W022A

-82-

FIRST AMENDED COMPLAINT

418700-110 (6 Sub-Assys FU1) Numerous Components RDW_VIIRS-W022A

426300-100(-1) (FU1) Numerous Components RDW_VIIRS-W023

426350-100(-1) (FU1) Numerous Components RDW_VIIRS-W023

418700-110(-1) (FU1) Numerous Components RDW_VIIRS-W023

414505-110 (FU1) Numerous Components RDW_VIIRS-W026

414505-110 (FU1) Numerous Components RDW_VIIRS-W027

Prohibited materials and processes are still listed in the VIIRS Engineering Drawing Notes and Parts Lists. Components, where zero lot inventory remains, have not been tested for Prohibited Materials known to produce detrimental effects when used in space environments, compromising unit(s) integrity and reducing system life-expectancy, have been systematically accepted for VIIRS Flight use on unapproved false RDWs in Flight Unit 1 production (Multiple Units) jeopardizing Mission Assurance for VIIRS Flight 1 as well as Future Flight VIIRS Missions 2,3, and 4, where partial assembly has already begun under comparable conditions, which was circumvented by the false RAYTHEON RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, executed by M. Pavloff, VIIRS Program Manager, to exonerate zero inventory components in lieu of prohibited materials testing, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

53.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waiver VIIRS RDW_VIIRS-W018 by Reckless Disregard of ASP CCA VIIRS System Unit Failures to Perform to VIIRS

-83-

FIRST AMENDED COMPLAINT

Specifications.

Specification:   414505-100 (FU1) [415690-100 ASP], PS154640-101, Paragraph 3.1.5.7, SRV0634 requires differential nonlinearity of +/-5 LSBs, is -0.54 LSB and +0.71 LSBs.

False Defective Nonconformance:   The RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON RDW_VIIRS-W018, executed by M. Pavloff, VIIRS Program Manager, confirms that RAYTHEON knowingly in deliberate ignorance and reckless disregard produced VIIRS units that are failing to comply with VIIRS performance specifications and requirements, thereby compromising unit integrity and reducing system performance expectancy.   Units have been systematically accepted for VIIRS Flight use based on unapproved false RDW_VIIRS-W018 in Flight Unit 1 production (Multiple Units), thereby jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight Missions 2, 3, 4, and 5, where partial assembly has already begun under comparable conditions, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

54.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waiver VIIRS RDW_VIIRS-W024 by Reckless Disregard of Unit Failures to Perform to VIIRS Specifications.

Specification:   414501-110 (FU1), PS154640-101, Revision B, Paragraph 3.1.5.13.2 Band to Band requirements.

False Defective Nonconformance:   The RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON VIIRS RDW_VIIRS-W024, confirms the VIIRS misalignments which demonstrate that specifications were not met due to nonconformance initial design

-84-

FIRST AMENDED COMPLAINT

of Tungsten base plate and subsequent redesign to Aluminum base plate. Additional improvements necessary for compliance have not been identified because of incomplete RAYTHEON engineering.

In deliberate ignorance and reckless disregard, RAYTHEON knowingly produced VIIRS Units that are failing to comply with VIIRS performance specifications and requirements, thereby compromising unit integrity and reducing system performance expectancy. Units have been systematically accepted for VIIRS Flight use on unapproved false RDW_VIIRS-W024, executed by M. Pavloff, VIIRS Program Manager, in VIIRS Flight Unit 1 production (Multiple Units), thereby jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight Missions 2,3 4 and 5, where partial assembly has already begun under comparable conditions, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(2) and (7).

55.

RAYTHEON Admission of VIIRS Defective Nonconformances in RAYTHEON Waivers RDW_VIIRS-W005, 417500-110 (FU1), RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) by Reckless Disregard of RAYTHEON VIIRS Design Failures to Meet Corrosion and Dissimilar Metals Specifications. Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite (VIIRS) specifies that the use of the following materials on the VIIRS sensors is forbidden:

-85-

FIRST AMENDED COMPLAINT

A. Materials for which qualification data does not exist for the intended application.

B. Metals and alloys used in structural applications, which are not resistant to stress corrosion.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.4.1, of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite (VIIRS) specifies: 4.4.1 Design constraints. To the maximum extent practical, and commensurate with other design requirements and constraints, the VIIRS sensor will be designed to limit or preclude the generation or release of contaminants (particulate and molecular) that may adversely affect system performance or reliability.

