

1  Dean Francis Pace (SBN 031809)
2  Allan J. Graf (SBN 057148)
   CARLSMITH BALL LLP
   9th Floor
3  444 South Flower Street
   Los Angeles, CA 90071-2901
4  Telephone: 213.955.1200
   Facsimile: 213.623.0032
5  Email: falseclaimsact@carlsmith.com

Attorneys for Coplaintiff Relator

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. SEAL, | CIVIL ACTION CV06-3614 ODW (FMC |
| | |
| | [FILED UNDER SEAL] |
| Plaintiff, | |
| v. | [31 U.S.C. § 3730(b)(2) |
| SEAL, | |
| | |
| Defendant. | |

## THIRD AMENDED COMPLAINT FOR VIOLATIONS OF

## THE FALSE CLAIMS ACT

## 31 U.S.C. § 3729 ET SEQ.

CARLSMITH BALL LLP
ATTORNEYS AT LAW
LOS ANGELES

4832-4178-4838.1

THIRD AMENDED COMPLAINT UNDER SEAL

1   Dean Francis Pace (SBN 031809)
    Allan J. Graf (SBN 057148)
2   CARLSMITH BALL LLP
    9th Floor
3   444 South Flower Street
    Los Angeles, CA 90071-2901
4   Telephone: 213.955.1200
    Facsimile: 213.623.0032
5   Email: falseclaimsact@carlsmith.com

6   Attorneys for Coplaintiff Relator

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA          CIVIL ACTION CV06-3614 ODW (FMOx)
    EX REL. SEAL,
12

13

14                                    [FILED UNDER SEAL]
                  Plaintiff,
15
    v.
16                                    [31 U.S.C. § 3730(b)(2)
    SEAL,
17

18

19
                  Defendant.
20

21

22

23

24          THIRD AMENDED COMPLAINT FOR VIOLATIONS OF

25                  THE FALSE CLAIMS ACT

26                  31 U.S.C. § 3729 ET SEQ.

27

28

CARLSMITH BALL LLP        4832-4178-4838.1
ATTORNEYS AT LAW
LOS ANGELES
                    THIRD AMENDED COMPLAINT UNDER SEAL

LODGED

FILED
CLERK, U.S. DISTRICT COURT
JUL 19 2010
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ORIGINAL

1  Dean Francis Pace (SBN 031809)
   Allan J. Graf (SBN 057148)
2  CARLSMITH BALL LLP
   444 South Flower Street, 9th Floor
3  Los Angeles, California 90071-2901
   Telephone: (213) 955-1200
4  Facsimile: (213) 623-0032
   Email: falseclaimsact@carlsmith.com
5
   Attorneys for Coplaintiff Relator
6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA  ) CIVIL ACTION CV06-3614 ODW(FMOx)
    EX REL. STEVEN MATESKI     )
12                             )
                               )
13                             )
                               )
14                             )
                               )
15          Plaintiff,         )      THIRD AMENDED
                               )      COMPLAINT
16                             )   FOR VIOLATIONS OF
                               )    FALSE CLAIMS ACT
17      v.                     )   31 U.S.C. § 3729 ET SEQ.
                               )
18  RAYTHEON COMPANY,          )
    NORTHROP GRUMMAN           )
19  CORPORATION                )
                               )
20                             )
                               )
21          Defendants         )   REQUEST FOR TRIAL BY JURY
                               )
22  _____)

23
        NOW COMES PLAINTIFF and alleges against Defendants RAYTHEON
24
    COMPANY and NORTHROP GRUMMAN CORPORATION.
25
                       FIRST CAUSE OF ACTION
26
                 VIOLATIONS OF FALSE CLAIMS ACT
27
                     BY RAYTHEON COMPANY
28

1.

## JURISDICTION

Jurisdiction is predicated upon federal subject matter jurisdiction pursuant to Title 31 U.S.C. of the False Claims Act, 31 U.S.C. § 3729, 3730 and 3732(a), and 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

2.

## VENUE

Venue in the United States District Court for the Central District of California is predicated upon 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c). Defendant RAYTHEON COMPANY ("RAYTHEON"), the entity charged herein with violations of the False Claims Act, 31 U.S.C. § 3729 et seq., now and at all times alleged herein had its place of business in the Central District of California in El Segundo, California. Defendant Northrop Grumman Corporation ("NORTHROP"), the entity charged herein with violations of the False Claims Act, 31 U.S.C. § 3729 et seq., now and at all times alleged herein had its place of business in the Central District of California in Los Angeles, California. The violations of the False Claims Act, 31 U.S.C. § 3729 et seq., alleged herein occurred in the Central District of California. Plaintiff has sustained the damages for violations of the False Claims Act, 31 U.S.C. § 3729 et seq., alleged herein within the Central District of California.

3.

## PARTIES

The Plaintiff is the United States of America and the Coplaintiff Relator Steven Mateski ("MATESKI"). Coplaintiff Relator MATESKI now and at all times alleged herein is a resident in the Central District of California. From 1985 to 1995 by Defendant NORTHROP and from 1997 to 2006 by Defendant RAYTHEON, which acquired Hughes Aircraft Company, MATESKI has been employed as a Manufacturing Planner Engineer.

-2-

1    Defendant RAYTHEON was and at all times alleged herein is a corporation
2  which is qualified to do business and doing business in the State of California, with
3  the Raytheon Space and Airborne Systems ("SAS") in El Segundo, California, and
4  the Raytheon Vision Systems and Santa Barbara Remote Sensing ("RVS" and
5  "SBRS") in Goleta, California, as subcontractor to design, develop and produce
6  seven flight units of the Visible Infrared Imaging Radiometer Suite ("VIIRS"), which
7  is a component of the National Polar-Orbiting Operational Environmental Satellite
8  System ("NPOESS") for the prime contractor Northrop Grumman Corporation
9  ("NORTHROP").

10    Defendant NORTHROP now and at all times alleged herein is a corporation
11  under the laws of the State of Delaware, qualified to do business and doing business
12  in the State of California, with its principal offices in Los Angeles and El Segundo,
13  California. Defendant NORTHROP is engaged in the manufacture and sale of
14  aerospace and defense systems for the United States Government, including Prime
15  Contractor on the NPOESS Program.

16                                      4.

17              STANDING OF RELATOR TO SUE AS ORIGINAL SOURCE.

18    Coplaintiff Relator MATESKI has standing to sue pursuant to the False Claims
19  Act, 31 U.S.C. § 3730(b)(1). Coplaintiff Relator MATESKI is the Original Source
20  of all the false claims by Defendant RAYTHEON pursuant to the False Claims Act,
21  31 U.S.C. § 3730(e)(4)(A), on grounds that MATESKI had direct and independent
22  knowledge of the false claims by Defendants RAYTHEON and NORTHROP which
23  he acquired during the course of his employment at Defendants RAYTHEON and
24  NORTHROP. Before filing the Qui Tam action, Coplaintiff and Relator MATESKI
25  first repeatedly revealed the RAYTHEON false claims *inter alia* by communications
26  with RAYTHEON VIIRS executives *inter alia* John Bouregy, Program Manager,
27  Bernard Malis (Retired), Manager of Manufacturing, Thomas James (Retired),
28  Engineering Authority, Ronald Estes, Test Director and Lead Engineer, Michael

-3-

1  Haley, Operations Manager, Eugene Jaramillo, Head of Quality Assurance, Steven
2  Adams, Configuration Management, and Cledith Davis, Program Quality Assurance.
3  Disclosure with particularity by the Coplaintiff Relator has been made during three
4  conferences with DOJ, DOC, DOD and NASA in Los Angeles, California on July
5  14, 2006, February 15, 2007 and March 9, 2007, and in   fifteen Supplemental
6  Disclosure Statements to the Department of Justice dated September 21, 2006,
7  September 26, 2006, October 5, 2006, October 10, 2006, January 9, 2007, March 26,
8  2007 (2), April 25, 2007, July 2, 2007, July 12, 2007, September 5, 2007, April 28,
9  2008, August 21, 2008, April 23, 2010, and July 7, 2010.

10                                      5.

11              VIOLATIONS OF THE FALSE CLAIMS ACT

12              BY DEFENDANT RAYTHEON COMPANY

13  The False Claims Act, 31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A) and (B)
14  provides that any person who, with actual knowledge, or in reckless disregard or
15  deliberate ignorance of the truth, presents, or causes to be presented, a false or
16  fraudulent claim to the United States Government for payment or approval, or who
17  makes, uses, or causes to be made or used, a false record or statement to get a false
18  or fraudulent claim paid or approved by the United States Government, is liable to
19  the United States Government for a civil penalty of not less than $5,000 and not
20  more than $10,000 for each claim, plus three times the amount of the damages
21  sustained by the United States Government. The 1986 and 2009 amendments to the
22  False Claims Act legislate, to wit:

23       § 3729. False Claims

24       (a) LIABILITY FOR CERTAIN ACTS. - Any person who -

25        (1) knowingly presents, or causes to be presented, to an officer or employee
26         of the United States Government or a member of the Armed Forces of the
27         United States a false or fraudulent claim for payment or approval;

28

                                    -4-

1    (2) knowingly makes, uses, or causes to be made or used, a false record or

2    statement to get a false or fraudulent claim paid or approved by the

3    Government;

4    (3) conspires to defraud the Government by getting a false or fraudulent claim

5    allowed or paid;

6    § 3729.  False Claims

7    (a)  LIABILITY FOR CERTAIN ACTS

8    (1)  IN GENERAL. --Subject to paragraph (2), any person who--

9    (A) knowingly presents, or causes to be presented, a false or fraudulent

10    claim for payment or approval;

11    (B) knowingly makes, uses, or causes to be made or used, a false record

12    or statement material to a false or fraudulent claim;

13    (C) conspires to commit a violation of subparagraph (A), (B), (D), (E),

14    (F) or (G).

15    Because RAYTHEON delivered the first flight VIIRS S/N002 to NORTHROP

16    in January, 2010, the aforesaid 2009 Amendment to the False Claims Act applies to

17    the VIIRS False Claims by RAYTHEON.

18                                          6.

19    Since the 1960s, the United States operational polar-orbiting meteorological

20    satellite program has been a complex infrastructure encompassing two satellite

21    systems, the Polar-orbiting Operational Environmental Satellites ("POES") managed

22    by the Department of Commerce National Oceanic and Atmospheric Administration

23    ("NOAA"), and the Defense Meteorological Satellite Program ("DMSP"), managed

24    by the Department of Defense ("DOD"). The satellites carry a suite of sensors that

25    collect environmental data to generate graphical weather images and specialized

26    weather data for forecasters, the military, and the public.

27

28

THIRD AMENDED COMPLAINT

7.

Under a shared agreement among four satellite data processing centers, the NOAA National Environmental Satellite Data and Information Service ("NESDIS"), the Air Force Weather Agency, the Naval Fleet Numerical Meteorology and Oceanography Center, and the Naval Oceanographic Office, different centers are responsible for producing and distributing, via a shared network, different environmental data sets, specialized weather and oceanographic products, and weather prediction model outputs. For the DOD centers, the users include regional meteorology and oceanography centers, as well as meteorology and oceanography staff on military bases. NESDIS forwards the data to the NOAA National Weather Service for distribution and use by government and commercial forecasters.

8.

Currently, there are two operational POES satellites and two operational DMSP satellites that are positioned so that they can observe the earth in early morning, mid-morning, and early afternoon polar orbits. Together, they ensure that for any region of the earth, data are no more than six hours old. There are an estimated 150 field terminals operated by the United States (including battlefields and ships) and foreign governments and academia, which are able to receive weather data directly from the polar-orbiting satellites. On May 5, 1994, Presidential Decision Directive NSTC-2, Convergence of U.S. Polar-orbiting Operational Environmental Satellite Systems, required that the POES and DMSP programs be converged into the National Polar-orbiting Operational Environmental Satellite System ("NPOESS").

