**O**
**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. STEVEN MATESKI, | Case No. 2:06-cv-3614-ODW(FMOx) |
| Plaintiff, | **ORDER RE RAYTHEON'S MOTIONS TO DISMISS [96], [98]** |
| v. | |
| RAYTHEON CO., | |
| Defendant. | |

## I.    INTRODUCTION

The False Claims Act allows any citizen with proprietary information of fraud against the United States Government to bring a civil action on behalf of the United States.  31 U.S.C. § 3730.  But there are jurisdictional limitations in place to prevent lawsuits from opportunistic plaintiffs, and a court must dismiss any claim that lies outside of these limitations.  One such limitation is the public-disclosure bar, which eliminates jurisdiction in cases where the Government has declined to intervene and the *qui tam* complaint is based upon publicly disclosed allegations or transactions.  31 U.S.C. § 3730(e)(4)(A).  The Court finds that this case is subject to the public-disclosure bar, and for that reason, the Court **GRANTS** Raytheon's Motion to Dismiss for lack of subject-matter jurisdiction.[1]  (ECF No. 96.)

---

[1] Having carefully considered the papers filed in support of and in opposition to this Motion, the Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7–15.

## II.    BACKGROUND

Defendant Raytheon Co. was subcontracted to develop a weather sensor called the Visible Infrared Imaging Radiometer Suite ("VIIRS") for the United States Government.   (Fourth Am. Compl. ("FAC") ¶ 17.)   This sensor was part of the National Polar-Orbiting Operational Environmental Satellite System ("NPOESS"), a satellite system that collects meteorological, oceanographic, environmental, and climactic data.  (FAC ¶¶ 10, 11.)  An Integrated Program Office ("IPO") consisting of the Department of Defense, NASA, and the National Oceanic and Atmospheric Administration, managed NPOESS as a joint program.   (FAC ¶ 12.)   Until 2010, oversight of the NPOESS program was assigned to an executive committee composed of top officials from each of the three IPO agencies.   (FAC ¶ 13.)   The NPOESS program was cancelled in 2010 because of delays, technical underperformance, and cost overruns.  (FAC ¶ 15.)

Relator Steven Mateski began working for Raytheon in 1997. (FAC ¶ 3.)  He was assigned to work on VIIRS for a short period of time while employed at Raytheon.   (*Id.*)   During that period, Mateski was asked to perform work under circumstances that he considered non-protocol: working without engineering drawings or planning books; and using prohibited materials. (*See e.g.*, FAC 23.)

Mateski filed his initial *qui tam* complaint on June 9, 2006.  After about six years, the United States notified the Court that it declines to intervene.  (ECF No. 78.)  On September 5, 2012, Mateski filed his Fourth Amended Complaint.  (ECF No. 88.)  He alleges that from 2002 to at least 2012, Raytheon knowingly and recklessly submitted 48 false claims to the United States and received payments for those claims in the sum of approximately one billion dollars.  (FAC ¶ 71.)  In response, Raytheon filed two Motions to Dismiss: the first under Federal Rule of Civil Procedure 12(b)(1); the second under Rules 8, 9, 10, and 12.  (ECF Nos. 96, 98.)  The Court first turns to the Motion to Dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.

/ / /

### III.   SUBJECT-MATTER JURISDICTION

**A.   Legal Standard**

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Plaintiffs bear the burden of establishing that subject-matter jurisdiction exists.  *Id.*  If a court finds that it lacks jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) motion for lack of subject-matter jurisdiction may be brought as either a facial or factual attack.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  *Id.*  But, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.  *Id.*

Further, in a Rule 12(b)(1) motion, the well-pleaded facts alleged in the complaint are taken as true.  *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1127 (9th Cir. 2002).  But the court is not restricted to the face of the pleadings—the court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

**B.   Discussion**

The False Claims Act ("FCA") deprives a court of jurisdiction over any *qui tam* action that is based on allegations or transactions already publicly disclosed:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.   31 U.S.C. § 3730(e)(4)(A).[2]

---

[2] The cited statute reflects the FCA prior to the 2010 amendment.  This older version controls since this suit was filed in 2006.  *See Gonzalez v. Planned Parenthood of L.A.*, 392 F. App'x 524, 526 (9th Cir. 2010).

Under this statute, a court must first determine whether there has been a prior public disclosure; and if so, whether the relator is an original source within the meaning of § 3730(e)(4)(B). *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

1.    *The Raytheon allegations and transactions were publicly disclosed when Mateski filed his Complaint.*

A public disclosure may occur in three ways: (1) in a criminal, civil, or administrative hearing, (2) in a congressional or administrative report, or (3) in the news media. *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 (9th Cir. 2009).

