O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* STEVEN MATESKI,<br><br>        Plaintiff,<br><br>   v.<br><br>RAYTHEON COMPANY,<br><br>        Defendant. | Case № 2:06-cv-03614-ODW(KSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [154]** |

## I. INTRODUCTION

Plaintiff-Relator Steven Mateski brings this action on behalf of the United States against Defendant Raytheon Company for violating the False Claims Act (FCA). Raytheon contracted with Northrup Grumman Corporation to design and manufacture a sensor for a Government-funded satellite system. The contract contained extensive specifications and requirements for the sensor. According to Mateski, Raytheon knowingly deviated from these specifications but nonetheless impliedly certified its compliance with those specifications by submitting claims for payment for the work, thereby defrauding the Government. Raytheon now moves to dismiss Mateski's Fourth Amended Complaint, arguing that he has not complied with the rigorous pleading requirements for an "implied false certification" theory of FCA liability, and that the Fourth Amended Complaint is in any event too unwieldy and

incoherent to allow Raytheon to prepare its defenses. For the reasons discussed below, the Court **GRANTS** the Motion.[1] (ECF No. 154.)

## II. FACTUAL BACKGROUND

In 2002, the United States awarded Northrop the prime contract for designing and developing the National Polar-Orbiting Operational Environmental Satellite System (NPOESS), which collects meteorological, oceanographic, environmental, and climatic data. (Fourth Am. Compl. ¶¶ 10, 11.) Northrop subcontracted with Raytheon to develop a weather sensor, called the Visible Infrared Imaging Radiometer Suite (VIIRS), for the satellite system. (*Id.* ¶ 17.) Mateski, a former Raytheon employee, worked on the VIIRS program in 2005 and 2006. (*Id.* ¶ 46.) From what the Court can discern, Mateski alleges that Raytheon took numerous shortcuts in designing and constructing the VIIRS, and that these shortcuts violated design and construction requirements in the subcontract and other documents incorporated therein. (*See, e.g.*, *id.* ¶¶ 19, 21, 23; *see also* Opp'n at 3–4 ("The Government issued detailed and specific requirements and specifications set forth in the NPOESS General Instrument Interface Document or NGIID, governing the critical, core contractual requirements for design, manufacture and assembly of . . . the VIIRS sensor. . . . Raytheon failed to disclose its knowing and deliberate violation of and non-compliance with critical, core contractual requirements . . . for the VIIRS sensor.").) According to Mateski, Raytheon nonetheless impliedly certified that it complied with these specifications by submitting claims for payment. (Fourth Am. Compl. ¶¶ 70, 71.) And because compliance with these specifications was purportedly a material condition for payment, Mateski alleges that Raytheon violated the FCA. (*Id.*)

In June 2006, Mateski filed this case on behalf of the United States. (ECF No. 1.) After investigating Mateski's claims for six years, the United States ultimately declined to intervene in the action. (ECF No. 78.) Raytheon subsequently moved to

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

dismiss what was by then Mateski's Fourth Amended Complaint for lack of subject matter jurisdiction, arguing that public knowledge of the problems with the VIIRS sensor were fatal to Mateski's claim under the FCA's public disclosure bar. (ECF No. 96.) The Court agreed and dismissed the action. (ECF No. 127.) Mateski appealed. (ECF No. 128.) In March 2016, the Ninth Circuit reversed, reasoning that the public disclosure bar did not apply because Mateski's allegations "differ in both degree and kind from the very general previously disclosed information about problems with VIIRS." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 580 (9th Cir. 2016). Shortly after remand, the Supreme Court issued its opinion in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which addressed FCA liability under a theory of implied false certification. Raytheon moved to dismiss the Fourth Amended Complaint based on *Escobar* and on several other grounds. (ECF No. 154.) That Motion is now before the Court for decision.

### III. LEGAL STANDARD

This Motion implicates three general pleading requirements. First, the complaint must be concise and intelligible. It must "contain a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In addition, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). These requirements ensure that the pleading "give[s] the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (citations and internal quotation marks omitted); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

Dismissal is appropriate when "the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)); *see also Salahuddin*, 861 F.2d at 42.