A. Use corrosion resistant materials.

J. Avoid combinations of dissimilar metals.

N. Specific concepts to minimize and control the effects of contamination will be incorporated into the VIIRS sensor designs. Only qualified materials known to have low contaminant generating characteristics for particles and outgassing will be used.

False Defective Nonconformance: The RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON VIIRS RDW 417500-110 (FU1) RDW_VIIRS-W005, 417600-110 (FU1) RDW_VIIRS-W005, 417900-110 (FU1) RDW_VIIRS-W007, and 417800-100 (FU1) RDW_VIIRS-W007, confirm that RAYTHEON knowingly in deliberate ignorance and reckless disregard produced VIIRS Units where Engineering Design Drawings failed to address Corrosion Controls and/or Dissimilar Metals (Galvanic Effects) to protect against corrosion (unpassivated Beryllium),

-86-

FIRST AMENDED COMPLAINT

thereby compromising unit integrity and reducing system performance and life-expectancy. These Units have been systematically accepted for NPOESS/VIIRS Flight use based on unapproved false waivers; 417500-110 RDW_VIIRS-W005, 417600-110 RDW_VIIRS-W005, 417900-110 RDW_VIIRS-W007, and 417800-100 RDW_VIIRS-W007 in VIIRS Flight Unit 1 production (Multiple Units) constituting Product Substitution, thereby jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight Missions 2, 3, and 4 where partial assembly has already begun under comparable conditions. RAYTHEON falsely stated unpassivated Beryllium is acceptable for VIIRS Flight use, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), (2) and (7).

56.

RAYTHEON VIIRS Admission of Defective Nonconformances in VIIRS Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-100, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100 by Reckless Disregard of VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements.

Specification: PS154640-112, Revision A, "All remaining and future subassemblies will be Thermal Cycled to PS154640-112, Revision A".

False Defective Nonconformance: The RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON VIIRS Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-100, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100 confirm that RAYTHEON knowingly in deliberate ignorance and reckless disregard bypassed

-87-

FIRST AMENDED COMPLAINT

new substantially more severe VIIRS Protoflight Thermal Cycle test requirements on multiple units. The EDU units were tested to previous (less severe) Protoflight levels and these reduced levels were used to justify waiving the VIIRS FU1 Protoflight level testing even though the new Protoflight values had been increased to more severe levels. The 414501-110 Unit (Multiple Sub-Assemblies) has been systematically accepted for VIIRS Flight use on an unapproved false RDWs for VIIRS Flight Unit 1 production.

In deliberate ignorance and reckless disregard, RAYTHEON falsely stated non-performance of more severe Protoflight Thermal Cycle Test Requirements established to determine survival levels of First Article Flight hardware is acceptable for use in Acceptance Testing of Flight hardware in violation of VIIRS Program PS154640-112 Revision A, and in violation of VIIRS Program Quality Requirements (FE94) First Article Protoflight Test requirements, thereby constituting Product Substitution and false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1),(2) and (7).

57.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers VIIRS RWD VIIRS-W001 by Reckless Disregard of VIIRS EMI/EMC and ESD Exposure Specifications.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team. An approved materials and equipment list may be included in site specific documentation, or

-88-

FIRST AMENDED COMPLAINT

attached as an exhibit to this document.

<u>Specification</u>: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233295 EMI/EMC Requirements: No floating wires shall be allowed.

<u>Specification</u>: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233300 Spacecraft charging Requirements: The design shall provide reliable electrostatic grounding connections between all conductive elements.

<u>Specification</u>: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF233305 Resistance Requirements: The resistance between the grounded elements shall not exceed 100 ohms DC.