9.

The National Polar-Orbiting Operational Environmental Satellite System ("NPOESS") is the low-earth-orbit environmental satellite system which is composed of satellites, sensors, a ground-control system and a data processing and dissemination network. NPOESS provides civilian, military and scientific communities with regional and global meteorological data, oceanographic,

-6-

environmental, climatic, and space environmental remote sensing information, surface data collection and search and rescue capabilities.

10.

The NPOESS relies upon three critical sensors, the Visible Infrared Imaging Radiometer Suite ("VIIRS"), and the Cross-Track Infrared Sounder ("CRIS") and the Conical-Scanned Microwave Image/Sounder ("CMIS"). The Visible Infrared Imaging Radiometer Suite ("VIIRS") for the NPOESS collects visible/infrared imagery and radiometric data on the atmosphere, clouds, earth radiation budget, clear-air land/water surfaces, sea surface temperature, ocean color, and low-light visible imagery.

11.

The NPOESS tri-agency Integrated Program Office ("IPO") is comprised of the Department of Defense ("DOD"), the National Oceanic and Atmospheric Administration ("NOAA") in the Department of Commerce ("DOC"), and the National Aeronautics and Space Administration ("NASA") that was engaged in the combination of the two current satellite systems into a single environment monitoring satellite system called the National Polar-orbiting Operational Environmental Satellite System ("NPOESS"), which is critical for weather forecasting and strategic global climate monitoring through the year 2020.

12.

Within the NPOESS IPO, NOAA, DOD and NASA have the lead on certain NPOESS activity. NOAA has overall program management responsibility for the converged system and for satellite operation. The DOD USAF Space and Missile Systems Center has the lead on the acquisition and contract management. NASA has primary responsibility for facilitating the development and incorporation of new technologies into the converged system. NOAA and DOD have shared the costs of funding NPOESS, while NASA funds specific technology projects and studies.

THIRD AMENDED COMPLAINT

13.

Overall NPOESS program oversight is assigned to an executive committee ("EXCOM") composed of the top officials from each of the IPO agencies: the Under Secretary of Commerce for Oceans and Atmosphere, the Under Secretary of Defense for Acquisition and Technology, and the NASA Deputy Administrator. In November 2005, the NPOESS EXCOM established a Program Executive Office ("PEO") to independently oversee the IPO and conduct an ongoing independent analysis and review of the NPOESS program.

14.

In August 2002, DOD procurement authority awarded a single NPOESS integration contract for $4.5 billion to the prime contractor NORTHROP for the procurement of six satellites and seven instrument sensors, incorporating previously awarded sensor contracts as subcontracts to the prime contract, including the RAYTHEON VIIRS Subcontract 65349DGE2S, now exceeding $14 billion. The NORTHROP prime contract included base fee and rollover award fee provisions of up to 20% of the total estimated costs in the three types of fees:

(1)  Base Fees are guaranteed 2% of estimated costs, which are paid to the contractor automatically each billing period.

(2)  Award Fees up to 13% of estimated cost or $369,294,988 are based on the contractor performance in management, technical and cost.

(3) Mission Success Fees up to 5% of estimated cost or $136,817,498 are based upon the contractor performance concerning seven program events.

15.

At least $123 million, which constitutes from 84% to 90% of the available award fee pool, has been paid by the United States Government in spite of the false claims, reports and statements alleged herein. The NPOESS contract provides that all award fees are "at risk", whereby NORTHROP will have to return up to 100% if NORTHROP fails to deliver a NPOESS system that provides useful service over the

-8-

THIRD AMENDED COMPLAINT

1   life of the NPOESS. Plaintiff alleges that 100% of the award fees should be returned
2   by NORTHROP and RAYTHEON caused by the false claims alleged herein,
3   especially because NPOESS has been terminated and because of the EXCOM and
4   IPO  decision not to launch the first NPOESS satellite because of the defective
5   nonconformance VIIRS which will compromise the NPOESS mission assurance and
6   cause the NPOESS downgrade or failure.

7                                             16.

8       NASA is engaged in the NASA Preparatory Project ("NPP") which will launch
9   a demonstration satellite equipped with VIIRS and two other critical sensors in order
10  to test their operation prior to the launch of the first NPOESS. Delays and cost
11  overruns and false claim defective nonconformances have pushed the NPOESS
12  Preparatory Project ("NPP") launch to 2011 at the earliest and terminated NPOESS
13  launches. VIIRS itself is behind schedule, and at least 30% overrun, and has caused
14  over 60% of the NPOESS contract overrun, whereby NPOESS has been under
15  review pursuant to the Nunn-McCurdy provision of the FY 1982 National Defense
16  Authorization Act and NPOESS is now terminated February 1, 2010. The VIIRS
17  sensor has "bedeviled the program" of NPOESS.

18      The RAYTHEON First Flight VIIRS (S/N 001) was so defective that it has been
19  downgraded and relegated to a nonflight nonentity. The Second Flight VIIRS (S/N
20  002) is now the First Flight VIIRS, whereby the VIIRS FPIE has been delivered by
21  RAYTHEON El Segundo  to NORTHROP in January 2010. Production on the
22  VIIRS Second Flight (S/N 003) and Third Flight (S/N 004) at RAYTHEON El
23  Segundo with all the false defective nonconformances alleged with particularity
24  hereinafter was terminated completely in July, 2006. The RAYTHEON VIIRS the
25  latent defective nonconformances in VIIRS Flights 2, 3 and 4 would compromise the
26  NPOESS mission assurance, and cause the NPOESS mission degrade or failure.

27      The NPOESS NPP Flight (thematic mapper) relies upon three critical sensors,
28  the Visible Infrared Imaging Radiometer Suite ("VIIRS"), and the Cross-Track

THIRD AMENDED COMPLAINT

1　Infrared Sounder ("CRIS") and the Conical-Scanned Microwave Image/Sounder
2　("CMIS"). The Visible Infrared Imaging Radiometer Suite ("VIIRS") for the
3　NPOESS collects visible/infrared imagery and radiometric data on the atmosphere,
4　clouds, earth radiation budget, clear-air land/water surfaces, sea surface temperature,
5　ocean color, and low-light visible imagery.

6　　　A catastrophic failure of the VIIRS DNB (Day/Night Band Module) would
7　cause the loss of down-looking low-light visible imagery visual confirmation as well
8　as across the event-horizon, in effect blinding the NPOESS telescope, thereby
9　compromising the NPOESS/VIIRS System integrity and mission assurance.

10　　　A "Latent Failure" has occurred on the visible Infrared Imaging Radiometer
11　Suite ("VIIRS") instrument, discovered after Integration at Ball Aerospace while
12　performing Final Acceptance Testing at the Space Craft Level. VIIRS sensors are
13　designed to measure at least 21 different parameters including ice cover, cloud cover,
14　and forest cover. One thing VIIRS will not measure accurately is ocean color,
15　because one of the filters responsible for the job is faulty. Ocean color data is critical
16　for measuring primary productivity and sedimentation, among other things. There is
17　concern after learning that there was a problem with the filter on one of NPOESS
18　sensors VIIRS, that if the problem is not fixed, a data gap will emerge in the time
19　series of ocean color data. There are "about a dozen" visible channels, a filter failure
20　will　prevent it VIIRS from accurately measuring ocean color, i.e., a failure to
21　measure the spectra as well as distort the accuracy of the results, thereby
22　compromising the NPOESS/VIIRS System integrity and mission assurance.

23　　　On February 1, 2010, the White House announced the cancellation of NPOESS
24　which has been plagued with technical underperformance, cost overruns and five-
25　years delays, whereby there will be resort to the preexisting DOD and DOC NOAA
26　polar-orbiting satellites to serve military and civilian requirements. DOD will
27　continue the Defense Meteorological Satellite Program (DMSP) of morning polar-
28　orbiting satellites. Under the management of NASA, the DOC NOAA new Joint

THIRD AMENDED COMPLAINT

1  Polar Satellite System (JPSS) afternoon polar-orbiting satellites are scheduled for
2  launch in 2015 and 2017. In 2010, government shall terminate the NPOESS prime
3  contract with NORTHROP which had the responsibility for building and integrating
4  the NPOESS satellite platform and managing the subcontractors for the NPOESS
5  instruments, including VIIRS by the subcontractor RAYTHEON.

6                                    17.

7      The RAYTHEON VIIRS Subcontract 65349DGE2S and the Statement of Work
8  for the VIIRS Day/Night Band Module Assembly, P/N 417350-100, are incorporated
9  herein by reference, including the reference documents and revisions thereto:

10         (1) Integrated Master Plan (IMP) PDM# Y0013233-0004.
11         (2) Integrated Master Schedule (IMS), PDM# Y0013234.
12         (3) Quality Requirements (QR), PDM# Y0013221
13         (4) Quality Control Plan, PDM# Y1433
14         (5) SBRS Reliability Program Plan for NPOESS/VIIRS, #Y3584
15         (6) SBRS Configuration Management Plan for NPOESS/VIIRS, #Y6445
16         (7) Approved Materials and Process List, AMPL154640
17         (8) Approved Parts List (EEE) VIIRS, APL154640
18         (9) Structural Product Specification, PS154640-111
19         (10) Thermal Product Specification, PS154640-112
20         (11) Electronics Module, Product Specification for Visible/ Infrared Imager
21  Radiometric Suite, PS154640-114
22         (12) Contamination Control Plan, PS154640-132
23         (13) Process Specification for Packaging, Handling, and Storage of VIIRS
24  Modules, PS154640-730
25         (14) FPIE Assy Interface Control Document (ICD), 421310-500
26         (15) Focal Plane Assy - DNB FPA ICD, 417360-500
27         (16) DNB Module Electrical ICD, 417350-500
28

THIRD AMENDED COMPLAINT

18.

## VIIRS NON-FLIGHT FPA EDU2, FPIE AND DNB
## FLIGHT UNIT NONCONFORMANCE CHRONOLOGY.

One of the "Quality Findings" during the first CTI meeting held July 30, 2004 was the discovery that RAYTHEON Test Specifications TP154640-760 (Functional Acceptance Testing) and TP154640-764 (Vibration Acceptance Testing) were not "Baseline" released, and the RAYTHEON STE (Special Test Equipment) Rack had not been pre-qualified prior to hook-up and use in Acceptance Testing of VIIRS Flight hardware in violation of VIIRS Program Quality Requirements. It was during this subsequent STE Qualification that the VIIRS integrity exposures occurred.

During one of the Cold-Box (Dewar) STE Qualification tests, it was necessary to configure the Downgraded Non-Flight FPIE Emulator (S/N 001) and the Non-Flight FPA EDU2 (Engineering Demonstration Unit #2) in combination into the Cold-Box (Dewar) in a simulated DNB Flight configuration. The Non-Flight FPA EDU2 rigid-flex cable is approximately 2.00" shorter than the Flight version. This caused excessive strain to be placed on the rigid-flex cable while stretching to make the mate with the FPIE Emulator J1 and J2 Connectors. Later this same strain would be placed on the FPIE Flight Unit and would become the source of damage to the FPIE Chassis Mounting Feet (bent while mounting Rigid Flex Cables).

The FPA EDU2 (Engineering Demonstration Unit #2) had not been assembled as a Flight Unit and was missing the Connector Backshells, it was instead potted as a means of electrical isolation and was a very poor means of mechanical protection against shorting when mating.

As strain was applied during mating, internal pins broke at the FPA EDU2 potted Connectors causing a dead short to occur. The power was switched on and the Downgraded Non-Flight FPIE Emulator and FPA EDU2 Unit circuits were subjected to a dead-shorted condition. Several subsequent analysis tests were performed to determine if the Non-Flight FPIE Emulator circuits had suffered damage. There is

-12-

1  no test to determine if a latent defect will manifest itself later.