In his complaint, Mateski makes 48 allegations that fall into three categories: cost overruns; design, engineering, and manufacturing defects; and mismanagement. Throughout his 134-page FAC, Mateski makes general allegations of recklessness and fraud by Raytheon. Additionally, Mateski litters his FAC with minutia—references to various specifications and part numbers—alleging that Raytheon manufactured subassemblies without complying with applicable requirements and specifications.

In support of its Motion, Raytheon submitted 64 exhibits, each of which are public disclosures and point to a number of issues encountered in the VIIRS program. (RJN Exs. 1–64.) Many of these disclosures predate the Complaint, which was filed on June 9, 2006.

Mateski asserts that Raytheon generalizes his claims and that the public disclosures lack the particularity of his allegations. (Opp'n 7.) That may be so, but there is no particularity requirement for a suit to fall under the public disclosure bar— the phrase "allegations or transactions" is construed broadly. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011). A court is barred from hearing a *qui tam* suit when the complaint contains allegations "substantially similar" to previous public disclosures. *Meyer*, 565 F.3d at 1199; *United States ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir. 1998)

("[I]f at the time a relator files a *qui tam* complaint, the allegations or transactions of the complaint have been publicly disclosed, then the allegations are 'based upon' the publicly disclosed information."). "Based upon" does not mean "solely based upon"—a *qui tam* action partly based upon publicly disclosed information is deemed to fall within the jurisdictional bar of 31 U.S.C. § 3730(e)(4)(A). *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920–21 (7th Cir. 2009).

In *Wang*, an engineer brought suit against his former employer FMC Corp., accusing it of defrauding the United States Government by its poor performance on several defense projects for the manufacturing of military vehicles. *United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412, 1414 (9th Cir. 1992). Though information regarding the vehicles' defective transmission systems had been made public in the news media, the relator in *Wang* alleged that his account provided more details of the fraud. *Id.* at 1417. The Ninth Circuit found that the allegations were nevertheless publicly disclosed, holding that while there were "a few factual assertions never before publicly disclosed," these facts merely support what the public already knew concerning the defective transmission systems. *Id.*

Here, Mateski's allegations point to cost overruns, noncompliance with VIIRS specifications, manufacturing and engineering defects, and overall mismanagement of the VIIRS program. But these issues were already publicly known—they were addressed extensively in government hearings, administrative reports, and news media. *See* Mot. 10–22. For example, Mateski alleges that Raytheon improperly used pure tin plated wire on a J7 Power Connector. (FAC ¶ 28.) Allegedly, pure tin is a prohibited material for use in a VIIRS sensor under specification PS154640-132. (*Id.*) The Court notes that this minor detail may not have been publicly disclosed, and the Court has not found any reference to this specific noncompliance in Raytheon's exhibits. Nevertheless, the public disclosures that broadly discuss design noncompliance and manufacturing defects cover this claim and others like it.

/ / /

For instance, in an audit report in May 2006, the U.S. Department of Commerce reported that "the internal processes of the VIIRS subcontractor were inadequate and not being followed, and the subcontractor's management communication and oversight were poor." (RJN Ex. 61, at 19.)  The report also states that Raytheon received "excessive award fees for a problem-plagued program." (RJN Ex. 61, at 2.)  Though not alleged in detail, it was publicly known that there was rampant mismanagement, deviations from protocol, and other problems with VIIRS.

Further, public disclosures need not detail information underlying allegations or transactions so long as they supply enough information for the United States to pursue an investigation. *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019 (9th Cir. 1999).  Transcripts and reports from administrative hearings show that there was ample information available to initiate an investigation.  And in fact, investigations were pursued.  In 2005, a Congressional committee reported that after the VIIRS problems were discovered, the IPO had onsite presence at Raytheon and became more involved in the day-to-day work. (RJN Ex. 55, at 31.)  The IPO also initiated two independent reviews of VIIRS. (*Id.*)  At a separate hearing, the committee reported that the problems on the VIIRS program were being remedied:

> Let me give you a specific example from the VIIRS program, a sensor that has experienced significant technical, cost and schedule problems. Northrop Grumman intervened and re-located 10 specialists to be onsite at the subcontractor's facility to proactively assist them through the design and development process.  The team has comprehensively reviewed their processes and their detailed design and has implemented corrective action across the subcontractor's engineering, manufacturing, quality, and management disciplines. (RJN Ex. 57, at 18.)

The public disclosures show not only that the problems with the VIIRS program were known, but that the United States Government was busy trying to rectify the problems.  And while the public disclosures do not discuss the problems on the VIIRS program in the level of detail that Mateski does in his FAC, the allegations are nonetheless the same for the purposes of 31 U.S.C. § 3730(e)(4)(A).  Mateski's FAC

1    and the public disclosures all point to systematic technical and management problems
2    on the VIIRS program.