Second, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court must dismiss a complaint that does not assert a cognizable legal theory or fails to plead sufficient facts to support an otherwise cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Finally, where, as here, the plaintiff's claim sounds in fraud, the complaint must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See, e.g.*, *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) requires the party alleging fraud to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "[A]llegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"

*United States ex rel. Swoben v. United Healthcare Ins. Co.*, __ F.3d __, No. 13-56746, 2016 WL 7378731, at *14 (9th Cir. Aug. 10, 2016) (quoting *Bly-Magee*, 236 F.3d at 1019).

## IV. DISCUSSION

Of the issues the parties raise, the Court addresses only the following two: (1) whether Mateski has adequately alleged that Raytheon submitted a false claim; and (2) whether the Fourth Amended Complaint complies with basic pleading requirements. Because the parties' remaining arguments require an in-depth analysis of the adequacy of Mateski's allegations, and because the current iteration of the complaint is largely incomprehensible, the Court declines to adjudicate those arguments at this time.

**A.     False Claim**

As previously noted, Mateski relies on a theory of FCA liability called "implied false certification." According to this theory, "when a defendant submits a claim [for payment to the Government], it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)." *Escobar*, 136 S. Ct. at 1995.

Raytheon argues that *Escobar* limits the implied false certification theory to instances where the claim for payment contains specific representations regarding the goods or service rendered, as opposed to merely requesting payment. (Mot. at 10–11.) Mateski and the Government respond that *Escobar*'s holding is not so broad, and that the Supreme Court expressly withheld judgment on whether an implied false certification theory of liability could encompass claims that simply request payment—thus leaving intact the Ninth Circuit's prior case law on that specific issue. (Opp'n at 7–12; United States Stmt. of Interest at 2–5.) After briefing on this Motion was complete, the Ninth Circuit issued its opinion in *United States ex rel. Kelly v. Serco, Inc.*, __ F.3d __, No. 14-56769, 2017 WL 117154 (9th Cir. Jan. 12, 2017), which

applied *Escobar* to an FCA claim under an implied false certification theory. The Court concludes that *Escobar*, as interpreted by *Kelly*, requires that the claim contain specific representations to be actionable.

Under the FCA, "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States Government is liable for civil penalties and treble damages. 31 U.S.C. § 3729(a)(1)(A). The essential elements of an implied false certification theory[2] under this subsection are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Swoben*, 2016 WL 7378731, at *7; *Ebeid*, 616 F.3d at 997; *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). The question presented here implicates the first element. To address this, the Court looks to the Ninth Circuit's pre-*Escobar* case law, the *Escobar* opinion itself, and the Ninth Circuit's post-*Escobar* case law.

1. ***Ebeid***

In 2010, the Ninth Circuit joined the majority of circuit courts in recognizing implied false certification as a viable theory of FCA liability. *Ebeid*, 616 F.3d at 997. In *Ebeid*, the relator alleged that a group of healthcare providers violated federal healthcare laws by exerting corporate control over patient healthcare decisions, and by allowing their physicians to refer patients to other physicians practicing within the group. *Id.* at 996. The relator further alleged that the providers submitted claims for reimbursement to Medicare, and that by doing so, they impliedly certified their compliance with these particular healthcare laws. Thus, according to the relator, their failure to disclose their non-compliance with these laws rendered their reimbursement

---

[2] There are also two other theories of FCA liability under § 3729(a)(1)(A). First, a defendant is liable if they submit a factually false claim (i.e., a claim for work that the defendant did not actually perform). Second, a defendant is liable if they submit claims that expressly certify compliance with material conditions for payment. *See generally U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011). Mateski does not rely on these two theories.

requests false. *Id.* at 999–1001.

After explaining why implied false certification was a viable theory of liability, the Ninth Circuit discussed the relevant pleading requirements for such a theory. The court held that "a complaint alleging implied false certification must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Id.* at 998. The court noted that the relator need not "identify representative examples of false claims to support every allegation." *Id.* Rather, "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 998–99 (quoting *United States ex rel. Grubss v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). The court held that the relator failed to meet these pleading requirements. *Id.* at 999–1001.