<u>False Defective Nonconformance</u>: RAYTHEON admission of VIIRS Defective Nonconformances in RAYTHEON VIIRS RDWs, executed by M. Pavloff, VIIRS Program Manager, whereby VIIRS Flight Unit 1 Encoding Motor output cable shieldings are not grounded (use of un-terminated "Floating Shields"). Reckless disregard by RAYTHEON to design to provide Electromagnetic Interference / Electromagnetic Contamination (EMI/EMC) shielding protection to surrounding sensitive instruments as required. In deliberate ignorance and reckless disregard, RAYTHEON failed to design to provide protection against (ESD) Exposure(s) via damaging electrostatic fields, static discharges, and electrical transients jeopardizing Mission Assurance by Latent Defects in Electrostatic Discharge Sensitive (ESDS) devices jeopardizing Mission Assurance for VIIRS Flight 1, which was circumvented by the false RAYTHEON RWD_VIIRS-W001 to circumvent and conceal VIIRS EMI/EMC and ESD exposure requirements,

-89-

FIRST AMENDED COMPLAINT

thereby constituting false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

58.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON Waivers RDW_VIIRS-W018, and RDW_VIIRS-W024 by Reckless Disregard of VIIRS System Units Failures to Perform to Specifications.

Specification:   414501-110   (FU1),   PS154640-101,   Revision   B, Paragraph 3.1.5.13.2 Band to Band requirements.

False Defective Nonconformance:   RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON VIIRS RDWs, executed by M. Pavloff, VIIRS Program Manager, whereby RAYTHEON knowingly produced VIIRS units where Design Drawings failed to address Corrosion Controls and/or Dissimilar Metals (Galvanic Effects) sufficient to protect the against corrosion, compromising unit(s) integrity and reducing system performance and life-expectancy.  Units have been systematically accepted for VIIRS Flight use on unapproved false RDWs in VIIRS Flight Unit 1 production (Multiple Units) amounting to Product Substitution jeopardizing system performance and mission assurance for VIIRS Flight 1 as well as Future Flight VIIRS Missions 2, 3, and 4 where partial assembly has already begun under comparable conditions, which was circumvented by the false RAYTHEON RDW_VIIRS-W011, RDW_VIIRS-W018, and RDW_VIIRS-W024 to circumvent VIIRS system units failures to perform to requirements and specifications, thereby constituting false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

-90-

59.

RAYTHEON Admission of VIIRS Defective Nonconformances in Unauthorized RAYTHEON VIIRS Waivers RTMA RDW_VIIRS-W001, 417700-110 (FU1), HAMMA RDW_VIIRS-W001, and 417700-110 (FU1) by Reckless Disregard to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment specifies:

> ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team. An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

False Defective Nonconformance: RAYTHEON admission of VIIRS defective nonconformances in RAYTHEON RDWs, executed by M. Pavloff, VIIRS Program Manager, whereby VIIRS Flight Unit 1 Encoding Motor output cable shieldings are not grounded (use of un-terminated "Floating Shields"). Failure by RAYTHEON to design to provide Electromagnetic Interference / Electromagnetic Contamination (EMI/EMC) shielding protection to surrounding sensitive instruments as required. In deliberate ignorance and reckless disregard, RAYTHEON failed to design to provide protection against (ESD) Exposure(s) via damaging electrostatic fields, static discharges, and electrical transients jeopardizing Mission Assurance by Latent Defects in Electrostatic Discharge Sensitive (ESDS) devices jeopardizing Mission Assurance for VIIRS Flight 1, comparable to

-91-

FIRST AMENDED COMPLAINT

FPIE / FPA — ESD Exposures from "Floating Shields" used on STE Test Cable initial designs, thereby compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, thereby constituting false claim violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

60.

False Unauthorized RAYTHEON Waivers RDW_VIIRS-W010, RDW_VIIRS-W012A, and RDW_VIIRS-W014 to Circumvent and Conceal RAYTHEON Designed In Use of Prohibited Materials.

False Statements and Records: With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of RAYTHEON Designed In Use of Prohibited Materials Thereby Constituting Product Substitution, by means of unauthorized RAYTHEON VIIRS waivers RDW_VIIRS-W010, RDW_VIIRS-W012A, and RDW_VIIRS-W014, executed by executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

61.