2      The VIIRS FPA EDU2 unit was removed and sent to RVS/SBRS (RAYTHEON
3  Vision Systems/Santa Barbara Remote Sensing in Goleta, California) for repairs.
4  Clifford Nichols - RVS Systems Engineer, informed Relator MATESKI that
5  RVS/SBRS had replaced the 100 pin Connector and the 51 pin Connector. When
6  asked why there were no Backshells to protect the Connector pins from breaking
7  and/or shorting, Clifford Nichols replied, "This is the way we've done it for 25 years,
8  we're not going to change now."

9      Relator MATESKI went to Ronald Estes, RAYTHEON El Segundo Lead
10 Engineer, and demanded he use his authority to have the Backshells installed on the
11 FPA EDU2 Unit in RAYTHEON (RVS) in Goleta, as RAYTHEON El Segundo had
12 just rebuilt all the sub-standard STE cables at tremendous VIIRS Program expense
13 to ensure that this sort of failure would not happen in Acceptance testing. Ronald
14 Estes, RAYTHEON Lead Engineer in El Segundo, agreed and asked Relator
15 MATESKI to put it in writing, and send it in an Email to him. He agreed to forward
16 it through channels to Clifford Nichols - Lead Engineer RAYTHEON (RVS) Goleta,
17 who finally agreed to install the Backshells.

18     Clifford Nichols called to inform Relator MATESKI that RAYTHEON (RVS)
19 in Goleta was about to return the FPA EDU2 Unit to RAYTHEON El Segundo.
20 When asked if RAYTHEON (RVS) had buzzed-it-out to determine if any damage
21 had occurred when the pins were shorted together, Clifford Nichols responded that
22 limited probing had been performed but he was not certain what the results meant,
23 and agreed to do some additional point-to-point probe testing. Subsequently a dead
24 short to ground was found and a decision was made to isolate the stage 1B right and
25 left circuits by removing the wire bonds (2 places) at the flex cable to Interface
26 Circuit Board (ICB). When this was done, the dead short was gone, but so was the
27 capability to Acceptance Test the VIIRS FPIE Flight 1 Unit stage 1B right and left
28 gates.

THIRD AMENDED COMPLAINT

The 421310-100 S/N 002 FPIE Flight 1 Unit was never tested on these circuits. Authorization for the use of this Non-Flight FPA EDU2 Unit (with a non-functioning Stage 1B right and left) for Acceptance Testing of Flight Hardware is not documented anywhere on the VIIRS Flight FPIE book, is prohibited by the VIIRS Program Quality Requirements and Test Procedures.

The RAYTHEON excuse was that the VIIRS FPIE Flight 1 Unit would be tested at the Next Assembly when the Unit is installed in the spacecraft and all system testing gets repeated. To date, and since the rebuild, the VIIRS FPIE (S/N 002) Flight 1  Unit has never had the "Cold" Acceptance Test performed in conjunction with and using a Flight Quality FPA Unit. The VIIRS FPIE/FPA tuning data must be performed as a "Matched Pair" for optimal system performance. If it performs poorly and has to be returned to RAYTHEON El Segundo for retuning (3-6 month delay minimum), RAYTHEON will not know this until the VIIRS FPIE/FPA is tested at the spacecraft because this testing was never conducted at the lower DNB (FPIE/FPA) level as required. The reason the Flight FPA was not available, is because the RAYTHEON VIIRS FPIE Flight 1 Unit was rejected in the first attempt at CTI sell-off and delivery. The Flight FPA was integrated into the Next Assembly so the spacecraft could proceed forward while the VIIRS FPIE Flight 1 (S/N 002) Unit was to be rebuilt and retested (all at NPOESS/VIIRS Program expense). The 421310-100 FPIE Flight 1 (S/N 002) Unit has not been tested to the VIIRS Flight (DNB) requirements as defined in TP154640-762, Revision A.

During August, 2006, undisclosed during the IPO and Aerospace Corporation VIIRS audit on August 29-30, 2006, RAYTHEON Goleta (RVS) reopened the VIIRS FPIE for retuning and has requested resister selects from RAYTHEON El Segundo, which invalidates the cleaning, bake-out, and all prior VIIRS Lower Level Unit Acceptance Testing, including ambient performance test, protoflight vibration test, and protoflight thermal cycle test at RAYTHEON El Segundo.

-14-

19.

RAYTHEON FRAUDULENT SCHEME AND PROCESS OF NONCOMPLIANCE
WITH VIIRS SPECIFICATIONS AND REQUIREMENTS.

From 2002 to at least 2010, RAYTHEON has engaged in a fraudulent scheme and process of noncompliance with the VIIRS specifications and requirements regarding at least thirty-two VIIRS 100 level subsystem units and NPOESS sensors, which were comprised of hundreds of unique VIIRS High Reliability electronic component part numbers and thousands of VIIRS High Reliability component parts, as alleged with particularity in the False Claims at Paragraphs 22 through 70 herein, and including without limitation:

A. THE RAYTHEON RECKLESS DISREGARD BY SYSTEMATICALLY PLACING VIIRS HIGH RELIABILITY COMPONENTS ON WAIVERS TO CIRCUMVENT DPA TESTING INCLUDED WITHOUT LIMITATION:

(1) VIIRS Product Substitution by Placing VIIRS High Reliability Component Parts on Waivers to Circumvent the NGIID and Contamination Control Plan.

(2) Avoiding VIIRS High Reliability component DPA test by placing on waivers, specifically, at least thirty-two VIIRS 100 level subsystem units and NPOESS sensors, which were comprised of hundreds of unique VIIRS High Reliability component part numbers and thousands of VIIRS High Reliability component parts.

(3) RAYTHEON had only one DPA Test Laboratory which was in El Segundo. RAYTHEON Goleta was required to send Lot Representative samples to El Segundo for VIIRS DPA High Reliability component testing to S1, S2 and S3, and/or R1, R2 and R3 screening levels, but did not do so.

(4) VIIRS DPA tests were attempted to be conducted by RAYTHEON after the High Reliability components were assembled into the VIIRS Units and NPOESS sensors.

-15-

(5) There was a RAYTHEON process failure to perform in compliance with the VIIRS NGIID resulting in a latent VIIRS system failure.

The RAYTHEON-NORTHROP waiver PDM (Product Data Management) procedure to process VIIRS waivers, includes the utilization of the RAYTHEON ESIR form in four stages:

(1) CREATED: RAYTHEON writes a waiver and posts waiver in the RAYTHEON PDM system in CREATED status, and investigates to verify the nonconformance with the NPOESS/VIIRS specifications and requirements. If RAYTHEON validates the nonconformance, then RAYTHEON proposes a solution on a written waiver. Then RAYTHEON changes the PDM waiver status to CONFIRM.

(2) CONFIRM: RAYTHEON enters the waiver and the proposed solution onto the ESIR form to notify NORTHROP of the nonconformance with the NPOESS/VIIRS specifications and requirements. RAYTHEON formally sends the ESIR to NORTHROP both notifying and requesting relief from NPOESS/VIIRS specifications and requirements, specifically thirty-four waivers to date: D024, W005, W007, W020A, W021, W022A, W023, W024A, W026, W027, W028, W029, W031, W032, W033, W038, W039, W040, W041, W043, W044, W045, W046, W047, W048, W049, W052, W053, W055, W056, W057, W058, W059, W060. NORTHROP either accepts or rejects the RAYTHEON proposed solution. Then NORTHROP has actual knowledge of the RAYTHEON admitted VIIRS defective nonconformance with the NPOESS/VIIRS specifications and requirements.

(3) IMPLEMENT: NORTHROP either accepts RAYTHEON proposed solution, or modifies RAYTHEON proposed solution, or rejects RAYTHEON proposed solution, via the ESIR concerning the RAYTHEON waiver of NPOESS/VIIRS specifications and requirements. If NORTHROP agrees with RAYTHEON proposed solution via the ESIR, RAYTHEON changes the PDM waiver status to IMPLEMENT.

THIRD AMENDED COMPLAINT

1    (4)  CLOSED:  When the RAYTHEON VIIRS waiver is signed by
2    NORTHROP and the GOVERNMENT, RAYTHEON changes the PDM waiver
3    status to CLOSED. No RAYTHEON VIIRS waivers have been signed by the
4    GOVERNMENT. An ESIR has been sent to NORTHROP on RAYTHEON VIIRS
5    waivers W005 and W007 but NORTHROP and the GOVERNMENT have not signed
6    those waivers. RAYTHEON VIIRS waiver W010 has been signed by NORTHROP
7    but not by the GOVERNMENT. There is no evidence that NORTHROP nor
8    RAYTHEON secured GOVERNMENT approval on any of the RAYTHEON VIIRS
9    waivers whatsoever.

10   On August 29-30, 2006, at RAYTHEON Goleta (RVS), the NPOESS Integrated
11   Program Office (IPO) and the Aerospace Corporation Eric Richter, Christopher Pate,
12   and Melvin Cohen, conducted a technical audit of the RAYTHEON VIIRS
13   Subcontract 65349DGE2S, with NORTHROP Audit Lead Rick Ikemoto and Billy
14   Callin, as requested by Brig. Gen. Susan K. Mashiko, NPOESS Deputy Systems
15   Program Director. In deliberate ignorance and reckless disregard, RAYTHEON *inter*
16   *alia* John Bouregy, RVS Program Manager, Eugene Jaramillo, Program Quality,
17   Mike Haley, Operations Manager, Marilyn Medel, RVS Quality, and Robert Rodau,
18   ESD Engineer, made false statements and created a false record by the deliberate
19   concealment by RAYTHEON of the numerous NPOESS/VIIRS FPIE/FPA DNB and
20   other unit waivers written by RAYTHEON and granted by RAYTHEON to
21   RAYTHEON without approval, which constitute admissions of defective
22   nonconformances with the NPOESS/VIIRS contract specifications and requirements,
23   thereby constituting an additional RAYTHEON false statement and false record
24   violations of the False Claims Act, 31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A)
25   and (B), to wit:

26   (1) In Deliberate Ignorance and Reckless Disregard RAYTHEON concealed
27   the numerous NPOESS/VIIRS FPIE/FPA DNB and other units waivers written by
28   RAYTHEON and then RAYTHEON assumed the waivers to be acceptable without

-17-

1  prior customer approvals despite their severity, did continue to integrate hardware
2  through final delivery, thereby RAYTHEON granted said waivers to RAYTHEON
3  by forcing their NPOESS customer into the position of accepting said waivers in
4  order to take possession of the VIIRS hardware, despite the fact that the VIIRS
5  hardware was and still is defective, does not meet contractual specifications and
6  requirements, constitutes Numerous Product Substitutions, which impair the
7  NPOESS/VIIRS Mission Assurance, and constitute violations of the False Claims
8  Act, 31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A) and (B).

9       (2) In Deliberate Ignorance and Reckless Disregard, concealed that in another
10  room, RAYTHEON had disassembled the FPIE, which *inter alia* invalidated all FPIE
11  testing, thereby constituting defective nonconformances with NPOESS/VIIRS
12  FPIE/FPA DNB contract specifications and requirements, which impair the
13  NPOESS/VIIRS Mission Assurance and constitute violations of the False Claims
14  Act, 31 U.S.C. § 3729(a)(1)(2) and (7).