3        The Court therefore concludes that all of the allegations in the FAC were
4    publicly disclosed for the purposes of this jurisdictional analysis.

5        *2.    Mateski is not the original source of the public disclosures*

6        Although the claims against Raytheon are based upon publicly disclosed
7    information, this Court would still have jurisdiction if Mateski was the "original
8    source" of such information.  31 U.S.C. § 3730(e)(4)(A).  An "original source" is an
9    individual who has direct and independent knowledge of the information upon which
10   the allegations are based.  *Meyer*, 565 F.3d at 1201.  Further, the individual must have
11   voluntarily provided the information to the government before the filing of the *qui tam*
12   action, and must have had a hand in the public disclosure.[3]  *Id.*

13       First, Mateski offers nothing to show that he had a hand in the public
14   disclosure.  There is nothing suggesting that he directly or indirectly was a source to
15   the entity that publicly disclosed the allegations upon which this suit is based.
16   Republishing publicly disclosed allegations is insufficient—a whistleblower sounds
17   the alarm; he does not echo it.  *Wang*, 975 F.2d at 1419.

18       Second, Mateski avers that he is the original source because he had direct and
19   independent knowledge of the alleged fraudulent activity.  But a relator does not have
20   independent knowledge of information by mere virtue of the fact that the charged
21   company employed him during the time the activity took place.  *See United States ex*
22   *rel. Bly-Magee v. Premo*, 470 F.3d 914, 917 (9th Cir. 2006).  In contrast, the Ninth
23   Circuit held that a relator had "direct and independent" knowledge of the problem
24   because "he saw [it] with his own eyes," and his knowledge was "unmediated by
25   anything but [his] own labor."  *Wang*, 975 F.2d at 1417.

26
27   [3] The Court notes a split in the Courts of Appeals—some other circuits do not limit "original
     sources" to those who were the cause of the public disclosure.  *See Schindler Elevator Corp. v.*
28   *United States ex rel. Kirk*, 131 S. Ct. 1885, 1895 n.8 (2011).  Mateski does not address this hand-in-
     the-public-disclosure requirement.

In the FAC, Mateski makes generalized statements of cost overruns and technical ineptitude, but fails to allege how he happened upon such information, or how he remembers instances of fraudulent activity with such accuracy. Additionally, Mateski claims that Raytheon had engaged in fraud from 2002 to at least 2012. But Mateski was only assigned to work on VIIRS from 2005 through 2007, logging 2,128 hours in 2005, 1,247 hours in 2006, and 103 hours in 2007. (Till Decl. ¶ 4.) During that time, he worked on VIIRS as a Principal Production Planner/Material Control Specialist and as a Senior Technical Support Engineer. (*Id.*) His responsibilities consisted of creating and reviewing assembly instructions and engineering drawings. (*Id.*) There is no indication that he was involved with billing, management, or high-level technical oversight.

While it is conceivable that Mateski had direct and independent knowledge of the various technical failures and noncompliance issues mentioned in his FAC, it appears unlikely that he would have direct knowledge of fraud or recklessness committed by Raytheon in the VIIRS program. Mateski can only allege that the various technical failures and noncompliance issues were part of a defrauding scheme, or that they were examples of systematic recklessness. But Mateski does not actually know whether Raytheon committed fraud or was reckless in the VIIRS program. In other words, Mateski jumps to the conclusion that because there were a number of problems in the VIIRS program, there must have been fraud or recklessness. This bald conclusion does not satisfy the direct and independent knowledge requirement.

And third, the relator must have provided the information to the Government prior to filing the *qui tam* action. *Meyer*, 565 F.3d at 1201. Mateski offers nothing suggesting that happened. To the contrary, it appears that Mateski's first contact with the Government was on July 14, 2006, when he briefed government officials about the claims he alleged in his *qui tam* complaint. (Mateski Decl. 3.) And it is irrelevant that Mateski's disclosure resulted in this meetings with government officials and initiated additional government investigations. Merely providing a lead that triggers an

investigation does not qualify one as an original source. *United States ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407, 410 (9th Cir. 1993).

Although Mateski offers some technical details concerning problems on the VIIRS program, he does not qualify as the original source of these allegations under 31 U.S.C. § 3730(e)(4)(A). It appears that Mateski offered these technical details to bolster his claims, but they are insufficient to remedy the fact that he is not the original source.

## IV.   CONCLUSION

For the reasons discussed above, the public-disclosure bar applies and Raytheon's Motion to Dismiss for lack of subject-matter jurisdiction is **GRANTED**. (ECF No. 96.) The Court finds it would be futile to grant Mateski leave to amend because not only is this his Fourth Amended Complaint, the deficiencies discussed herein cannot be remedied.

Raytheon's Motion to Dismiss on other grounds is **DENIED AS MOOT**. (ECF No. 98.) The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

February 26, 2013

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**