Although *Ebeid* did not expressly hold that a mere claim for payment can impliedly certify compliance with all material conditions of payment, its reasoning necessarily implies this. The court noted that the complaint must set forth with particularity "what is false or misleading about a statement, and why it is false," *id.* at 998, yet nonetheless held that the relator need not describe the claim's content. Instead, the relator need only show a scheme to defraud and the "actual submi[ssion]" of claims for payment. *Id.* at 998–99. The only possible conclusion is that it is the submission of the claim, and not the statements therein, that impliedly certifies compliance with material payment conditions. Consequently, under *Ebeid*, a claim for payment need not make any specific representations about the goods or services provided to be actionable. *See, e.g., U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK SSX, 2014 WL 3605896, at *2 (C.D. Cal. July 10, 2014) (holding that under *Ebeid*, "[a] claim is false under an implied certification theory when it contains no express statement regarding compliance with a statute or regulation but, *by the very*

*fact that it has been submitted*, falsely implies compliance with any statutory or regulatory precondition to obtaining the requested government benefit" (emphasis added)); *U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*, No. 1:11-CV-00135 AWI, 2013 WL 1499319, at *4 (E.D. Cal. Apr. 11, 2013) ("[S]ubmission of a claim for payment acts as an implicit reaffirmation of compliance [with payment requirements]").

### 2. *Escobar*

In *Escobar*, the Supreme Court confirmed that implied false certification was a viable theory. 136 S. Ct. at 1995. There, a healthcare provider submitted claims for payment for counseling services and prescription medication provided by unlicensed and untrained healthcare professionals. *Id.* at 1997. The claims themselves contained various codes that corresponded to specific counseling services and specific job titles. *Id.* The Supreme Court held that by including these codes, the provider impliedly represented that it complied with all material requirements for performing (and thus being paid for) the corresponding services—such as being properly licensed and trained. *Id.* at 2000. Because the professionals were neither, the Court held that the provider's descriptions constituted actionable misrepresentations by omission—i.e., "representations that state the truth only so far as it goes, while omitting critical qualifying information." *Id.* at 2000.

Accordingly, the Court held that "the implied certification theory can be a basis for liability, *at least* where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 2001 (emphasis added). The Court expressly declined to resolve the question "whether *all* claims for payment implicitly represent that the billing party is legally entitled to payment" and thus form a basis for FCA liability, because the claims at issue "d[id] more than merely demand payment"—they included

affirmative representations regarding the underlying services. *Id.* at 2000 (emphasis added). *Escobar* thus appeared to keep intact the Ninth Circuit's holding in *Ebeid* that claims for payment can themselves impliedly certify compliance with material payment conditions. *See United States v. Celgene Corp.*, No. CV1003165GHKSSX, 2016 WL 7626222, at *8 (C.D. Cal. Dec. 28, 2016) ("[T]he two conditions [identified in *Escobar* do not] describe the outer reaches of FCA liability: the Court stated that liability could be found '*at least*' where these conditions were satisfied. Thus, *Escobar* leaves undisturbed cases in this circuit and elsewhere holding that a claim is false if it is statutorily ineligible for reimbursement." (citations omitted)); *Rose v. Stephens Inst.*, No. 09-CV-05966-PJH, 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016) ("*Escobar* did not establish a rigid two-part test for falsity that must be met [in] every single implied certification case."), *appeal pending*, No. 17-1511 (9th Cir. Jan. 20, 2017); *but see United States v. Ctr. for Emp't Training*, No. 213CV01697KJMKJN, 2016 WL 4210052, at *5 (E.D. Cal. Aug. 9, 2016) (noting that a plaintiff "must" satisfy *Escobar*'s two-part test when asserting an implied false certification theory).