False Unauthorized RAYTHEON Waivers RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 to Circumvent and Conceal Zero Inventory Components in Lieu of Prohibited Materials Testing.

False Statements and Records: With actual knowledge and reckless disregard, Defendant RAYTHEON has circumvented and concealed admitted VIIRS defective nonconformance of Zero Inventory

—92—

FIRST AMENDED COMPLAINT

Components in Lieu of Prohibited Materials Testing by means of unauthorized RAYTHEON VIIRS waivers RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

62.

False Unauthorized RAYTHEON Waiver RDW_VIIRS-W018 to Circumvent and Conceal ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications:

False Statement and Record:  With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications by means of unauthorized RAYTHEON VIIRS waiver RDW_VIIRS-W018, executed by M. Pavloff, VIIRS Program Manager, that was created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

63.

False Unauthorized RAYTHEON Waiver RDW_VIIRS-W024 to Circumvent and Conceal Unit Failures to Perform to VIIRS Specifications:

False Statement and Record:  With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of Unit Failures

-93-

FIRST AMENDED COMPLAINT

to Perform to VIIRS Specifications by means of unauthorized RAYTHEON VIIRS waiver RDW_VIIRS-W024, executed by M. Pavloff, VIIRS Program Manager, that was created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

64.

False Unauthorized RAYTHEON Waivers RDW_VIIRS-W005, 417500-110 (FU1), RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) to Circumvent and Conceal RAYTHEON VIIRS Design Failures to Comply with the Corrosion and Dissimilar Metals Specifications.

False Statements and Records: With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of RAYTHEON VIIRS Design Failures to Meet Corrosion and Dissimilar Metals Specifications by means of unauthorized RAYTHEON VIIRS Waivers RDW_VIIRS-W005, 417500-110 (FU1), RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

-94-

FIRST AMENDED COMPLAINT

65.

False Unauthorized RAYTHEON Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-110, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100 to Circumvent and Conceal VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements.

False Statements and Records:  With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements by means of unauthorized RAYTHEON VIIRS Waivers RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-110, RDW_VIIRS-W009A, 417800-100, RDW_VIIRS-W009A, 418200-100, RDW_VIIRS-W009A, and 417360-100 executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

66.

False Unauthorized RAYTHEON Waiver RWD_VIIRS-W001 to Circumvent and Conceal Failure to Perform to VIIRS EMI/EMC and ESD Exposure. False Statement and Record:  With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of Failure to Perform to VIIRS EMI/EMC and ESD Exposure Specifications by means of unauthorized RAYTHEON VIIRS waiver RDW_VIIRS-W001, executed by

-95-

FIRST AMENDED COMPLAINT

M. Pavloff, VIIRS Program Manager, that was created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

67.

False Unauthorized RAYTHEON Waivers RDW_VIIRS–W018, and RDW_VIIRS–W024 to Circumvent and Conceal VIIRS System Units Failures to Perform to VIIRS Specifications.

False Statements and Records: With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of VIIRS System Units Failures to Perform to Specifications by means of unauthorized RAYTHEON VIIRS waivers RDW_VIIRS–W018, and RDW_VIIRS–W024, executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

68.

False Unauthorized RAYTHEON Waivers RDW 417700–110 (FU1) RTMA RDW_VIIRS–W001 and 417700–110 (FU1) HAMMA RDW_VIIRS–W001 in Reckless Disregard to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware.

False Statements and Records: With actual knowledge and reckless disregard, Defendant RAYTHEON knowingly has circumvented and concealed admitted VIIRS defective nonconformance of RAYTHEON

–96–

FIRST AMENDED COMPLAINT

Failure to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware by means of unauthorized RAYTHEON VIIRS waivers RDW 417700-110 (FU1) RTMA RDW_VIIRS-W001 and 417700-110 (FU1) HAMMA RDW_VIIRS-W001, executed by M. Pavloff, VIIRS Program Manager, that were created by RAYTHEON itself and falsely granted by RAYTHEON to RAYTHEON itself, without any contract modification or approval, thereby constituting false statement and false record violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

69.