15       B. RAYTHEON RECKLESS DISREGARD OF VIIRS WORK PERFORMED
16  IN ADVANCE OF FORMAL RELEASED ENGINEERING DRAWINGS.

17       RAYTHEON often directs employees to perform work prior to release of
18  Engineering Drawings. Relator MATESKI has been asked on numerous occasions
19  to "move-out" and begin work in advance of drawing release on both Flight and
20  Non-Flight programs alike. Upon entering the VIIRS Program, Relator MATESKI
21  discovered that many if not all of the STE cables and much of the STE equipment
22  had been built and/or purchased without regard to a Base-line Drawing Release, a
23  Planning Book, or Purchase Order trace. Planning books are dummied-up after-the-
24  fact to match the hardware built once the drawing is released. When operating in this
25  manner, it becomes impossible to perform a valid configuration check prior to Final
26  Inspect and equally impossible to perform a true Inspection. The RAYTHEON use
27  of    contract job shopper Planners, poorly documented and/or convoluted
28  Manufacturing Processes, constant rotation of Planners within assignments,

1   willingness to take shortcuts when stopped for lack of documentation, and failure to
2   provide closed-loop processes coupled with an inventory system and Shop Floor
3   Router system that does not support Basic Manufacturing and Planning needs, has
4   led to numerous Configuration Deltas on the VIIRS Program. These methods are also
5   being employed on other programs causing similar results. RAYTHEON calls it
6   "Concurrent Engineering" where Engineering Design Drawings are not ready for
7   release, but are released without a formal drawing check process to obtain earned
8   value. Drawings are then constantly corrected on-the-floor in the shop labs using a
9   Red-Line process causing tremendous additional program expense and disruption
10  while in the manufacturing cycle. The appearance on the surface is that things are
11  getting done faster, and that manufacturing is incompetent because they cannot get
12  anything built. In reality, the Engineering Designs are incomplete often forcing out-
13  of-sequence manufacturing work-arounds and thereby does compromise the
14  NPOESS/VIIRS Unit/System integrity and mission assurance, and will cause the
15  NPOESS mission downgrade or failure, constituting Product Substitution, in
16  violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A)
17  and (B).

18      C. RAYTHEON RECKLESS DISREGARD OF VIIRS DRAWING TREE
19  NONCONFORMANCES.

20      VIIRS assemblies are drawn on a single drawing despite the fact that many
21  contain Sub-Assemblies or; "Make on Assembly" details which cannot be made as
22  the Assembly is being built, as there is no lead-time allowance associated for these
23  parts. As a result, several of these red-line changes that are not tightly controlled may
24  slip through the cracks as they did on the Avalon and VIIRS Programs.

25      This red-line change method with embedded make on Assembly components
26  makes it nearly impossible to know if all engineering changes have been captured
27  when the drawing finally rolls to the next revision as all hardware on the DWG, will
28  by default, appear to comply with the new DWG Revision.

THIRD AMENDED COMPLAINT

1    In Reckless Disregard, it becomes impossible for RAYTHEON to demonstrate
2    the pedigree of the unit or for the customer to audit the unit configuration in violation
3    of the False Claims Act, 31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A) and (B).
4    20.

5    On August 29-30, 2006, at RAYTHEON Goleta (RVS), the NPOESS Integrated
6    Program Office (IPO) and the Aerospace Corporation Eric Richter, Christopher Pate,
7    and Melvin Cohen, conducted a technical audit of the RAYTHEON VIIRS
8    Subcontract 65349DGE2S, with NORTHROP Audit Lead Rick Ikemoto and Billy
9    Callin, as requested by Brig. Gen. Susan K. Mashiko, NPOESS Deputy Systems
10   Program Director. In deliberate ignorance and reckless disregard, RAYTHEON *inter*
11   *alia* John Bouregy, RVS Program Manager, Eugene Jaramillo, Program Quality,
12   Mike Haley, Operations Manager, Marilyn Medel, RVS Quality, and Robert Rodau,
13   ESD Engineer, made false statements and created a false record by the deliberate
14   concealment by RAYTHEON of the VIIRS defective nonconformances with the
15   VIIRS/NPOESS contract specifications, thereby constituting an additional
16   RAYTHEON false statement and false record violations of the False Claims Act, 31
17   U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A) and (B).

18   21.

19   RAYTHEON VIOLATIONS OF THE FALSE CLAIMS ACT.

20   From 2002 to at least 2010, at RAYTHEON El Segundo and Goleta, Defendant
21   RAYTHEON *inter alia* John Bouregy, Program Manager, M. Pavloff, Program
22   Manager, Ronald Estes, ELS Lead Engineer and Test Director, Michael Haley,
23   Operations Manager, Eugene Jaramillo, Head of Quality Assurance, Thomas James
24   (Retired), Responsible Engineering Authority, Cledith Davis, Program Quality
25   Assurance, Timothy Kilduff, Test Technician, Mario Farr, Shop Supervisor, Bernard
26   Malis (Retired), Manager of Manufacturing, Clifford Nichols, RVS Systems
27   Engineer, Robert Wong, Design Engineer, Mark Ross (Ex-employee), ELS Quality
28   Assurance, Steven Adams, Configuration Management, Marilyn Medel, RVS Quality

-20-

Assurance, Richard Julien, RVS Lead Engineer, John Clement, RVS Systems Engineer, Richard Murth, Components Engineer, knowingly in deliberate ignorance and reckless disregard has caused NPOESS/VIIRS false claims, false statements, and false records, which compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, including without limitation:

(1) False RAYTHEON Reckless Disregard by Engineering Design Failure to Comply with NPOESS/VIIRS Contamination Control Specifications. [Paragraph 22, Page 27]

(2) False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit Chassis and Bottom Cover and Failure to Document. [Paragraph 23, Page 28]

(3) False RAYTHEON Reckless Disregard by Use of Prohibited Materials in Production of the VIIRS FPIE Unit Materials. [Paragraph 24, Page 29]

(4) False RAYTHEON Reckless Disregard by Use of Prohibited Processes in Production of the VIIRS FPIE Unit Materials. [Paragraph 25, Page 30]

(5) False RAYTHEON Reckless Disregard to Design and Produce the VIIRS Specified FPIE Primary and Redundant J7A and J7B Power Feed Connectors. [Paragraph 26, Page 34]

(6) False VIIRS ESD Exposures, Multiple ESD Exposures, and Latent Defects. False RAYTHEON Reckless Disregard of VIIRS ESD Protection of Flight Quality Hardware During Assembly. [Paragraph 27, Page 34]

(7) False RAYTHEON Reckless Disregard by Failure to Install the Shorting Plugs or ESD Dust Caps on Connectors While Not in Use to Protect VIIRS Hardware during Assembly and Handling per VIIRS FE94 Program Quality Requirements. [Paragraph 28, Page 36]

(8) False RAYTHEON Reckless Disregard to Maintain ESD Protection of VIIRS Flight Quality Hardware During Workmanship Thermal Cycle Testing.

-21-

1 [Paragraph 29, Page 38]

2 (9) False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS

3 ESD Design Approval for Materials and Equipment Used in Compliance with ESD

4 Protection Requirements for VIIRS Flight Hardware (Thermal Cycle Testing

5 Equipment - Butterfly Fixture). [Paragraph 30, Page 40]

6 (10) False RAYTHEON Reckless Disregard by ESD Protections of VIIRS

7 Flight Quality Hardware During Acceptance Testing. [Paragraph 31, Page 41]

8 (11) False RAYTHEON Reckless Disregard by Failure to obtain Prior VIIRS

9 ESD Design Approval for Material and Equipment used in meeting ESD Protection

10 Requirements for VIIRS Flight Hardware (Acceptance Testing Equipment - STE

11 Cables). [Paragraph 32, Page 43]

12 (12) False RAYTHEON Reckless Disregard to Maintain ESD Protection of

13 VIIRS Flight Quality Hardware During Cold Acceptance Testing. [Paragraph 33,

14 Page 44]

15 (13) False VIIRS Cold Acceptance Testing ESD Exposures. False

16 RAYTHEON Reckless Disregard to Obtain prior VIIRS ESD Design Approval for

17 Materials and Equipment used in meeting ESD Protection Requirements for VIIRS

18 Flight Hardware. [Paragraph 34, Page 45]

19 (14) False RAYTHEON Reckless Disregard to Identify and Implement VIIRS

20 ESD Rigid Controls Requirements on the Drawings. [Paragraph 35, Page 46]

21 (15) False RAYTHEON Reckless Disregard by Circumvention of VIIRS Test

22 Specifications, First Article Testing, and Test Protoflight Specifications. [Paragraph

23 36, Page 48]

24 (16) False RAYTHEON Reckless Disregard to Perform 3-Axis Random

25 Vibration Protoflight Test Specifications on First Article VIIRS Flight Hardware.

26 [Paragraph 37, Page 49]

27 (17) False RAYTHEON Reckless Disregard by Failure to Test VIIRS

28 FPA/FPIE Units as a "Matched Pair" to Verify Compliance with the DNB

-22-

THIRD AMENDED COMPLAINT

1   Performance Specification. [Paragraph 38, Page 53]

2       (18)   False Defective Nonconformance VIIRS Cold (Dewar) Acceptance

3   Testing. False RAYTHEON Reckless Disregard to Perform Cold Acceptance Test

4   Requirements on First Article DNB VIIRS Flight Hardware. [Paragraph 39, Page 54]

5       (19)   False RAYTHEON Reckless Disregard to Perform VIIRS Thermal

6   Cycling per Acceptance Test Requirements on First Article DNB Flight Hardware.

7   [Paragraph 40, Page 56]

8       (20)   False RAYTHEON Reckless Disregard to Perform to VIIRS EMI/EMC

9   Test Requirements on First Article DNB VIIRS Flight Hardware. [Paragraph 41,

10  Page 58]

11      (21)   False RAYTHEON Reckless Disregard by Circumvention of VIIRS

12  Procurement Processes, Qualification Testing of Procured Components, and Trace

13  Specifications for Space Programs. False Reckless Disregard to Procure VIIRS

14  Flight Parts Through Supply Chain Circumventing Quality. False RAYTHEON

15  Reckless Disregard to Maintain Space Trace Requirements on VIIRS Flight Parts

16  Throughout Buildup of VIIRS. [Paragraph 42, Page 59]

17      (22)   False RAYTHEON Reckless Disregard by Initial Failure to Perform

18  VIIRS Qualification Testing, Destructive Physical Analysis Testing, Radiation Lot

19  Acceptance Testing, Burn-in at specified levels, and Prohibitive Material Inspection

20  on VIIRS Flight components. [Paragraph 43, Page 61]

21      (23) False RAYTHEON Reckless Disregard of Initial Failure to Perform X-Ray

22  Testing on VIIRS Flight Parts. [Paragraph 44, Page 63]

23      (24)   False RAYTHEON Reckless Disregard to Segregate VIIRS Flight vs.