### 3. *Kelly*

In *Kelly*, the Ninth Circuit applied *Escobar* to an FCA claim under an implied false certification theory. There, the Government contracted with the defendant both to provide project management and to track the costs incurred for a Government-funded project. 2017 WL 117154, at *2. As part of tracking costs, the defendant recorded employee time using MS Excel spreadsheets. *Id.* The relator alleged that this was an impermissible method of tracking employee time. *Id.* at *5. The relator argued that the defendant's claims for payment impliedly certified the defendant's compliance with an alternate method of tracking employee time, and thus the claims for payment were false. *Id.*

The Ninth Circuit affirmed summary judgment on the relator's claims on three seemingly independent grounds. Of relevance to this case, the court held that "[e]ven

assuming that [the defendant's] compliance with [the alternate time tracking method] was a condition of payment for its work," the relator's claim failed because "there [was] no evidence that [the defendant's claims for payment] made any specific representations about [its] performance." *Id.* at *6. While the court cited *Escobar* for this proposition, it did not address *Escobar*'s express caveat that it was not deciding whether claims for payment must always contain specific representations about the underlying services the defendant provided. Nor did *Kelly* address *Ebeid*, which held that mere claims for payment could indeed form the basis for an FCA claim. Nonetheless, the fact that *Kelly* did not expressly resolve these ostensible inconsistencies does not change how this Court must apply *Kelly*. The most reasonable reading of *Kelly* is that mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain "specific representations about [the defendant's] performance." *Id.* Mateski provides no convincing way to distinguish *Kelly* on this issue, and the Court sees none.[3] As the most recent binding authority interpreting the reach of Supreme Court precedent, this Court must follow *Kelly*.

### 4. Mateski's Fourth Amended Complaint

Mateski does not point to any portion of his Fourth Amended Complaint that identifies specific representations made in Raytheon's claims for payment. Instead, Mateski appears to argue that that it is unreasonable to expect him to provide such information, for he was simply "an engineer" and "not involved with billing and invoices for payment." (Opp'n at 9.) However, the Ninth Circuit has rejected the

---

[3] While *Kelly* arose from a grant of summary judgment and *Ebeid* arose from the grant of a motion to dismiss, the Court does not find this to be a material distinction. If, as *Kelly* holds, FCA liability depends on the existence of specific representations in the claims for payment about the underlying services, it would be completely inconsistent with Rule 9(b)'s particularity requirement not to require the relator to identify that specific representation in the complaint. *See Ebeid*, 616 F.3d at 998 (the complaint must set forth with particularity "what is false or misleading about a statement, and why it is false"); *see also id.* (complaint must identify "the who, what, when, where, and how of the misconduct charged").

1 notion that the courts should relax the pleading standards in FCA cases based on the
2 relator's lack of inside knowledge regarding the defendant's billing practices. *Ebeid*,
3 616 F.3d at 998.[4] Mateski's Fourth Amended Complaint is therefore inadequate.

**B.    Compliance with Basic Pleading Requirements**

Raytheon also argues that the Fourth Amended Complaint "[g]rossly" violates basic pleading requirements. (Mot. at 20–21.) Mateski responds that the length, format, and wording of the complaint are necessary due to the complexity of the subject matter and the requirement that the relator plead FCA claims with particularity. (Opp'n at 22–25.)

The Court agrees with Raytheon that the Fourth Amended Complaint, which spans over 134 pages, is largely incomprehensible. First, Mateski uses literally hundreds of obscure acronyms, engineering terms, and part numbers throughout the complaint without even a legend to assist the reader.[5] Moreover, Mateski repeatedly uses lengthy and ungrammatical sentences, making comprehension of the complex subject matter extremely arduous. The following three examples illustrate the complaint's opacity:

- "PRODUCT SUBSTITUTION BY NPOESS PROGRAM WIDE DELIBERATE AND SYSTEMATIC CIRCUMVENTION OF QUALIFICATION TESTING REQUIREMENTS OF HI-REL COMPONENTS USED IN ALL 32 NPOESS 100 LEVEL SENSORS AND SUBSYSTEM UNITS INCLUDING VIIRS." (Fourth Am. Compl. ¶ 22.)
- "The reckless disregard rework had been performed by the Non-Flight STE Laboratory / Machine Shop located at E01/Rm C1250/Laboratory 22 on all existing Top Covers jeopardizing scheduled delivery of the FPIE Unit. The interfering Boss had been ground down violating the corrosion barrier plating

---

[4] This part of *Ebeid*'s holding appears unaffected by either *Kelly* or *Escobar*.
[5] The "appendix" that Mateski attaches to his Opposition is neither part of the complaint nor particularly useful in deciphering its contents. (*See* Opp'n, Appendix.)

requirement, violating the "Do Not Break thru" Drawing note allowing an alternate unauthorized vent path through the Top Cover, and dimensional tolerances were violated." (*Id.* ¶ 54.)