On August 29-30, 2006, at RAYTHEON Goleta (RVS), the NPOESS Integrated Program Office (IPO) and the Aerospace Corporation Eric Richter, Christopher Pate, and Melvin Cohen, conducted a technical audit of the RAYTHEON VIIRS Subcontract 65349DGE2S, with NORTHROP Audit Lead Rick Ikemoto and Billy Callin, as requested by Brig. Gen. Susan K. Mashiko, NPOESS Deputy Systems Program Director. In deliberate ignorance and reckless disregard, RAYTHEON *inter alia* John Bouregy, RVS Program Manager, Eugene Jaramillo, Program Quality, Mike Haley, Operations Manager, Marilyn Medel, RVS Quality, Robert Rodau, ESD Engineer, and Timothy Kilduff, Test Technician, made false statements and created a false record by the deliberate concealment of the original VIIRS FPIE Build Books (which support the VIIRS defective nonconformances alleged herein) but only produced and referred to the VIIRS FPIE Rework Book, which documents the correction of numerous VIIRS nonconformances but does not document the existing VIIRS defective nonconformance alleged with particularity herein, whereby the RAYTHEON false statements

-97-

FIRST AMENDED COMPLAINT

and false records constitute false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(2) and (7).

70.

RAYTHEON knowingly made, used and caused to be made and used, a false record and statement to conceal the VIIRS defective nonconformances by RAYTHEON as alleged with particularity herein.

71.

The RAYTHEON employees are required to complete an ethics course on Product Quality and Substitution wherein it is expressly provided to wit:

> Product substitution occurs when a contractor provides a product that differs from a contract's requirements... Plus, a company's failure to provide a conforming product to the government can sometimes result in civil and/or criminal penalties.

72.

In deliberate ignorance and reckless disregard, Defendant RAYTHEON has concealed the VIIRS defective nonconformances, which compromise the NPOESS/VIIRS integrity and mission assurance, and cause the NPOESS downgrade or failure, from the NPOESS EXCOM, PEO, IPO, and DOC Inspector General, while the RAYTHEON SAS President Jon Jones made false statements *inter alia* concerning the VIIRS integrity, tests and milestones as alleged with particularity herein.

73.

Defendant RAYTHEON has submitted false claims by the knowing submission of claims for payment without satisfying the VIIRS contractual requirements upon which payment was conditioned,

-98-

FIRST AMENDED COMPLAINT

whereby the United States Government has been induced to pay money that it would not have paid if Defendant RAYTHEON had disclosed the true set of defective nonconformances with the VIIRS contractual requirement as alleged with particularity herein.

74.

Under the False Claims Act, 31 U.S.C. § 3729(a), the measure of damages is the full VIIRS contract price, trebled, minus an offset for the value, if any, of the performance which RAYTHEON provided under the VIIRS contract.

75.

From August, 2002 to at least 2006, Defendant RAYTHEON knowingly in reckless disregard presented, or caused to be presented, to an Officer of the Department of Defense vouchers for payment and approval for the defective nonconformance VIIRS, on which payment was made by the United States Government with funds appropriated by the United States Congress for the NPOESS contract, and RAYTHEON knowingly made a false record and statements to conceal the defective nonconformance VIIRS to secure approval and payment of vouchers by the United States Government and to secure appropriation approval by the United States Congress. Plaintiff alleges that each and every false VIIRS voucher, record and statement by RAYTHEON constitute false claims under the False Claims Act, 31 U.S.C. § 3729(a), in a sum according to proof at the time of trial. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a), the total damages caused by the false claims by Defendant RAYTHEON should be trebled plus a civil penalty of $5,000 to $10,000 for each RAYTHEON false claim.

-99-

FIRST AMENDED COMPLAINT

76.

From August, 2002 to at least 2006, Defendant RAYTHEON had actual knowledge and deliberately authorized, directed, and/or ratified the conduct of the officers, managers and employees of Defendants RAYTHEON in the performance of the acts with deliberate ignorance and reckless disregard as herein alleged in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

77.