24  Non-Flight Hardware During VIIRS Assembly. [Paragraph 45, Page 64]

25      (25)   False RAYTHEON Reckless Disregard to Design to Provide ESD

26  Protection for VIIRS Materials and Equipment in Compliance with ESD and

27  EMI/EMC Requirements for VIIRS Flight Hardware. [Paragraph 46, Page 66]

28

-23-

THIRD AMENDED COMPLAINT

(26) False RAYTHEON Reckless Disregard by Failure to Develop and Document Software Used in Acceptance Testing of VIIRS Flight Hardware. [Paragraph 47, Page 67]

(27) False RAYTHEON Reckless Disregard by the Defective Nonconformance VIIRS FPIE CHASSIS J1 and J2 connectors. [Paragraph 48, Page 68]

(28) False RAYTHEON Reckless Disregard of the RAYTHEON Materials and Process Engineering Group Design Guide Bulletins. [Paragraph 49, Page 71]

(29) RAYTHEON Reckless Disregard of RAYTHEON Event Failure Report 3250 concerning ESD Exposure Disclosed in GIDEP Alert #GB4-P-06-01A. [Paragraph 50, Page 72]

(30) False RAYTHEON Reckless Disregard to Document and Utilize VIIRS Flight Hardware to Released Engineering During VIIRS Assembly. [Paragraph 51, Page 75]

(31) RAYTHEON reckless disregard of RAYTHEON VIIRS false and forged VIIRS certifications. [Paragraph 52, Page 78]

(32) RAYTHEON-NORTHROP Waiver PDM Procedure to Process VIIRS Waivers of Defective Nonconformances with NPOESS VIIRS Specifications and Requirements. [Paragraph 53, Page 83]

(33) RAYTHEON Reckless Disregard RVS Goleta and ELS El Segundo False Unauthorized Waivers of NPOESS/VIIRS FPIE/FPA DNB Specifications and Requirements Which Constitute Admissions of VIIRS Defective Nonconformances. [Paragraph 54, Page 85]

(34) False Unauthorized RAYTHEON Waivers RDW_VIIRS-W010, RDW_VIIRS-W012A, and RDW_VIIRS-W014 to Circumvent and conceal RAYTHEON Designed In Prohibited Materials, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 55, Page 91]

-24-

THIRD AMENDED COMPLAINT

(35)   False   Unauthorized   RAYTHEON   Waivers   RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027 to Circumvent and Conceal Zero Inventory Components in Lieu of Prohibited Materials Testing, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 56, Page 93]

(36)   False   Unauthorized   RAYTHEON   Waiver   RDW_VIIRS-W018   to Circumvent and Conceal ASP CCA VIIRS System Unit Failures to Perform to VIIRS Specifications, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 57, Page 96]

(37)   False   Unauthorized   RAYTHEON   Waiver   RDW_VIIRS-W024   to Circumvent and Conceal Unit Failures to Perform to VIIRS Specifications, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 58, Page 97]

(38) False Unauthorized RAYTHEON Waivers RDW_VIIRS-W005, 417500-110 (FU1), RDW_VIIRS-W005, 417600-110 (FU1), RDW_VIIRS-W007, 417900-110 (FU1), RDW_VIIRS-W007, and 417800-100 (FU1) to Circumvent and Conceal RAYTHEON VIIRS Design Failures to Meet Corrosion and Dissimilar Metals Specifications, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 59, Page 99]

(39)   False   Unauthorized   RAYTHEON   Waivers   RDW_VIIRS-W009A, 418100-110, RDW_VIIRS-W009A, 417700-110, RDW_VIIRS-W009A, 417900-110,   RDW_VIIRS-W009A,   417800-100,   RDW_VIIRS-W009A,   418200-100, RDW_VIIRS-W009A, and 417360-100, to Circumvent and Conceal VIIRS Test Requirements Including VIIRS First Article Thermal Cycle Testing to Protoflight Requirements, which constitute admissions by RAYTHEON of VIIRS defective

THIRD AMENDED COMPLAINT

nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 60, Page 101]

(40)   False Unauthorized RAYTHEON Waiver RDW_VIIRS-W001 to Circumvent and Conceal VIIRS EMI/EMC and ESD Exposure, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 61, Page 102]

(41)   False Unauthorized RAYTHEON Waivers RDW_VIIRS-W018, and RDW_VIIRS-W024 to Circumvent and Conceal VIIRS System Units Failures to Perform to VIIRS Specifications, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 62, Page 104]

(42)   False Unauthorized RAYTHEON Waivers RTMA RDW_VIIRS-W001, 417700-110 (FU1), HAMMA RDW_VIIRS-W001, and 417700-110 (FU1), in Reckless Disregard to Obtain Prior ESD and EMI/EMC Design Approval for VIIRS Materials and Equipment used in Compliance with ESD Protection Requirements for VIIRS Flight Hardware, which constitute admissions by RAYTHEON of VIIRS defective nonconformance with NPOESS VIIRS specifications and requirements. [Paragraph 63, Page 105]

(43)   False RAYTHEON Deliberate Ignorance and Reckless Disregard Concealment of the VIIRS Defective Nonconformances at the IPO, Aerospace Corporation and NORTHROP Audit on August 29-30, 2007. [Paragraph 64, Page 106]

(44)   NORTHROP Directed RAYTHEON VIIRS Flight Verification which in Reckless Disregard RAYTHEON Declined to Conceal VIIRS Defective Nonconformances with NPOESS VIIRS Specifications and Requirements. [Paragraph 65, Page 108]

(45)   Product Substitution by NPOESS Program Wide Deliberate and Systematic Circumvention of Qualification Testing Requirements of High Reliability

-26-

1   Components Used in the VIIRS. [Paragraph 66, Page 113]

2       (46)  RAYTHEON Reckless Disregard of Inoperative VIIRS DPA Test Lab,

3   and Testing of Installed VIIRS Components Parts After Installation by Coupling of

4   Tests Results from Non-Lot Representative Samples of Component Parts Attempting

5   to Qualify Untested Lots. [Paragraph 67, Page 119]

6       (47)  Failure to Maintain an Accurate VIIRS Build Record, Failure to Maintain

7   Configuration, Failure to Maintain Two-Way Space Trace Requirements of High

8   Reliability and Hardware Components, Falsification of Build Record Signoffs,

9   Falsification of VIIRS Build Record Entries Entered "After the Fact" in Planning

10  Build Book Scrubbing Parties Wherein Entries Were Made Long After the Work was

11  Completed, but Just Prior to Presenting the VIIRS Build Books for Unit Delivery

12  Sell-Off. [Paragraph 68, Page 121]

13      (48)  RAYTHEON Reckless Disregard of VIIRS QUAL Test Observance and

14  Verification on Zapped Test of VIIRS Systems Level Unit for Flight 1. [Paragraph

15  69, Page 124]

16      (49)  RAYTHEON Reckless Disregard of Ethics Courses on Product Quality

17  and Substitution. [Paragraph 70, Page 125]

18                   22.

19      FALSE  RAYTHEON  RECKLESS  DISREGARD  BY  ENGINEERING

20  DESIGN FAILURE TO COMPLY WITH NPOESS/VIIRS CONTAMINATION

21  CONTROL SPECIFICATIONS.

22  Specification; VIIRS PS154640-132, Paragraph 4.4 (Design considerations),

23  Paragraph 4.4.1 (Design constraints), Paragraph 4.4.4 (Corrosion prevention),

24  Paragraph 4.6 (Materials and processes selection), Paragraph 4.6.1 (Metallic

25  materials selection), and Paragraph 4.6.3 (Forbidden materials).

26  False Defective Nonconformance:  In deliberate ignorance and reckless disregard,

27  RAYTHEON Engineering designed-in use of Prohibited Materials (pure Tin), use

28  of Prohibited Metallic materials known to cause corrosion (Galvanic Effects) when

1   used together, use of Debris shedding locking fasteners (locking Heli-Coils), use of

2   Prohibited Materials and processes selected (Electro-deposited Nickel plating), and

3   Failure to identify "Class 2 Rigid ESD Controls" protection for electronic

4   components easily damaged by ESD conditions exceeding their "Maximum

5   Withstand Voltage Ratings" for use in Flight Units, which compromises the

6   NPOESS/VIIRS Unit/System integrity and mission assurance, resulting in NPOESS

7   mission downgrade or failure, thereby constituting Product Substitution and false

8   claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

9                                           23.

10   FALSE RAYTHEON RECKLESS DISREGARD BY USE OF PROHIBITED

11   MATERIALS IN PRODUCTION OF THE VIIRS FPIE UNIT CHASSIS AND

12   BOTTOM COVER AND FAILURE TO DOCUMENT.

13   Specification:   RAYTHEON CAGE Code 11323 Specification PS154640-132,

14   Paragraph 4.6.3, sub-section "I" of the Contamination Control Requirements

15   Specification for the VIIRS (Visible/Infrared Imager Radiometer Suite) specifies:

16   The use of the following materials on the VIIRS sensors is forbidden:

17       I.   Plated, threaded fasteners, including connectors, where rotational

18            engagement may generate metal debris.

19   False Defective Nonconformance:  Units for the VIIRS FPIE Flight 1, 2, 3, and 4

20   have been designed using Prohibited Materials including without limitation:

21   421312 FPIE Chassis - 421312 Drawing F/Ns 2 & 3 (69 places total)

22   421314 FPIE Top Cover - 421314 Drawing F/N 2 (6 places total)

23       In RAYTHEON deliberate ignorance and reckless disregard, prohibited

24   material and processes are still listed in the VIIRS Engineering Drawing Notes and

25   Parts Lists.

26       Locking Heli-Coils are designed to interrupt the Major Diameter of the Screw

27   thread during installation. As the fastener rotational installation is made, the Major

28   Diameter of the Screw thread displaces the Heli-Coil interrupted thread flats (3

-28-

places each) causing the interrupted thread to expand the seize the Screw. This additional friction causes metal galling to occur providing the locking action. Each time the fasteners are installed or removed, metallic dust and debris are generated within the fastener holes. Inserts and attach screws are fabricated of similar hardness corrosion resistant (CRES) materials exacerbating the problem. The 421310-100 FPIE Flight 1 Unit has a total of (75) Undocumented Debris Generating Design Deficiency locations. As Screws are installed and/or removed, metallic debris is generated contaminating CCAs (Circuit Card Assemblies) Conformal Coatings, and surrounding hardware. Final connection of J1 & J2 Connectors made on the Spacecraft Next Assembly will contaminate surrounding systems upon final attach in the clean room. In a zero-gravity environment, metallic particles are free to migrate, bridge, and short-out electronic components, and/or redeposit on the optics surfaces severely limiting and/or degrading performance. RAYTHEON knowingly failed to disclose a total of (75) known but undocumented Debris Generating locations so that the VIIRS Units are unfit for integration into the next assembly as integration compromises the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in mission downgrade or failure, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

24.

FALSE RAYTHEON RECKLESS DISREGARD BY USE OF PROHIBITED MATERIALS IN PRODUCTION OF THE VIIRS FPIE UNIT.

Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132, Paragraph 4.6.3, sub-section "D & E" of the Contamination Control Requirements Specification for the Visible/Infrared Imager Radiometer Suite VIIRS) specifies: The use of the following materials on the VIIRS sensors is forbidden:

D. Tin plating unless subsequently fused or reflowed.

E. Pure, unalloyed Tin (greater than 99.1% Sn).

-29-

1  False Defective Nonconformance: The J7 Power Connector is wired with forbidden
2  ("D & E") materials of pure Tin plated wire (421327 Drawing F/N 53), and Resistors
3  M55342H06B6E65S End Bells (421331 Drawing F/N 55) were found to be pure Tin
4  dipped (NCMR ELS69006). RAYTHEON has falsely stated (RDW_VIIRS-W014)
5  that the pure Tin plated wire would be acceptable for flight use despite the failure
6  to pot the J7 Power Connector per 421327 Drawing Note 33. The J7 Power
7  Connector is the VIIRS FPIE Primary Power Connector. There is no other Redundant
8  Power Connector. If the J7 Power Connector shorts, the DNB shuts down to cause
9  an NPOESS/VIIRS catastrophic failure compromising the NPOESS/VIIRS
10  Unit/System integrity resulting in mission downgrade or failure.

11      In RAYTHEON deliberate ignorance reckless disregard, several other VIIRS
12  Units/Systems extensively identified in the following RAYTHEON VIIRS RDWs
13  either use prohibited materials and/or, were never tested for prohibited materials and
14  have been systematically accepted for Flight use on False Unauthorized
15  RAYTHEON Waivers including but not limited to: RDW_VIIRS-W010,
16  RDW_VIIRS-W012A, RDW_VIIRS-W014, RDW_VIIRS-W015, RDW_VIIRS-
17  W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023,
18  RDW_VIIRS-W026, RDW_VIIRS-W027, and RDW_VIIRS-W028, thereby
19  constituting Product Substitution and false claim violations of the False Claims Act,
20  31 U.S.C. § 3729(a)(1) and (2), and § (a)(1)(A)and (B).

21                                  25.

22      FALSE RAYTHEON RECKLESS DISREGARD BY USE OF PROHIBITED
23  PROCESSES IN PRODUCTION OF THE VIIRS FPIE UNIT MATERIALS.
24  Specification: RAYTHEON CAGE Code 11323 Specification PS154640-132,
25  Paragraph 4.6.3, sub-section "W" of the Contamination Control Requirements
26  Specification for the Visible/Infrared Imager Radiometer Suite VIIRS) specifies: The
27  use of the following Process materials on the VIIRS sensors is forbidden:

28

-30-

1   W.  Electrolytic nickel plating unless an Electroless process is employed, or

2   electrolytic nickel is used on a non-optical surface as an underplate, diffusion

3   barrier or coating.