- "FALSE RAYTHEON WAIVERS RDW 417700-110 (FU1) RTMA RDW_VIIRS-W001 AND 417700-110 (FU1) HAMMA RDW_VIIRS-W001 IN RECKLESS DISREGARD TO OBTAIN PRIOR ESD AND EMI/EMC DESIGN APPROVAL FOR VIIRS MATERIALS AND EQUIPMENT USED IN COMPLIANCE WITH ESD PROTECTION REQUIREMENTS FOR VIIRS FLIGHT HARDWARE, WHICH CONSTITUTE ADMISSIONS BY RAYTHEON OF VIIRS DEFECTIVE NONCONFORMANCES WITH VIIRS SPECIFICATIONS AND REQUIREMENTS." (*Id.* ¶ 65.)

Second, Mateski largely fails to use paragraph numbers in his complaint in violation of Rule 10(b). That is, rather than number each paragraph, Mateski numbers large portions of text that span over several pages, thus functioning more like chapter numbers rather than paragraph numbers. Paragraph 21, for example, spans from pages 20 to 30, and is comprised of over 20 subparagraphs and numerous sub-subparagraphs therein. (Fourth Am. Compl. ¶ 21.) Similarly, paragraph 57 spans from pages 97 to 102, and is comprised of 9 subparagraphs of dense text. (*Id.* ¶ 57.) Moreover, the allegations within each "paragraph" (and even each sub-paragraph) do not appear to be "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). This significantly impedes comprehension of the allegations.

Mateski argues that the complexity of the complaint is dictated by the complexity of the subject matter—a "complaint by an engineer for engineers," as he describes it. (Opp'n at 25.) This argument is unconvincing. First, complaints are not engineering documents, and neither the court nor the ultimate factfinder (i.e., the persons ultimately adjudicating the case) are likely to be engineers. A lawyer's basic function is to present their clients' position to the court and the factfinder in a manner that is at the very least understandable and comprehensible, if not persuasive. This is

especially important with technical subject matter. Mateski's counsel cannot fall back on the rather puzzling assumption that the complaint is good enough as long as the various engineers hired by the parties can figure out what the complaint means.[6] Second, the complexity of the subject matter cannot account for the pervasive grammatical errors, formatting problems, and use of technical jargon littered throughout the complaint. The Court suspects that even an engineer would have difficulty deciphering these allegations.

Ultimately, the dense and winding complaint makes it impossible to move forward with this case. The current iteration of the complaint permits neither Raytheon nor the Court to discern whether Mateski has met Rule 9(b)'s stringent pleading requirements. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."). Moreover, the complaint does not allow Raytheon to assess its liability, to prepare a proper defense, or even to frame an appropriate answer. Plaintiff's complaint thus fails to perform the basic function of a pleading. *See McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996) ("Prolix, confusing complaints . . . impose unfair burdens on litigants and judges. . . . Defendants are . . . put at risk that . . . plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. . . . The judge wastes half a day in chambers preparing the 'short and plain statement' which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This

---

[6] Indeed, judging from Mateski's failure to provide any detailed description in their briefing papers of the particular specifications that Raytheon allegedly failed to comply with and the manner in which they failed to comply with them, the Court suspects that the allegations in the complaint are impenetrable even to Mateski's own lawyers.

leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed.").

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Raytheon's Motion to Dismiss with leave to amend. (ECF No. 154.) Mateski must file a Fifth Amended Complaint no later than **March 8, 2017**. Raytheon's response thereto shall be due no later than **April 10, 2017**.

**IT IS SO ORDERED.**

February 10, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**