From August, 2002 to at least 2006, in doing the acts herein alleged, the Defendant RAYTHEON officers, agents and employees have acted in their respective capacities as officers, agents or employees of Defendant RAYTHEON, in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

78.

In the event that the United States Government pursues recovery for any of the false claims by Defendant RAYTHEON, through any alternative remedy available to the United States Government, including any administrative proceeding or disposition, Coplaintiff and Relator shall have the same rights thereto as Coplaintiff and Relator would have had under the False Claims Act, including awards, attorneys fees, expenses and costs, pursuant to the False Claims Act, 31 U.S.C. § 3730(c)(5).

WHEREFORE, Plaintiff prays for judgment against Defendant RAYTHEON COMPANY as follows:

(1)  Restitution to the United States Government of the damages sustained from false claims by Defendant Raytheon Company for payment by the United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3729 et seq.

FIRST AMENDED COMPLAINT

(2) Statutory three times the damages sustained from the false claims by Defendant Raytheon Company for payment by the United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3729(a);

(3) Statutory civil penalty of not less than $5,000 and not more than $10,000 for each and every invoice false claim by Defendant Raytheon Company for payment under United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3730(d);

(4) Statutory awards, attorneys fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

(5) Such other and further relief as the Court deems just and proper.

SECOND CAUSE OF ACTION

VIOLATION OF THE FALSE CLAIMS ACT

BY NORTHROP GRUMMAN CORPORATION

79.

Paragraphs 1 through 74 of the First Cause of Action are hereby realleged and incorporated hereby by reference.

80.

On March 30, 2006, at an Oversight Hearing on National Polar-orbiting Operational Environmental Satellite Systems, before the Committee on Commerce, Science, and Technology, Subcommittee on Disaster Prevention and Prediction of the United States Senate, David L. Ryan, Vice President and NPOESS Program Director, Northrop Grumman Space Technology, made false written record and statements in order to secure contract and appropriation approval of false cost and award fee claims for payment by the United States

−101−

Government, including without limitation:

(1)  "Northrop Grumman has intervened at the Visible Infrared Imaging Radiometer Suite ("VIIRS") subcontractor by placing their specialists onsite to resolve significant technical, cost and schedule problems."

(2)  "Northrop Grumman intervened and relocated 10 specialists to be onsite at the subcontractors facility to proactively assist them through the design and development process.  The team has comprehensively reviewed their processes and their detailed design and has implemented corrective action across the subcontractors engineering, manufacturing, quality, and management disciplines."

(3)  "The VIIRS subcontractor is currently ahead of the FY2006 schedule and has recently successfully completed some very important development unit environmental tests.  The unit is meeting all of its key performance requirements and passed its vibration testing, a key test for this instrument."

81.

In deliberate ignorance and reckless disregard of known VIIRS defective nonconformances by the admitted NORTHROP ten specialists inhouse at RAYTHEON, Defendant NORTHROP has deliberately in reckless disregard made a NPOESS false record and statements to the United States Senate, of known RAYTHEON VIIRS defective nonconformances, as alleged hereinbefore, in order to secure contract and appropriation authorization by the United States Congress, and payment approved by the NPOESS IPO and DOD procurement officials.

FIRST AMENDED COMPLAINT

82.

In deliberate ignorance and reckless disregard, Defendant NORTHROP has concealed the NPOESS/VIIRS defective nonconformances, which compromise the NPOESS/VIIRS integrity and mission assurance, and cause the NPOESS downgrade or failure, from the NPOESS EXCOM, PEO, IPO and DOC Inspector General, while the NORTHROP Vice President and NPOESS Program Director, David L. Ryan made false statements *inter alia* concerning the NPOESS/VIIRS integrity, tests and milestones.

83.

NORTHROP knowingly made, used and caused to be made and used, a false record and statement to conceal the VIIRS defective nonconformances by RAYTHEON as alleged herein.

84.