4   Specification: NPOESS General Instrument Interface Document (NGIID D31418,

5   Revision A), Interface Control Document IF231780 Nickel Plating Requirements:

6   Nickel Plaiting shall not be used (unless an electroless process is employed) in any

7   instrument design.

8   False Defective Nonconformance:   The VIIRS FPIE hardware is plated with

9   forbidden ("W") materials consisting of Electro-deposited Nickel as follows:

10   Chassis, FPIE, (421312 Drawing, Note 3)
      Top Cover, FPIE, (421314 Drawing, Note 3)
11   Bottom Cover, FPIE, (421317 Drawing, Note 3)
      PWB, A/D Board, (421328 Drawing, Note 12)
12   PWB, Clock Board (421332 Drawing, Note 12)
      Spacers, J8 (421327 Drawing, Note 34)

13   As previously alleged, the J7 Power Connector is the VIIRS FPIE Primary

14   Power Connector. There is no other Redundant Power Connector. If the J7 Power

15   Connector shorts, the DNB shuts down to cause a NPOESS/VIIRS catastrophic

16   failure. The J7 Power Connector was never potted and sealed to mitigate venting

17   through the mating connector to the atmosphere thus creating an open uncontrolled

18   leak to the environment (NCMR N00015) as opposed to the controlled top cover

19   venting. Outgassing, flaking, debris shedding Electro-deposited Nickel plating (from

20   unpainted FPIE internal surfaces) and metallic debris (generated by locking attach

21   hardware) are free to migrate forward between the "J7" Power Connector pins and

22   the Connector Pin Spacing Header (approximately 5 mil gap at each pin 25 places

23   total).

24   In early March 2005 Relator MATESKI raised questions of the team regarding

25   the use of unsealed connectors on the FPIE Unit with Bernard Malis (Retired),

26   Thomas James (Retired), Mario Farr, Ronald Estes, and Timothy Kilduff present in

27   the daily team meeting. Comments were made by Mario Farr and Thomas James

28

-31-

THIRD AMENDED COMPLAINT

1    (Retired) that all Connectors used were of the prepotted (sealed) design and that the
2    concern was unfounded. Later it was discovered by Relator MATESKI that the J7
3    Power Connector was of an unsealed design jeopardizing the FPIE Unit and the
4    entire VIIRS system. Raising the issue again in several daily team meeting
5    discussions, Relator MATESKI was able to convince the team that this J7 Connector
6    should be potted and a drawing change was made. Bernard Malis (Retired), Thomas
7    James (Retired), and Ronald Estes independently made the decision to omit the
8    potting of the J7 Power Connector on the FPIE Flight 1 Unit due to schedule
9    constraints. Relator MATESKI protested but was overruled and the J7 Connector
10   remains unpotted to this day (NCMR N00015). This Major Defect was never
11   presented to the customer in the form of a RAYTHEON VIIRS Waiver nor raised as
12   a concern in RAYTHEON RDW_VIIRS-W012A.

13        RAYTHEON has falsely stated (RDW_VIIRS-W012A) that the Electro-
14   deposited Nickel plating would be acceptable for VIIRS flight use because the VIIRS
15   FPIE Flight 1 Unit was painted with an Epoxy-based paint effectively sealing most
16   of the debris-shedding plated surfaces. RAYTHEON falsely stated that the remaining
17   unpainted surfaces posed a minimal threat as the VIIRS FPIE Flight 1 Unit was not
18   in the direct line of the optics. In RAYTHEON deliberate ignorance and reckless
19   disregard, prohibited materials and processes are still listed in the VIIRS Engineering
20   Drawing Notes and Parts Lists in RAYTHEON knowing noncompliance with VIIRS
21   contract specifications.

22        The use of Electro-deposited Nickel plating causes Hydrogen Embrittlement to
23   occur during the plating process trapping Hydrogen gas at the plated surfaces. The
24   Covers-to-Chassis design did not allow for a Chromerics EMI/EMC gasket seal
25   installation preventing RAYTHEON from painting the unit at the very end of build
26   after testing. This required an early out-of-sequence application of paint topcoat
27   (prior to build-up) causing the paint finish to endure several cleaning and bake-out
28   steps along the assembly build process. The final result was that the paint broke-

1  down and degraded no longer meeting the workmanship requirements of the HP 4-
2  143 Paint Specification (numerous pin holes, scrapes, wear-thin spots, and other
3  defects NCMR 70705).

4      RAYTHEON Design Engineering misapplication of Electro-deposited Nickel
5  plating caused Hydrogen outgassing through paint surfaces creating numerous
6  pinholes contributing to paint topcoat failure. Pin holes in the painted surfaces allow
7  numerous paths for Electro-deposited metallic particles and degrading paint particles
8  shedding from plated surfaces to migrate and contaminate surrounding systems and
9  equipment.

10      Reckless disregard design use of prohibited Electro-plating processes, early out-
11  of-sequence application of paint topcoat, and subsequent cleaning and bake-out
12  processes have caused the Epoxy-based paint to fail while the VIIRS FPIE is still on
13  the ground.  The perfect vacuum of a space environment can only serve to worsen
14  that condition.

15      Only the VIIRS FPIE Flight 1 Unit outer Chassis surfaces are partially painted
16  and none of the Chassis inner surfaces, or Top and Bottom Cover inner surfaces are
17  painted. This represents a tremendous risk as particles migrate through the J7 Power
18  Connector spacing header to create a short, and/or migrate through unsealed Chassis
19  to Covers edges and/or the Top Cover Vent Screen to redeposit on the optics surfaces
20  severely limiting and degrading the VIIRS Unit and/or System performance, or in a
21  worst-case scenario, produce a latent defect causing catastrophic failure
22  compromising the NPOESS/VIIRS Unit/System integrity and mission assurance
23  resulting in NPOESS mission downgrade or failure.  Several other Units/Systems
24  Extensively named in the following RAYTHEON RDWs use prohibited processes
25  (Electro-deposited Nickel plating) and/or, were never tested for prohibited processes
26  and/or materials and have been systematically accepted for VIIRS Flight use as
27  documented in False Unauthorized RAYTHEON Waivers, including without
28  limitation,   RDW_VIIRS-W010,   RDW_VIIRS-W012A,   RDW_VIIRS-W014,

-33-

THIRD AMENDED COMPLAINT

RDW_VIIRS-W015, RDW_VIIRS-W020A, RDW_VIIRS-W021, RDW_VIIRS-W022A, RDW_VIIRS-W023, RDW_VIIRS-W026, RDW_VIIRS-W027, and RDW_VIIRS-W028, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)and (2), and § (a)(1)(A) and (B).

26.

FALSE RAYTHEON RECKLESS DISREGARD TO DESIGN AND PRODUCE THE VIIRS SPECIFIED FPIE PRIMARY AND REDUNDANT J7A AND J7B POWER FEED CONNECTORS.

Specification: NPOESS General Instrument Interface Document (NGIID D31418, Revision A), Interface Control Document IF230890 Primary and Redundant Power Requirements: Each Power Interface shall consist of Redundant Two (Isolated) Power Feeds Routed via Two Separate Connectors. These Connections are designated as Power Feeds A and B.

False Defective Nonconformance. In deliberate ignorance and reckless disregard, RAYTHEON knowingly failed to design and produce the VIIRS FPIE primary and redundant J7A and J7B power feed connectors, which compromises the NPOESS/VIIRS UNIT/SYSTEM integrity and mission assurance resulting in mission downgrade or failure, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

27.

FALSE VIIRS ESD EXPOSURES, MULTIPLE ESD EXPOSURES, RISKING LATENT DEFECTS. FALSE RAYTHEON RECKLESS DISREGARD OF VIIRS ESD PROTECTION OF FLIGHT QUALITY HARDWARE DURING ASSEMBLY. Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001/2, Paragraph 3.2.9 ESDS item protection provides; ESDS items shall be individually or collectively protected using ESD protective coverings or packaging enclosures when not being worked on, during movement or when handled outside of ESD

-34-

1  protected areas.

2      Paragraph 3.2.9.1 Work in process protective covering enclosures provides; On
3  site work-in-process (WIP) protection of ESD items designated for Normal Controls
4  (RP 10-001/1) shall include enclosures in protective covering containers and/or static
5  shielding packaging (Ref: Paragraph 3.2.9.2.).

6      Paragraph 3.2.9.2 Protective packaging, provides; Transportation of ESDS
7  items (shipped by suppliers or moved between sites) and ESDS items designated for
8  Rigid Controls (RP 10-001/2) shall be enclosed in static shielding type packaging
9  materials for Preparation for Delivery, (Ref: Paragraph 5.0). Static shielding
10 packaging materials shall conform to one or more of the following:

11     a. Shielding bags, pouches and bulk films shall meet the requirements of MIL-
12     PRF-81705, Type I or Type III barrier materials.

13     b. Shielding bags and pouches shall be capable of a minimum 90 percent
14     charge attenuation when evaluated per the ANSI/EIA-541 two probe
15     capacitance test method.

16 Specification:  RAYTHEON CAGE Code 4U884 RP 10-001/2, Paragraph 3.2.4.2.
17 Rigid controls category, specifies:

18     Materials and equipment capable of generating more than the ESD sensitivity
19     or withstand voltage limits of the most sensitive ESDS items being handled,
20     shall not be permitted within the ESD protected area. Verification checks shall
21     be performed no less than every 12 months or upon designating a SSWS with
22     Rigid Control voltage limits. ESD threshold signs shall be placed on the
23     individual workstations and/or work areas identifying ESD sensitivity or
24     withstand voltage limits based on the sensitivity of the ESDS items being
25     handled. For example, a Rigid Controls ESD threshold sign is shown in RP 10-
26     001, (Fig 3.)

27 False Defective Nonconformance:  The VIIRS FPIE Flight 1 (S/N 002) Unit was
28 routinely disassembled and worked on (after attempted delivery at the first CTI sell-

-35-

THIRD AMENDED COMPLAINT

off meeting on July 30, 2004) in a Non-Flight STE Laboratory / Machine Shop environment located at E01/Rm C1250/Laboratory 22 and moved between Labs for bonding, cleaning, bake-out, and testing operations. As of February 2005, the Circuit Card level rework and Unit level assembly operations were carried out in a Non-Flight STE Laboratory / Machine Shop environment under conditions not following basic ESD grounding requirements: CCAs (Circuit Card Assemblies) awaiting work were not double ESD bagged, tote boxes had larger lids simply resting on the boxes without the ability to positively lock, and some of the kit box tote lids were not present. As kits awaiting work were pulled for work, lids were swapped with remaining kits stored on the incoming work rack. There were not enough lids for all of the tote boxes present. Work stations/areas were not identified with ESD sensitivity or withstanding voltage limits based on the sensitivity of the ESDS items being handled. This is in violation of RAYTHEON Specification RP 10-001, Paragraph 3.2.9 ESDS item protection, Paragraph 3.2.9.1 Work in process protective covering enclosures, Paragraph 3.2.9.2 Protective Packaging, and Paragraph 6.2.2 Rigid Controls.

VIIRS FPIE Unit Part Numbers 421310-100 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 (consisting of Circuit Card Assembly 421327 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 and 421331 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 respectively) have been exposed to Latent ESD Defect Failure conditions (multiple occurrences), which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, resulting in NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

28.

FALSE RAYTHEON RECKLESS DISREGARD BY FAILURE TO INSTALL SHORTING PLUGS OR ESD DUST CAPS ON CONNECTORS WHILE NOT IN USE TO PROTECT VIIRS HARDWARE DURING ASSEMBLY AND

-36-

1    HANDLING PER VIIRS FE94 PROGRAM QUALITY REQUIREMENTS.

2    Specification:  Program QR (Quality Requirements) FE94, Line 9.4.A (9 & 10)

3    specifies;

4        (9)  Dust caps shall be used at all times when connectors are not in use.