The NORTHROP false statements and records to the United States Senate, which have been repeated to the DOD procurement officers, have caused the payment by the United States Government of the cost and award fee vouchers of NORTHROP and RAYTHEON, and the payment of at least $123 million in award fees on the NPOESS contract performance, which is replete with delays, cost overruns, and the latent defective nonconformance NPOESS/VIIRS which will compromise the NPOESS integrity and mission assurance, and cause the NPOESS degrade or failure.

85.

From at least 2002 to 2006, Defendant NORTHROP knowingly in reckless disregard presented, or caused to be presented, to an Officer of the Department of Defense vouchers for payment and approval, on which payment was made by the United States Government

-103-

FIRST AMENDED COMPLAINT

with funds appropriated by the United States Congress for the NPOESS contract, and knowingly made a false record and statements concerning the defective nonconformance NPOESS/VIIRS to secure approval and payment of cost and award fee vouchers by the United States Government and to secure appropriation approval by the United States Congress. Plaintiff alleges that each and every NPOESS/VIIRS voucher, and false record and statement by NORTHROP constitute false claims under the False Claims Act, 31 U.S.C. § 3729(a), in a sum according to proof at the time of trial. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a), the total damages caused by the false claims by Defendant NORTHROP should be trebled plus a civil penalty of $5,000 to $10,000 for each NORTHROP false claim.

86.

From August, 2002 to at least 2006, Defendant NORTHROP had actual knowledge and deliberately authorized, directed, and/or ratified the conduct of the officers, managers and employees of Defendants NORTHROP in the performance of the acts with deliberate ignorance and reckless disregard as herein alleged in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

87.

From August, 2002 to at least 2006, in doing the acts herein alleged, the Defendant NORTHROP officers, agents and employees have acted in their respective capacities as officers, agents or employees of Defendant NORTHROP, in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

FIRST AMENDED COMPLAINT

88.

In the event that the United States Government pursues recovery for any of the false claims by Defendant NORTHROP, through any alternative remedy available to the United States Government, including any administrative proceeding or disposition, Coplaintiff and Relator shall have the same rights thereto as Coplaintiff and Relator would have had under the False Claims Act, including awards, attorneys fees, expenses and costs, pursuant to the False Claims Act, 31 U.S.C. § 3730(c)(5).

WHEREFORE, Plaintiff prays for judgment against Defendant NORTHROP GRUMMAN CORPORATION as follows:

(1) Restitution to the United States Government of the damages sustained from false claims by Defendant Northrop Grumman Corporation for payment by the United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3729 et seq.

(2) Statutory three times the damages sustained from the false claims by Defendant Northrop Grumman Corporation for payment by the United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3729(a);

(3) Statutory civil penalty of not less than $5,000 and not more than $10,000 for each and every invoice false claim by Defendant Northrop Grumman Corporation for payment under United States Government, according to proof at the time of trial, pursuant to 31 U.S.C. § 3730(d);

(4) Statutory awards, attorneys fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

(5) Such other and further relief as the Court deems just and proper.

–105–

FIRST AMENDED COMPLAINT

1   REQUEST FOR TRIAL BY JURY

2        Pursuant to Rule 38(b), Federal Rules of Civil Procedure,

3   request is hereby made for trial by jury.

4   Dated:   September 20, 2006            PACE AND ROSE

5

6                                    By

7                                       Dean Francis Pace
                                        Attorneys for Coplaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAComplaint

-106-

FIRST AMENDED COMPLAINT

PROOF OF SERVICE

STATE OF CALIFORNIA    )
                           )  ss:
COUNTY OF LOS ANGELES )

    I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my business address is: Suite 2400 Century City, 1801 Century Park East, Los Angeles, California 90067. On September 21, 2006, I served the within FIRST AMENDED COMPLAINT by email and by courier Federal Express, postage paid thereon, addressed as follows:

Paul J. Wogaman Esquire
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Patrick Henry Building, Room 9006A
601 D Street N.W.
Washington D.C. 20530
Post Office Box 261
Benjamin Franklin Station
Washington D.C. 20044

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed September 21, 2006, at Los Angeles, California.

*Stephanie Reavesdail*
Stephanie Reavesdail

−107−

FIRST AMENDED COMPLAINT