5        (10)  Shorting plugs or Conductive Dust Caps shall be used if directed by

6        Engineering or Manufacturing.

7    False Defective Nonconformance:    The FPIE Flight 1 Unit was routinely

8    disassembled and worked on (after attempted delivery at the first CTI sell-off

9    meeting on July 30, 2004) in a Non-Flight STE Laboratory / Machine Shop

10   environment located at E01/Rm C1250/Laboratory 22 and moved between Labs for

11   bonding, cleaning, bake-out, and testing operations. During the course of assembly

12   and Workmanship Thermal Cycle Testing, the CCAs (Circuit Card Assemblies)

13   should have Shorting Plugs or ESD Dust Caps applied to all connectors to prevent

14   stray ESD (Electro Static Discharge) voltages from entering through open connectors

15   "zapping" the hardware during build-up and testing as directed by Engineering

16   (421327 CCA Drawing Notes 3, 30 and 421331 CCA Drawing Notes 3, 34 and

17   421310-100 FPIE Assembly Drawing Notes 6, 7, 22). Shorting Plugs and ESD Dust

18   Caps were not in use throughout the entire initial build-up and testing of the VIIRS

19   hardware from the beginning of the program through the end of the first Acceptance

20   Test. Shorting Plugs were then installed on the completed FPIE Unit and the first

21   attempt to sell-off the Unit was made at the Goleta, California CTI sell-off meeting

22   on July 30, 2004.

23       After the hardware was rejected at the first sell-off CTI (Consent to Integrate)

24   meeting, numerous findings required subsequent rework in RAYTHEON El

25   Segundo, California. Shorting Plugs were removed and the hardware underwent

26   additional disassembly, rework and handling in this unprotected condition until just

27   prior to post-rebuild Acceptance Testing in mid-September 2005. The RAYTHEON

28   El Segundo facility stocks ESD Dust Caps for Sub-D connectors in the Cable

-37-

Laboratory (such as the FPIE J7 Power Connector) but does not stock ESD Dust Caps for Micro-D Connectors (as are used in the FPIE J1, J2, J3, J4, J5, J6, J8, and P8 Connectors. New ESD Protective Dust Caps were added to the Drawing on 9/09/05 (Ref: 225741 Drawing, Rev. A Parts List as shown below, and Note 22 was added to 421310-100 Drawing). Micro-D ESD Dust Caps were subsequently purchased for use on the hardware approximately mid-September 2005 (Ref: 225741 Drawing, Rev. A Parts List):

| Item | Qty | Cage Code | P/N | Description |
|------|-----|-----------|-----|-------------|
| F/N 19 | 1 | 99017 | DCC-13 | ESD Dust Cap |
| F/N 20 | 2 | 10400 | MD051RS | ESD Dust Cap |
| F/N 21 | 1 | 10400 | MD051RP | ESD Dust Cap |
| F/N 22 | 1 | 10400 | MD100RP | ESD Dust Cap |
| F/N 23 | 2 | 10400 | MD100RS | ESD Dust Cap |
| F/N 24 | 1 | 10400 | MD037RP | ESD Dust Cap |
| F/N 25 | 1 | 10400 | MD037RS | ESD Dust Cap |

The FPIE Unit Part Number 421310-100 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 (consisting of circuit card assembly 421327 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 and 421331 S/N 001, S/N 002, S/N 003, S/N 004, and S/N 005 respectively) have been exposed (multiple occurrences) to Latent ESD Defect Failure conditions, which  compromise the NPOESS/VIIRS Unit/System integrity and mission assurance resulting in NPOESS mission downgrade or failure. There is no test to determine if a VIIRS latent defect will manifest itself later throughout NPOESS/VIIRS launch, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

29.

FALSE RAYTHEON RECKLESS DISREGARD BY FAILURE TO MAINTAIN ESD PROTECTION OF VIIRS FLIGHT QUALITY HARDWARE DURING WORKMANSHIP THERMAL CYCLE TESTING.

Specification: RAYTHEON CAGE Code Specification RP 10-001, § 3.0.1 End product requirements - Workmanship, specifies:

-38-

Electrostatic Discharge Sensitive (ESDS) items covered by this specification shall be designed and handled to provide protection against Exposure(s) to damaging electrostatic fields, static discharges, and electrical transients. Protection shall be maintained continuously for all ESDS items from initial component receipt through assembly, test, system integration, and final shipment.

False Defective Nonconformance: During STE Rack (Dewar) Qualification the Non-Flight FPA EDU2 Unit had failed due to broken connector pins. The Non-Flight FPIE Emulator (Unit S/N 001) had been disassembled (for circuit damage analysis) and CCAs were installed into a test fixture Part Number 225741 (nick-named "The Butterfly Fixture"). The Butterfly Fixture was designed to be black anodized as shown per STE Drawing 225741, Sheets 2 and 3.

Subsequent to the first CTI sell-off meeting on July 30, 2004, Relator MATESKI was notified by the Test Technician, Timothy Kilduff, that the Butterfly Test Fixtures anodic coating was preventing the achievement of ground and the test had been halted. After additional investigation, it was discovered that the anodic coating extended to all frame and fixture surfaces as well as threaded screw attach holes. It was discovered that RAYTHEON had a spare "Butterfly Test Fixture" that had not been completed (anodized) per STE Drawing 225741, Sheets 2 and 3 and was still in the "bare" aluminum condition. This "bare" fixture was substituted in and the test was resumed.

The FPIE CCA (Circuit Card Assembly) 421327 and CCA 421331 are required to be Workmanship Thermal Cycle Tested per their respective drawings (Note 10) at the CCA level. These CCAs are first mounted into "The Butterfly Fixture".

The anodized Butterfly Fixture was used on the FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship Thermal Cycling (prior to the first CTI sell-off meeting date 7/30/04), which without the ability to obtain "a continuous ground", violated RAYTHEON procedures by Failure to Maintain Hard ESD Protection

-39-

1  throughout the manufacturing cycle per RAYTHEON Specification RP 10-001,
2  Paragraph 3.0.1 End product requirements-Workmanship.

3  The FPIE Unit CCA 421327 S/Ns 001, 002, & 003 and CCA 421331 S/Ns 001,
4  002 & 003 (used in the FPIE Unit 421310-100 S/N 001, 002 & 003 respectively)
5  have been exposed to Latent ESD Defect Failure conditions (multiple occurrences)
6  including Workmanship Thermal Cycle Testing which compromises the
7  NPOESS/VIIRS Unit/System integrity and mission assurance resulting in NPOESS
8  mission downgrade or failure of Flights 1, 2, and 3, thereby constituting Product
9  Substitution and false claim violations of the False Claims Act, 31 U.S.C. §
10  3729(a)(1), and § (a)(1)(A).

11  30.

12  FALSE RAYTHEON RECKLESS DISREGARD BY FAILURE TO OBTAIN
13  PRIOR VIIRS ESD DESIGN APPROVAL FOR MATERIALS AND EQUIPMENT
14  USED IN COMPLIANCE WITH ESD PROTECTION REQUIREMENTS FOR
15  VIIRS FLIGHT HARDWARE (THERMAL CYCLE TESTING EQUIPMENT -
16  BUTTERFLY FIXTURE).

17  Specification:   RAYTHEON CAGE Code 4U884 Specification RP 10-001,
18  Paragraph 3.2.10 Approved ESD protective materials and equipment, specifies:

19  ESD control protective materials and equipment used to meet the requirements
20  of this standard shall be approved by the ESD Site Coordinator/Team. An approved
21  materials and equipment list may be included in site specific documentation, or
22  attached as an exhibit to this document.

23  False Defective Nonconformance:   In RAYTHEON deliberate ignorance and
24  reckless disregard, the unapproved design of the anodized Butterfly Fixture was used
25  on the VIIRS FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship
26  Thermal Cycling (prior to the first CTI sell-off meeting date 7/30/04), which without
27  the ability to obtain "a continuous ground", violated RAYTHEON procedures by
28  failure to obtain an ESD design approval per RAYTHEON Specification RP 10-001,

-40-

1  Paragraph 3.2.10 Approved ESD protective materials and equipment, thereby
2  constituting Product Substitution and false claim violations of the False Claims Act,
3  31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

4                                        31.

5     FALSE RAYTHEON RECKLESS DISREGARD OF ESD PROTECTIONS OF
6  VIIRS FLIGHT QUALITY HARDWARE DURING ACCEPTANCE TESTING.
7  Specification:    RAYTHEON CAGE Code 4U884 Specification RP 10-001,
8  Paragraph 3.0.1 End product requirements-Workmanship, specifies:

9        Electrostatic discharge sensitive (ESDS) items covered by this specification
10 shall be designed and handled to provide protection against Exposure(s) to damaging
11 electrostatic fields, static discharges, and electrical transients. Protection shall be
12 maintained continuously for all ESDS items from initial component receipt through
13 assembly, test, system integration, and final shipment.

14 False Defective Nonconformance:  The 421310-100 FPIE Unit is required to be
15 Acceptance Tested per drawing (Note 17). The FPIE Unit is first connected using
16 STE (Special Test Equipment) Cables (Ref: 225742-100 Interface Cable Drawing).
17 The STE Cables were constructed of ESD unapproved materials "Hot Plastics"
18 (Nylon Sleeving and plastic ID Marker tags) capable of building and storing
19 excessive electrical charges. These cables were completely rebuilt using ESD
20 approved materials (Ref: "Before and After" STE Cable redesign Drawings and
21 rework VIIRS planning books), including without limitation:

22                            STE Cables "Hot Plastics"

23 | 228343 W1  | Rev - vs; Rev A |
   | 228344 W1A | Rev - vs; Rev C |
24 | 228345 W2  | Rev -           |
   | 228346 W2A | Rev - vs; Rev A |
25 | 228349 W4  | Rev - vs; Rev A |
   | 228351 W6  | Rev - vs; Rev A |
26 | 228352 W7  | Rev - vs; Rev A |
   | 228355 W11 | Rev - vs; Rev B |
27 | 228359 W15 | Rev - vs; Rev C |
   | 228360 W16 | Rev - vs; Rev C |
28 | 228361 W17 | Rev - vs; Rev C |

                                        -41-

| 228362 W18 | Rev - vs; Rev B |
| 228364 W101 | Rev - vs; Rev A |
| 228365 W102 | Rev - |
| 228367 W104 | Rev - vs; Rev B |
| 228369 W106 | Rev - vs; Rev A |
| 228370 W107 | Rev - vs; Rev A |
| 228371 W108 | Rev - vs; Rev A |
| 228372 W109 | Rev - vs; Rev A |
| 229709 W110 | Rev - vs; Rev A |
| 229926 W19 | Rev - |

The 421310-100 S/N 001 & 002 FPIE Unit and FPIE Unit CCAs 421327 S/Ns 001, 002, & 003, and CCA 421331 S/Ns 001, 002, & 003 Lower Level Thermal Cycle test, had been tested prior to the first CTI using the STE Cables in the ESD unapproved condition. It is necessary to "break test configuration" and make a new test set-up several times when the Acceptance Test is run. The STE Cables are first connected in the "Primary" configuration, and then broken down and reconfigured into the "Redundant" configuration, to test both Primary and Redundant (back-up) systems, each time exposing the "opened" Unit connectors to stray accumulated static charges built-up on the STE Cables "Hot Plastics". Exposure occurs when the STE Cable connections are disconnected (opened) and reconnected (closed). Prior to the STE Cable rebuild effort, many ESD Exposures to the VIIRS FPIE Flight 1 Unit have occurred (Ref: Mate/Demate logs), which violated RAYTHEON procedures by failing to maintain continuous ESD protection throughout the manufacturing cycle per RAYTHEON Specification RP 10-001, Paragraph 3.0.1 End product requirements-Workmanship. The FPIE Unit CCA 421327 S/Ns 001, 002 & 003 and CCA 421331 S/Ns 001, 002, & 003 (used in the FPIE Unit 421310-100 S/N 001, 002 & 003 respectively) have been exposed to Latent ESD defective failure conditions (multiple occurrences) which compromises the NPOESS/VIIRS Unit/System integrity and mission assurance, and causes the NPOESS mission downgrade or failure, thereby constituting Product Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

-42-

THIRD AMENDED COMPLAINT

32.

FALSE RAYTHEON RECKLESS DISREGARD BY FAILURE TO OBTAIN PRIOR VIIRS ESD DESIGN APPROVAL FOR MATERIAL AND EQUIPMENT USED IN MEETING ESD PROTECTION REQUIREMENTS FOR VIIRS FLIGHT HARDWARE (ACCEPTANCE TESTING EQUIPMENT - STE CABLES).

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment, specifies:

ESD control protective materials and equipment used to meet the requirements of this standard shall be approved by the ESD Site Coordinator/Team. An approved materials and equipment list may be included in site specific documentation, or attached as an exhibit to this document.

False Defective Nonconformance: In RAYTHEON deliberate ignorance and reckless disregard, the unapproved Design STE Cables were used on the FPIE Flight Unit S/N 001, 002, and 003 CCAs for Workmanship Thermal Cycling (prior to the first CTI sell-off meeting date July 30, 2004), which without the ability to obtain "a continuous ground", violated RAYTHEON procedures by failure to obtain prior ESD design approval per RAYTHEON Specification RP 10-001, Paragraph 3.2.10 Approved ESD protective materials and equipment.

The STE Cables were constructed of ESD unapproved materials "Hot Plastics" (Nylon Sleeving and plastic ID Marker tags) capable of building and storing excessive electrical charges. These cables were completely rebuilt using ESD approved materials (Ref: "Before and After" STE Cable redesign Drawings and rework VIIRS planning books), including without limitation:

STE Cables "Hot Plastics"

| 228343 W1 | Rev - vs; Rev A |
|-----------|-----------------|
| 228344 W1A | Rev - vs; Rev C |
| 228345 W2 | Rev - |
| 228346 W2A | Rev - vs; Rev A |
| 228349 W4 | Rev - vs; Rev A |
| 228351 W6 | Rev - vs; Rev A |
| 228352 W7 | Rev - vs; Rev A |

-43-

THIRD AMENDED COMPLAINT

| | |
|---|---|
| 228355 W11 | Rev - vs; Rev B |
| 228359 W15 | Rev - vs; Rev C |
| 228360 W16 | Rev - vs; Rev C |
| 228361 W17 | Rev - vs; Rev C |
| 228362 W18 | Rev - vs; Rev B |
| 228364 W101 | Rev - vs; Rev A |
| 228365 W102 | Rev - |
| 228367 W104 | Rev - vs; Rev B |
| 228369 W106 | Rev - vs; Rev A |
| 228370 W107 | Rev - vs; Rev A |
| 228371 W108 | Rev - vs; Rev A |
| 228372 W109 | Rev - vs; Rev A |
| 229709 W110 | Rev - vs; Rev A |
| 229926 W19 | Rev - |

The RAYTHEON defective nonconformance VIIRS Flight hardware ESD exposures constitute Production Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

33.

FALSE RAYTHEON RECKLESS DISREGARD TO MAINTAIN ESD PROTECTION OF VIIRS FLIGHT QUALITY HARDWARE DURING COLD ACCEPTANCE TESTING.

Specification: RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.0.1 End product requirements-Workmanship, specifies:

Electrostatic discharge sensitive (ESDS) items covered by this specification shall be designed and handled to provide protection against Exposure(s) to damaging electrostatic fields, static discharges, and electrical transients. Protection shall be maintained continuously for all ESDS items from initial component receipt through assembly, test, system integration, and final shipment.

False Defective Nonconformance: The 421310-100 FPIE Flight 1 Unit is required to be Acceptance Tested at various "cold" temperatures as a part of the Acceptance Test per drawing (Note 17). The FPIE Unit is mounted in a "Dewar" (cold-box, Drawing 229030) configuration with the FPIE Unit mounted on thermally isolated pedestals (which also meant electrically isolated). When Relator MATESKI discovered the grounding scheme did not include grounding of the FPIE and related

-44-

1  FPA equipment, Relator MATESKI directed Design Engineering to add two ground
2  straps to the FPIE configuration at opposite corners and one ground strap to the FPA
3  configuration inside the "Dewar" (cold-box, Drawing 229030, Ref: EO Y5216) to
4  prevent charge buildup on Unit surfaces. This prior design violated RAYTHEON
5  procedures by Failing to Maintain Hardware ESD Protection throughout the
6  manufacturing cycle per RAYTHEON Specification RP 10-001, Paragraph 3.0.1 End
7  product requirements-Workmanship. Prior testing without these ground straps using
8  the STE Cables built with ESD unapproved "Hot Plastic" materials exposed the FPIE
9  Unit 421310-100 S/N 001 and 002 to Latent ESD Defect Failure conditions (multiple
10  occurrences) which compromises the NPOESS/VIIRS Unit/System integrity and
11  mission assurance, and causes the NPOESS mission downgrade or failure, thereby
12  constituting Product Substitution and false claim violations of the False Claims Act,
13  31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

14  34.

15  FALSE VIIRS COLD ACCEPTANCE TESTING ESD EXPOSURES. FALSE
16  RAYTHEON RECKLESS DISREGARD TO OBTAIN PRIOR VIIRS ESD DESIGN
17  APPROVAL FOR MATERIALS AND EQUIPMENT USED IN MEETING ESD
18  PROTECTION REQUIREMENTS FOR VIIRS FLIGHT HARDWARE.

19  Specification:   RAYTHEON CAGE Code 4U884 Specification RP 10-001,
20  Paragraph 3.2.10 Approved ESD Protective Materials and Equipment, specifies:

21     ESD control protective materials and equipment used to meet the requirements
22     of this standard shall be approved by the ESD Site Coordinator/Team. An
23     approved materials and equipment list may be included in site specific
24     documentation, or attached as an exhibit to this document.

25  False Defective Nonconformance:  The Unapproved ESD Design of the "Dewar"
26  (cold-box, Drawing 229030) configuration with the FPIE Unit mounted on thermally
27  and electrically isolated pedestals without an approved grounding scheme was a
28  failure to obtain a prior ESD design approval per RAYTHEON Specification RP 10-

-45-

THIRD AMENDED COMPLAINT

001, Paragraph 3.2.10 Approved ESD protective materials and equipment, thereby constituting Production Substitution and false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

35.

FALSE RAYTHEON RECKLESS DISREGARD TO IDENTIFY AND IMPLEMENT VIIRS ESD RIGID CONTROLS REQUIREMENTS ON THE DRAWINGS.

Specification:   RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 3.1.2.3, specifies:

Class 1 ESDS parts, assemblies and equipment, including ESDS items in assembly parts lists, requiring Rigid Controls shall be identified as follows:

a. If a specification or drawing indicates an ESDS part, assembly or equipment requiring Rigid Controls, it shall be identified by an assembly note stating the representative ESD sensitivity or withstand voltage limit (6.2.2.).

b. If ESDS item(s) requiring Rigid controls are included in the assembly drawing parts list, these items shall be identified in the Nomenclature or Description column, or the Notes column as ESDS (XX) with a representative ESD sensitivity or withstand voltage limit shown parenthetically in volts. The items shall be cross referenced to an assembly note.

Specification:   RAYTHEON CAGE Code 4U884 Specification RP 10-001, Paragraph 6.2.2 Rigid Controls, specifies:

a. If a specific ESDS part, assembly or equipment requires Rigid Controls, the drawing note shall read:

HANDLE AND PROTECT ELECTROSTATIC DISCHARGE SENSITIVE (ESDS) ITEM REQUIRING RIGID CONTROLLED EXPOSURE(S) TO LESS THAN (XX) VOLTS, TO THE REQUIREMENTS OF RP 10-001/2.

b. If used as a reference to the parts list Nomenclature or Description Column or Notes column as requiring Rigid Controls, the drawing note shall read:

-46-

HANDLE AND PROTECT ELECTROSTATIC DISCHARGE SENSITIVE
(ESDS) ITEM(S) TO THE REQUIREMENTS OF RP 10-001/2 REQUIRING
RIGID CONTROLLED EXPOSURE(S) TO LESS THAN THE VOLTAGE
IDENTIFIED: "ESDS (XX)".

False Defective Nonconformance:   The FPIE Unit Part Number 421310-100
(consisting of one circuit card assembly 421327 and one circuit card assembly
421331) contains devices that require "Rigid" ESD Controls (Class 2, able to
withstand less than 100 volts [approx 20 volts actual]). Drawing 421310-100 Notes
6 and 7, Drawing 421327 Note 3, and Drawing 421331 Note 3, all callout RP 10-001
without a Class requirement defaulting to Class 1 per Specification. This default is
considered "Normal" ESD controls (Class 1, able to withstand greater than 100
volts).

Work stations are required to be identified as dedicated for the installation of
Class 2 components when Rigid Controls are necessary to protect components. The
FPIE has numerous components that should be identified as "Rigid" ESD Controls
(Class 2) (Ref: 421310-001, 421331, and 421327 Drawings), which has been
confirmed in a conference on June 5, 2006 with Gundurao Prabhakar, El Segundo
Principal Electrical Components Engineer, Matthew Lee, Active Components
Technician, and the Relator MATESKI.

The FPIE has numerous components that should be identified as "Rigid" ESD
Controls (Class 2): (Ref: 421310-001, 421331, and 421327 Drawings (Ref: Active
Components):

R10002396-0001
R10003046-0001
R10003047-0001
R10003048-0001
5962R583403VXA
5962-8859301VPA
5962-9560401VXA
5962R9655801VXA
5962R9583403VXA
5962R9583303VXA
JANSR2N7389

-47-

JANS1N6642U
JANS1N6677UR-1

Sensitive components used in the FPIE Unit Part Number 421310-100 S/Ns 001, 002, 003, 004, and S/N 005 (consisting of circuit card assembly 421327 S/Ns 001, 002, 003, 004, and S/N 005 and 421331 S/Ns 001, 002, 003, 004, and S/N 005 respectively) should have been identified as "Class 2" (Rigid Controls) and were not. These Circuit Card Assembly components have been exposed to Latent ESD Defect Failure conditions exceeding their "Maximum Withstand Voltage Ratings" which will compromise the NPOESS/VIIRS Unit/System integrity and mission assurance, and cause the NPOESS mission downgrade or failure, thereby constituting Product Substitution false claim violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and § (a)(1)(A).

36.

FALSE RAYTHEON RECKLESS DISREGARD BY CIRCUMVENTION OF VIIRS TEST SPECIFICATIONS, FIRST ARTICLE TESTING, AND TEST PROTOFLIGHT SPECIFICATIONS.

Specification: Statement of Work For the VIIRS Day/Night Band Module Assembly P/N 417350-100 (Flight Unit 1), Paragraph 5.5.3: Special Test Request, specifies:

During acceptance testing if the need arises to perform engineering evaluation tests, or any special test that may be requested from the customer, program management or engineering that is not in the normal flow of the build/test sequence, a Special Test Request (STR) shall be generated in accordance with FE94.PI3_0 (3.0). The STR shall not be used as a substitute for test procedures when testing flight hardware [for VIIRS].

False Defective Nonconformance: In deliberate ignorance and reckless disregard, RAYTHEON knowingly produced First Article units that have not been test-qualified at specified levels to demonstrate flight worthiness. Previous FPIE testing performed prior to the first attempted delivery at the CTI meeting (Date July 30,

-48-

THIRD AMENDED COMPLAINT